1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    Shon Morgan (Bar No. 187736)
     (shonmorgan@quinnemanuel.com)
3    John W. Baumann (Bar No. 288881)
     (jackbaumann@quinnemanuel.com)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017
5  Telephone:      (213) 443-3000
   Facsimile:      (213) 443-3100
6

7    Cristina Henriquez (Bar No. 317445)
     (cristinahenriquez@quinnemanuel.com)
8  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
9  Telephone:      (650) 801-5000
   Facsimile:      (650) 801-5000
10

11 Attorneys for ANCESTRY.COM OPERATIONS
   INC., ANCESTRY.COM INC., and
12 ANCESTRY.COM LLC

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16 | MEREDITH CALLAHAN and | CASE NO. 3:20-cv-08437-LB |
17 | LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated, | **NOTICE OF DEFENDANTS' MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12 AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 AND MEMORANDUM IN SUPPORT;** |

                 Plaintiffs,

         vs.                              **[PROPOSED] ORDER**

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM,      Hearing Date: February 18, 2021
INC., a Delaware Corporation;            Hearing Time: 9:30 a.m.
ANCESTRY.COM LLC, a Delaware             Location: San Francisco Courthouse, Courtroom B
Limited Liability Company; and DOES 1
through 50, inclusive,

                 Defendants.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................2

BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFFS' COMPLAINT ............3

LEGAL STANDARDS ................................................................4

ARGUMENT ................................................................6

I.      PLAINTIFFS' CLAIMS FAIL BECAUSE THEY DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS ................6

II.     PLAINTIFFS' CLAIMS UNDER CIVIL CODE SECTION 3344 AND THE UCL FAIL BECAUSE THE CHALLENGED CONDUCT FALLS UNDER THE "PUBLIC AFFAIRS" EXCEPTION ................................11

III.    PLAINTIFFS' CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT ................................13

IV.     PLAINTIFFS' SECTION 3344 AND DERIVATIVE UCL CLAIM ARE PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT ................16

V.      PLAINTIFFS CANNOT PLAUSIBLY STATE A CLAIM FOR INTRUSION UPON SECLUSION ................................18

VI.     NO STANDALONE CLAIM FOR UNJUST ENRICHMENT EXISTS ................20

VII.    THE COURT SHOULD STRIKE PLAINTIFFS' PRAYER FOR STATUTORY DAMAGES BECAUSE PLAINTIFFS HAVE NOT, AND CANNOT, ALLEGE MENTAL ANGUISH ................................20

VIII.   THE COURT SHOULD STRIKE PLAINTIFFS' RESTITUTION-BASED CLAIMS BECAUSE AN ADEQUATE REMEDY AT LAW EXISTS ................21

IX.     THE COURT SHOULD STRIKE PLAINTIFFS' CLAIMS PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE ................................22

CONCLUSION ................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Aldrin v. Topps Co., Inc.*,
　　2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ........................................................... 12, 13

*Andrade v. Arby's Rest. Grp., Inc.*,
　　2015 WL 6689475 (N.D. Cal. Nov. 3, 2015) ................................................................... 13

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ........................................................................................................... 5

*Barrett v. Rosenthal*,
　　40 Cal. 4th 33 (2006) ........................................................................................................ 22

*Beck v. McDonald*,
　　848 F.3d 262 (4th Cir. 2017) .............................................................................................. 9

*Bodnar v. Cty. of Riverside*,
　　2020 WL 2542871 (C.D. Cal. Mar. 3, 2020), *report and recommendation
　　adopted*, 2020 WL 2542617 (C.D. Cal. Apr. 6, 2020) ...................................................... 8

*Bosley Med. Inst., Inc. v. Kremer*,
　　403 F.3d 672 (9th Cir. 2005) .............................................................................................. 5

*Caraccioli v. Facebook, Inc.*,
　　167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................................................ 14

*Caraccioli v. Facebook, Inc.*,
　　700 F. App'x 588 (9th Cir. 2017) ...................................................................................... 13

*Carafano v. Metrosplash.com, Inc.*,
　　339 F.3d 1119 (9th Cir. 2003) ..................................................................................... 13, 14

*Carlisle v. Fawcett Publications, Inc.*,
　　201 Cal. App. 2d 733 (1962) ............................................................................................. 11

*Cohen v. Facebook*,
　　798 F. Supp. 2d 1090 (N.D. Cal. 2011) .............................................................................. 9

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
　　139 S. Ct. 1446 (2019) ........................................................................................................ 6

*DC Comics v. Pac. Pictures Corp.*,
　　706 F.3d 1009 (9th Cir. 2013) ........................................................................................... 22

*Del Vecchio v. Amazon.com, Inc.*,
　　2012 WL 1997697 (W.D. Wash. June 1, 2012) ................................................................ 10

*Dora v. Frontline Video, Inc.*,
　　15 Cal. App. 4th 536 (1993) ......................................................................................... 22, 23

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
    895 F.3d 1166 (9th Cir. 2018) ........................................................................... 6

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ..................................................... 13

*Endemol Entm't B.V. v. Twentieth Television Inc.*,
    1998 WL 785300 (C.D. Cal. Sept. 29, 1998) .................................................... 17

*Evans v. B.F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999) ............................................................................... 5

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..................................................................... 15, 16

*Felix v. State Comp. Ins. Fund*,
    2007 WL 3034444 (C.D. Cal. Oct. 3, 2007) ..................................................... 20

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ........................................................................... 17

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ........................................................................... 20

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ............................................................ 18

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................................ 15, 16

*Fus v. CafePress, Inc.*,
    2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) ..................................................... 8

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990) ............................................................................................ 5

*Gates v. Discovery Commc'ns, Inc.*,
    34 Cal. 4th 679 (2004) ...................................................................................... 23

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) ............................................................................. 24

*Gladstone, Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979) .............................................................................................. 4

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ........................................................... 14

*In re Google, Inc. Privacy Policy Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................................... 10

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................ 19

*Gordon v. F.B.I.*,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) ................................................................ 18

*Guglielmi v. Spelling–Goldberg Productions*,
    25 Cal. 3d 860 (1979) ........................................................................................... 11

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) .......................................................................................... 20

*Hicks v. Richard*,
    39 Cal. App. 5th 1167 (2019) ............................................................................... 23

*Jackson v. Loews Hotels, Inc.*,
    2019 WL 2619656 (C.D. Cal. Jan. 4, 2019) ........................................................... 8

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ................................................................................ 14

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) .............................................................................. 17

*Jurin v. Google Inc.*,
    695 F. Supp. 2d 1117 (E.D. Cal. 2010) ................................................................ 13

*KEMA, Inc. v. Koperwhats*,
    2010 WL 3464737 (N.D. Cal. Sept. 1, 2010) ....................................................... 21

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .............................................................................. 14

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) .............................................................................. 17

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................... 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 4, 6, 10

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ........................................................................ 22, 24

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ........................................................................ 16, 17

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ................................................................................... 6

*Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*,
    306 F.3d 806 (9th Cir. 2002) ................................................................................ 19

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) ........................................................................ 20, 21

*Mirfasihi v. Fleet Mortg. Corp.*,
    2007 WL 2066503 (N.D. Ill. July 17, 2007), *aff'd*, 551 F.3d 682 (7th Cir. 2008) ............. 8

*Moreno v. Hanford Sentinel, Inc.*,
    172 Cal. App. 4th 1125 (2009) ........................................................................... 8, 18

*New Kids On The Block v. News Am. Pub., Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992) ................. 11, 12

*Perkins v. Linkedin Corp.*,
    53 F. Supp. 3d 1222 (N.D. Cal. 2014) ......................................................................... 21

*Pierce v. Kernan*,
    2017 WL 4621252 (S.D. Cal. Oct. 16, 2017) ................................................................. 18

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) .................................... 5

*Polydoros v. Twentieth Century Fox Film Corp.*,
    67 Cal. App. 4th 318 (1997) ........................................................................................ 18

*Porch v. Masterfoods USA, Inc.*,
    364 F. App'x 365 (9th Cir. 2010) ................................................................................ 13

*Raines v. Byrd*,
    521 U.S. 811 (1997) ...................................................................................................... 4

*Romero v. Securus Techs., Inc.*,
    216 F. Supp. 3d 1078 (S.D. Cal. 2016) ......................................................................... 7

*Rondberg v. McCoy*,
    2009 WL 5184053 (S.D. Cal. Dec. 21, 2009) ................................................................. 7

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ....................................................................................... 19

*Sarver v. Hurt Locker LLC*,
    2011 WL 11574477 (C.D. Cal. Oct. 13, 2011) .............................................................. 19

*Shulman v. Group W Prod., Inc.*,
    18 Cal. 4th 200 (1998) ................................................................................................ 11

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ................................................................................................ 18

*Silha v. ACT, Inc.*,
    2014 WL 11370440 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) .......... 10

*Sipple v. Chronicle Publ'g Co.*,
    154 Cal. App. 3d 1040 (1984) ................................................................................. 8, 18

*Slivinsky v. Watkins-Johnson Co.*,
    221 Cal. App. 3d 799 (1990) ......................................................................................... 6

*Sonner v. Premier Nutrition Corp.*,
    962 F.3d 1072 (9th Cir.), *opinion amended and superseded on denial of reh'g*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................ 21

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...................................................................................... 6

*Stern v. Weinstein*,
    2010 WL 11459791 (C.D. Cal. Jan. 6, 2010), *aff'd*, 512 F. App'x 701 (9th Cir.
    2013) .................................................................................................................. 19

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .......................................................................................... 5

*Todd v. Tempur-Sealy Int'l, Inc.*,
    2015 WL 1006534 (N.D. Cal. Mar. 6, 2015) ...................................................... 8

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) .......................................................................... 16, 17

*Varnado v. Midland Funding LLC*,
    43 F. Supp. 3d 985 (N.D. Cal. 2014) ............................................................... 18, 19

*In re VTech Data Breach Litig.*,
    2017 WL 2880102 (N.D. Ill. July 5, 2017) ........................................................ 8

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) ............................................................ 13

*Gates v. Discovery Commc'ns, Inc.*,
    34 Cal. 4th 679 (2004) ..................................................................................... 8, 23

## Statutory Authorities

17 U.S.C. § 102 ............................................................................................................ 17

17 U.S.C. § 103 ............................................................................................................ 17

17 U.S.C. § 301(a) ........................................................................................................ 3

47 U.S.C. § 230 ................................................................................................... 13, 14, 24

Cal. Bus. & Prof. Code § 17200 ........................................................................... 1, 4, 13, 21

Cal. Civ. Code § 3344 ....................................................... 1, 2, 4, 11, 13, 18, 21

Cal. Code Civ. P. § 425.16 ............................................................................... 1, 3, 5, 22, 24

## Rules and Regulations

Fed. R. Civ. P. 12 ......................................................................................................... 1, 5

1

**<u>Additional Authorities</u>**

2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6 ..................................... 23

Privacy Torts § 6:9 ......................................................................................................... 11

Restatement (Third) of Unfair Competition § 47 ....................................................................... 12

PLEASE TAKE NOTICE that, on February 18, 2021 at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom B of the above entitled Court, defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC (collectively, "Ancestry"), by and through their attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) hereby move the Court to dismiss with prejudice plaintiffs' complaint in its entirety, to strike plaintiffs' claim for statutory damages pursuant to California Civil Code section 3344, to strike plaintiffs' claim for restitution to the extent it is premised on the claim for violation of California Business & Professions Code section 17200, and to strike the complaint pursuant to California's anti-SLAPP statute, Cal. Code Civ. P. section 425.16.

Ancestry moves to dismiss on the grounds that plaintiffs lack Article III standing and the complaint fails to state a claim upon which relief can be granted. Ancestry moves to strike plaintiffs' prayer for statutory damages on the grounds plaintiffs have failed to allege any mental anguish resulting from the alleged violations. Ancestry moves to strike plaintiffs' prayer for restitution on the grounds such recovery is unavailable under the UCL where there is an otherwise adequate remedy at law. Ancestry moves to strike plaintiffs' complaint pursuant to California's anti-SLAPP statute on the grounds that plaintiffs' suit arises from protected activity and plaintiffs cannot demonstrate a probability of prevailing on the merits.

This motion is based upon this Notice, the following memorandum of points and authorities, the pleadings and records on file herein, and on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

## PRELIMINARY STATEMENT

Ancestry operates the world's largest subscription collection of genealogy databases, encompassing more than 27 billion historical records. Much of this data is available for free; even more can be accessed by members. Subscribers can review, for example, US census records, military documents, and historical immigration records that range from passenger lists for most American ports to border-crossing files. Ancestry also makes available millions of digitized family and local history books, city directories, newspapers dating to the 18th century, and school yearbooks.

The access to yearbooks prompted this novel—and misguided—lawsuit. The two named plaintiffs object that pictures and information from their school yearbooks is viewable on Ancestry.com, and seek to advance a broad class action asserting right of publicity and privacy-based theories. The claims are intuitively ill-founded—like all individuals pictured in yearbooks, these plaintiffs long ago consented to public distribution of these photos without restriction. Indeed, the local libraries of each named plaintiff offer these same yearbooks for anyone to access, including online versions available with a few keystrokes. Numerous additional yearbook archives abound on the internet. (*Infra* at footnotes 2-4, 8).

Given that common experience undermines plaintiffs' supposed indignation over the possible viewing of their school photos, it is unsurprising their theories cannot find legal grounding. Multiple bases foreclose these claims at the pleading stage:

- **No Injury.** Neither plaintiff can plausibly allege any actual injury. The benign yearbook excerpts are widely available, and plaintiffs contend only that Ancestry offered access to these already-public records. No harm could plausibly result from the mere existence of plaintiffs' records in Ancestry's archive.

- **The Public Affairs Exception.** State law recognizes the "right to publicity" must yield to constitutional free speech interests. The yearbook excerpts here fall squarely within the "public affairs" exception to California Civil Code section 3344, which protects the type of information gathering for public distribution in which Ancestry engages.

- ***Section 230 Immunity.***  To foster the public informational interest in online resources, the Communications Decency Act immunizes companies from claims arising from the publication of content created by third parties.  Here, plaintiffs concede the content at issue emanates from third parties and is merely hosted on Ancestry's website.

- ***Copyright Preemption.***  The federal Copyright Act provides the exclusive means to protect copyrightable works such as photos and compilations. *See* 17 U.S.C. § 301(a).  Here, plaintiffs allege no other use of their names or images apart from their mere appearance in excerpts they do not allege to have copyrighted.  They cannot now circumvent the Act by asserting state-law claims.

- ***No Intrusion Upon Seclusion.***   The yearbook information at issue belies any suggestion it is "private" or that publication would highly offend a reasonable person.  It is public information (names, past physical appearances) in a medium intended for distribution (a school yearbook) and that continues to be publicly available (including through government libraries).   And possible regret over teen hairstyles notwithstanding, no reasonable person could be "highly offended" by sharing a school portrait, nor as to plaintiff Callahan, by her admirable distinction as class valedictorian.

For these reasons and others set forth below, plaintiffs' claims fail pursuant to Rule 12.  In addition, the Complaint must be stricken under California's anti-SLAPP statute, Cal. Code Civ. P. § 425.16.  This provision bars lawsuits that, like this one, arise from exercise of the defendant's free-speech rights and for which plaintiffs cannot show a probability of success on the merits.

## BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFFS' COMPLAINT

Ancestry is a genealogy company that provides users access to a variety of historical records to trace their family histories.  *See* Ancestry.com.  These sources include obituaries, family trees, marriage records, death records, military records, census records, local history books, and a variety of other records.  *See id.*  Some of these records have been collected by Ancestry, others are contributed by users who upload content.  Many of the billions of records available on Ancestry.com have never been accessed by actual users, and exist "unseen" in virtual storage.

1    Here, plaintiffs' claims are premised on Ancestry's inclusion of certain yearbook records

2    in Ancestry's "Yearbook Database." Specifically, plaintiff Abraham bases his claims on three

3    yearbook records accessible to Ancestry users. ECF No. 1 at ¶¶ 25-26. The first is Mr.

4    Abraham's sixth-grade yearbook portrait from 1998, the second a photograph of his school's track

5    team from 1999, and the third his seventh-grade yearbook portrait from 1999. *Id.* at ¶ 27.

6    Similarly, plaintiff Callahan bases her claims on 26 records "copied from [her high school's]

7    yearbooks between the years of 1996 and 1999[.]" *Id.* at ¶ 37. Among these are her freshman and

8    senior portraits, and yearbook pages reflecting participation in student council, the "National

9    Honors Society," and her designation as valedictorian. *Id.* at ¶ 40. Neither plaintiff contends their

10   pictures or information were actually ever viewed by any Ancestry member. Neither plaintiff

11   articulates or attempts to quantify any monetary injury from Ancestry's storage of these images

12   and information. Plaintiffs further concede they were unaware Ancestry maintained these records

13   until their "investigation" of this lawsuit. *See id.* at ¶¶ 24, 35.

14   Based on Ancestry's inclusion of these decades-old yearbook records in its database,

15   plaintiffs assert four claims on behalf of a putative class of California residents: (1) violation of

16   California Civil Code § 3344 (California's "right to publicity statute"); (2) violation of California

17   Business & Professions Code § 17200; (3) intrusion upon seclusion; and (4) unjust enrichment.

18   *Id.* at ¶¶ 58, 66-89.

19                                    **LEGAL STANDARDS**

20   **Article III Standing.** To establish standing under Article III of the U.S. Constitution, a

21   plaintiff bears the burden of proving an "injury in fact" that is causally linked to the conduct

22   complained of and would be redressed by a decision in plaintiffs' favor. *Lujan v. Defenders of*

23   *Wildlife*, 504 U.S. 555, 560-61 (1992). These requirements are "the irreducible constitutional

24   minimum" for standing. *Id.* It is "settled that Congress cannot erase Article III's standing

25   requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have

26   standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (citing *Gladstone, Realtors v. Village of*

27   *Bellwood*, 441 U.S. 91, 100 (1979)). The "requirement of injury in fact is a hard floor of Article

28

III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

When a defendant raises a Rule 12(b)(1) challenge to the asserted basis for subject matter jurisdiction, the plaintiff bears the burden to prove subject matter jurisdiction exists. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  A Rule 12(b)(1) motion is properly granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted).

**Failure to State a Claim.**  To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible" on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when factual allegations permit the "reasonable inference" that the defendant is liable for the conduct alleged. *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Facts that are "merely consistent with" liability fail to state a claim. *Id.* at 678 (quotations omitted).

**Motion to Strike Pursuant to California's Anti-SLAPP Statute.**  California enacted its anti-SLAPP statute in response to the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Code Civ. P. § 425.16(a).  To prevail on a motion to strike, the defendant need only make a "prima facie showing that the plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech. . . . The defendant need not show that plaintiff's suit was brought with the intention to chill defendant's speech; the plaintiff's intentions are ultimately beside the point." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (quotations, citations omitted).    The burden then shifts to the plaintiff to establish a probability of success on the merits.  Cal. Code Civ. P. § 425.16(b)(1).

Where an anti-SLAPP motion is based on the insufficiency of the pleadings, "a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890

F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019).

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS FAIL BECAUSE THEY DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS

Actual injury is a jurisdictional requirement for each of plaintiffs' claims pursuant to Article III of the U.S. Constitution.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  In addition, actual injury is a statutory element of plaintiffs' state-law claims for violation of the "right of publicity" and section 17200.  *See, e.g., Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name"); *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020), *reh'g denied* (Oct. 2, 2020), *review denied* (Dec. 9, 2020) (17200 claim may be brought only "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition").

To survive a motion to dismiss, allegations of actual injury must be both plausible and causally linked to the unlawful practice at issue.  *E.g.*, *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("[I]n order to satisfy Article III's standing requirement, a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation."); *Mayron*, 54 Cal. App. 5th at 574 (actual injury caused by the challenged conduct required to state claim under section 17200).  Additionally, it must be "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561.  Here, plaintiffs' Complaint demonstrates they are incapable of satisfying these requirements.

**No Concrete Injury.**  As a preliminary matter, nothing about the benign yearbook excerpts at issue is inherently harmful.  Yearbook information is not private.  The very purpose of a yearbook is public distribution, whether assessed by common experience or accepted definitions. *See* "Yearbook." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/yearbook ("a school *publication* that is compiled usually by a graduating class and that serves as a record of the year's activities") (emphasis added); "Publish." Merriam-

1  Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/publish

2  ("***to make generally known***"; "***to disseminate to the public***") (emphases added).

3          Even beyond the initial yearbook recipients (which likely numbered in the hundreds[1]),

4  yearbook information remains accessible to others through the recipients' sharing of the books,

5  through school and local libraries, and even through the national Library of Congress.[2]  Indeed, a

6  simple search of plaintiff Callahan's hometown library system shows it hosts full color copies of

7  her yearbooks online for anyone to access.[3]  Likewise, plaintiff Abraham's hometown library

8  makes available various editions of "The Charger," Mr. Abraham's middle school yearbook

9  publication.[4][5]

10         "A matter that is already public or that has previously become part of the public domain is

11  not private." *Rondberg v. McCoy*, 2009 WL 5184053, at *9 (S.D. Cal. Dec. 21, 2009).  *See also*

12  ──────────────────────────

13      [1]  For example, in 1999, when plaintiffs here were both in school, the average public high
14  school in Michigan had 714 students and the average public middle school in New Mexico had
   464 students.  National Center for Education Statistics, Overview of Public Elementary and
15  Secondary Schools and Districts: School Year 1999-2000, available at
   https://nces.ed.gov/pubs2001/overview/table05.asp.
16      [2]  *See, e.g., https://www.loc.gov/resource/mss85590.041/?sp=1&r=-*
17  *0.649,0.265,2.298,0.978,0* (featuring, for example, full pages from Rahway High School's 1951
   yearbook).
18      [3]  *See http://sccl.lib.mi.us/Yearbooks.aspx*;
   *https://archive.org/details/PortHuronNorthern1996/page/n99/mode/2up* (featuring Ms. Callahan's
19  freshman year photograph, on which her claim is based, ECF No. 1 at ¶ 39);
   *https://archive.org/details/PortHuronNorthern1999/page/n49/mode/2up* (featuring Ms. Callahan's
20  senior year photograph, on which her claim is based, ECF No. 1 at ¶ 39).  All of plaintiff
   Callahan's (nee Whipple) appearances in these publicly-available yearbooks can be identified
21  through the indices at the end of the publications.
       [4]
22  *https://albuq.cabq.gov/search~S1?/Xyearbook*+albuquerque+academy&searchscope=1&SORT=D
23  /Xyearbook+albuquerque+academy&searchscope=1&SORT=D&SUBKEY=yearbook+albuquerq
   ue+academy/1%2C5%2C5%2CB/frameset&FF=Xyearbook+albuquerque+academy&searchscope
24  =1&SORT=D&2%2C2%2C.  *See also https://libanswers.abqlibrary.org/branches/faq/27526*
   ("Our Special Collections library and the Genealogy Center have an extensive collection of
25  Albuquerque-area high school yearbooks.").
       [5]  These websites can be judicially noticed.  *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d
26  1078, 1085 (S.D. Cal. 2016) ("The court can take judicial notice of public records and government
27  documents available from reliable sources on the Internet, such as websites run by governmental
   agencies.") (quotation, citation omitted).

28

1   *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009), *as modified* (Apr. 30,

2   2009) (same, holding the challenged information was not private where it was "available to any

3   person with a computer," and thus "no reasonable person would have had an expectation of

4   privacy").   "Moreover, it is equally underlined that there is no liability when the defendant merely

5   gives further publicity to information about the plaintiff which is already public or when the

6   further publicity relates to matters which the plaintiff leaves open to the public eye." *Sipple v.*

7   *Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047 (1984).

8           Where, as here, the information at issue is already a matter of public record, its disclosure

9   cannot cause harm.   *See, e.g., Jackson v. Loews Hotels, Inc.*, 2019 WL 2619656, at *3–4 (C.D.

10  Cal. Jan. 4, 2019) (finding that the plaintiff suffered no injury-in-fact when only publicly available

11  information such as her "full name, email, phone number, and address" was exposed in data

12  breach); *Fus v. CafePress, Inc.*, 2020 WL 7027653, at *3 (N.D. Ill. Nov. 30, 2020) (no concrete

13  injury where "most of Fus's information possessed by CafePress at the time of the hack was

14  publicly available information"); *In re VTech Data Breach Litig.*, 2017 WL 2880102, at *4 (N.D.

15  Ill. July 5, 2017) (no injury where "plaintiffs' names, addresses, birthdates, and . . . account

16  information" were disclosed); *Bodnar v. Cty. of Riverside*, 2020 WL 2542871, at *7 (C.D. Cal.

17  Mar. 3, 2020), *report and recommendation adopted*, 2020 WL 2542617 (C.D. Cal. Apr. 6, 2020)

18  ("[G]iven that the fact of the settlement was made public in September 2019, there is little to no

19  harm to defendants resulting from plaintiff's subsequent disclosure"); *Todd v. Tempur-Sealy Int'l,*

20  *Inc.*, 2015 WL 1006534, at *4 (N.D. Cal. Mar. 6, 2015) ("[B]ecause the information in the Product

21  Training Guides is already available to the public . . . Defendant has failed to show that any

22  particularized harm will result from disclosure of the information."); *Mirfasihi v. Fleet Mortg.*

23  *Corp.*, 2007 WL 2066503, at *4 (N.D. Ill. July 17, 2007), *aff'd*, 551 F.3d 682 (7th Cir. 2008)

24  ("Because the information disclosed was already a matter of public record . . . FMC's disclosure

25  could not have caused any harm.");   *See also Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679,

26  691 (2004) ("[O]nce the truthful information was 'publicly revealed' or 'in the public domain' the

27  court could not constitutionally restrain its dissemination. . . . punishing truthful information

28  lawfully obtained could result in a harmful timidity and self-censorship on the part of the press.")

(quotations, citations omitted).

Nor can plaintiffs plausibly allege any actual injury resulted from the manner in which this information was used.  Plaintiffs contend only that Ancestry offered *access* to their yearbook excerpts.  They do not allege Ancestry otherwise used their names or images to promote its services—for example, through a representation that plaintiffs endorse Ancestry or even that plaintiffs use Ancestry's services.  *Cf. Cohen v. Facebook*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing plaintiffs' "right of publicity" claims where "Plaintiffs have not shown how the mere disclosure to their Facebook friends that they have employed the Friend Finder service (even assuming some of them did not) causes them any cognizable harm, regardless of the extent to which that disclosure could also be seen as an implied endorsement by them of the service.").  In other words, no further association is suggested by plaintiffs' names or images except the fact that they appear in the yearbook.  But that information is already publicly available (for free) through a few keystrokes for anyone to view without restriction, and plaintiffs already distributed this information publicly and without payment or further conditions by consenting to appear in the yearbooks in the first instance.  Plaintiffs' conclusory assertion they "lost the value of their names and images" cannot satisfy *Twombly*'s plausibility bar when any conceivable value associated with the yearbook information was abandoned long ago by plaintiffs themselves.  *See* ECF No. 1 at ¶ 77.

Further, although plaintiffs would be unable to demonstrate actual injury even if they could allege someone sought out their yearbook records and paid to access them, they fail to allege this ever occurred.  Instead, they contend only that their records were among the "billions" of others that users of the website *could* search for purposes of viewing or downloading.  *See* ECF No. 1 at ¶¶ 3, 8, 10.  That plaintiffs' already-public yearbook information merely *exists* in Ancestry's database is the proverbial tree falling in unoccupied woods—without further allegations of *access* this mere data storage could not possibly have caused plaintiffs any injury.  *Cf. Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (no Article III injury where leaked medical records were not accessed by anyone—it was implausibly "attenuated" to assume a thief would "select [plaintiff]'s report from the over 3,600 reports in the missing boxes").

1       Nor can plaintiffs salvage their infirm injury allegations by contending that Ancestry

2  benefitted from use of this information. A defendant's alleged gain does not mean the plaintiffs

3  were injured.  *See, e.g., Silha v. ACT, Inc.*, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014),

4  *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("Plaintiffs' allegations that Defendants profited from selling

5  Plaintiffs' PII does not amount to an injury in fact for standing purposes."); *In re Google, Inc.*

6  *Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("a plaintiff must do

7  more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the

8  process he lost dollars of his own."); *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *4

9  (W.D. Wash. June 1, 2012) ("It is not enough to allege only that the information has value to

10  Defendant; the term 'loss' requires that Plaintiffs suffer a detriment.").

11       **<u>No Causation Or Redressability.</u>**  Even if plaintiffs could plausibly allege a concrete

12  injury (they cannot), there is no plausible link between any such injury and the challenged

13  conduct, and it is equally unlikely redress would result from a favorable decision.  *See Lujan*, 504

14  U.S. at 560-61.  As discussed, plaintiffs already voluntarily shared this information with hundreds

15  of individuals when they allowed it to be published in their yearbooks in the first instance.

16  Accordingly, to the extent plaintiffs could allege any "loss" to the value of their names and

17  images, such "loss" would have arisen from the original publication and distribution, in which

18  Ancestry had no part.  For this same reason, any purported "injury" would not be redressed by a

19  favorable decision here—this public information is available through a variety of forums,

20  including plaintiffs' hometown libraries.  Any decision in plaintiffs' favor here would do nothing

21  to address its widespread availability through other, third-party sources.  *See Lujan*, 504 U.S. at

22  562-570 ("causation and redressability ordinarily hinge on the response of the regulated (or

23  regulable) third party . . . and perhaps on the response of others as well," and purported injury was

24  not redressable where "resolution by the District Court would not have remedied respondents'

25  alleged injury anyway, because it would not have been binding upon" those who were "not parties

26  to the suit").

27

28

## II.    PLAINTIFFS' CLAIMS UNDER CIVIL CODE SECTION 3344 AND THE UCL FAIL BECAUSE THE CHALLENGED CONDUCT FALLS UNDER THE "PUBLIC AFFAIRS" EXCEPTION

California Civil Code section 3344 exempts liability for "use of a name, voice, signature, photograph, or likeness in connection with any news [or] public affairs[.]" Cal. Civ. Code § 3344(d).  It is immaterial whether such use has a commercial purpose.  *Guglielmi v. Spelling–Goldberg Productions*, 25 Cal. 3d 860, 868–69 (1979) ("The First Amendment is not limited to those who publish without charge. . . . The fact that respondents sought to profit from the production and exhibition of a film utilizing Valentino's name and likeness is not constitutionally significant.").  Nor is the exception "limited to 'news' in the narrow sense of reports of current events. It extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published." *Shulman v. Group W Prod., Inc.*, 18 Cal. 4th 200 (1998) (citations and internal quotation marks omitted). *See also Carlisle v. Fawcett Publications, Inc.*, 201 Cal. App. 2d 733, 746 (1962) ("The privilege of printing an account of happenings and of enlightening the public as to matters of interest is not restricted to current events; magazines and books, radio and television may legitimately inform and entertain the public with the reproduction of past events, travelogues and biographies.").[6]

Application of this exception focuses on the purpose in using a person's identity.  "If the purpose is 'informative or cultural' the use is immune[.]" *New Kids On The Block v. News Am.*

---

[6]  *See also* § 6:9. The newsworthiness-public interest limitation, Privacy Torts § 6:9 ("[T]he newsworthiness-public interest privilege is not limited to matters regarding public figures and has been freely defined to extend to an almost limitless variety of matters about private individuals which are of interest to the viewing, reading or listening public—matters of sexual, social and ethical mores; current news about public events or occurrences; historical events or occurrences; social movements and problems; public safety; political occurrences and/or abuse of office; travel; entertainment; human interest stories; consumerism; landlord rental policy; grooming and fashion; romance; crime and prisons; physical fitness; medical and psychiatric issues; labor and employment; accidents and catastrophes; matters of educational interest.") (collecting cases).

1   *Pub., Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992).  For

2   example, in *New Kids On The Block*, the plaintiffs asserted claims under section 3344 where the

3   defendants posted an "article" with the name and pictures of the group that solicited readers to call

4   a pay-per-call phone number to vote for "the sexiest New Kid."  *Id.* at 1542.  The court dismissed

5   the plaintiffs' misappropriation claims, holding this use of the group's name and image was

6   "gathering information for dissemination to the public," a protected activity.  *Id.* at 1546.

7        Likewise, in *Aldrin v. Topps Co., Inc.*, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011),

8   astronaut Buzz Aldrin asserted a misappropriation claim under section 3344 where the

9   defendant—a baseball card manufacturer—released a new product line with plaintiff's image on

10   the front and historical information related to the picture on the back.  *Id.* at *1.  Again, the court

11   dismissed the claim because the activity was protected.  The use of Mr. Aldrin's information was

12   not "linked to products that bore no relationship" to plaintiff—rather, "the speech *is* the product,

13   and is protected."  *Id.* at *3 (emphasis in original).

14        So too here.  Plaintiffs' names and images are not being used to sell an unrelated product;

15   rather, plaintiffs allege their names and images are merely a part of the full yearbook record that

16   some customers pay to access.  *See* ECF No. 1 at ¶¶ 30, 37.[7]  Ancestry has simply gathered

17   historic, biographical information for dissemination to the public—information scarcely different

18   in character than if Ancestry had collected and stored various local telephone directories.[8]  *New*

19   _____

20        [7]  To the extent plaintiffs attempt to distinguish the "targeted promotional email messages" or

21   the indication that "[t]here's more to see," in connection with the preview of the record (*see* ECF
     No. 1 at ¶¶ 30, 32), these uses are likewise not actionable under the corollary that permits "use of a

22   person's identity to advertise a permissible use of the identities …" Restatement (Third) of Unfair
     Competition § 47, comm. a (1995).

23        [8]  Indeed, because there is significant public interest in yearbook information, historical
     yearbook records are available from numerous paid and free services.  *See, e.g.,* Genealogy

24   Resources at the Library, San Francisco Public Library, available at

25   https://sfpl.org/locations/main-library/general-collections/genealogy-resources-library ("The San
     Francisco History Center . . . has an assortment of materials relating to people widely known and

26   relatively unknown in San Francisco, the greater Bay Area, and California, including . . . an
     extensive collection of high school yearbooks going back to the 1800s that can assist with

27   genealogical research, especially photographs."); Lerno, Tina, *Will You Go To Prom With Me?*,
     Los Angeles Public Library Blog, available at https://www.lapl.org/collections-

28        (footnote continued)

*Kids On The Block*, 745 F. Supp. at 1546 (gathering information for dissemination to the public for informative purposes is protected speech).  As in *Topps*, here this "speech *is* the product, and is protected."  *See Topps*, 2011 WL 4500013 at *3.[9]

### III.   PLAINTIFFS' CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Section 230 of the Communications Decency Act provides in relevant part that "[n]o provider or member of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This immunity encompasses each of the state-law claims plaintiffs assert here.  *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (section 230 barred misappropriation of right of publicity claim); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019) (section 230 barred UCL claim); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (section 230 barred intrusion upon seclusion claim); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (section 230 barred unjust

_____

resources/blogs/lapl/prom-night-dreams (tracing the history of prom through high school yearbooks, with a photograph of the Grant High School senior prom king and queen from 1961; noting, "The library also has a vast collection of yearbooks from high schools all over Los Angeles through the ages").  Of course, this type of widely-available historical information is not limited to yearbook records, but also encompasses a variety of pictorial archives, including local sporting events (e.g., *https://california.scorebooklive.com/tag/high-school-football-photos/* (pictorial archives of California high school football);
*http://www.enfieldhockey.org/Page.asp?n=16089* (vintage photo collections for youth field hockey organization)); military photographs (*https://www.loc.gov/rr/print/resource/065_mili.html* (major repositories of publicly-available military images)); obituaries
(*https://www.obitcentral.com/* (subscription access to obituaries);
*http://www.scgsgenealogy.com/obit-search_soundex.html* (same, for free)); and others.  Endorsing plaintiffs' theories here could extend to those sources as well, and jeopardize public access to broad swaths of historical information.

[9]   Plaintiffs' claim under California Business & Professions Code section 17200 is entirely derivative of their claim for violation of California Civil Code section 3344.  *See* ECF No. 1 at ¶¶ 72-77.  Accordingly, this claim fails for the same reasons as plaintiffs' first cause of action.  *See, e.g., White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007) (section 17200 claim fails as derivative claim); *Andrade v. Arby's Rest. Grp., Inc.*, 2015 WL 6689475, at *4 (N.D. Cal. Nov. 3, 2015) (dismissing derivative 17200 claim where claim from which it derived was dismissed); *Porch v. Masterfoods USA, Inc.*, 364 F. App'x 365, 367 (9th Cir. 2010) (same).

1   enrichment claim).

2       "The CDA has been interpreted to provide a 'robust' immunity for internet service

3   providers and websites, with courts 'adopting a relatively expansive definition of 'interactive

4   computer service' and a relatively restrictive definition of 'information content provider.'"

5   *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (quoting *Carafano*, 339

6   F.3d at 1123).  Here, plaintiffs' allegations establish that Ancestry is an interactive computer

7   service entitled to this immunity.

8       There is no dispute that Ancestry operates a website accessible to multiple users.  *See* ECF

9   No. 1 at ¶¶ 6-10 (multiple users can access the website); 19-20 (alleging Ancestry owns and

10  operates the website at issue); 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to

11  mean one that "provides or enables computer access by multiple users to a computer server");

12  *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016), *aff'd*, 700 F. App'x

13  588 (9th Cir. 2017) (website operator was "interactive computer service" where it provided

14  computer access to multiple users.

15      Further, plaintiffs concede that the content of the yearbooks was provided by third parties.

16  ECF No. 1 at ¶¶ 46 (alleging information at issue is "copied from school yearbooks."); 49 ("At

17  least some, and possibly all, of the Yearbook Database was built via such [third-party]

18  donations.").  Where, as here, "a third party willingly provides the essential published content, the

19  interactive service provider receives full immunity regardless of the specific editing or selection

20  process."  *Carafano*, 339 F.3d at 1124.

21      Plaintiffs may attempt to wrest Ancestry into the "restrictive definition of 'information

22  content provider,'" *Goddard*, 640 F. Supp. 2d at 1196, based on its role in uploading the

23  information to the internet, but this limited involvement is insufficient.  *Kimzey v. Yelp! Inc.*, 836

24  F.3d 1263, 1270-71 (9th Cir. 2016) ("Yelp is not liable for disseminating . . . [user-generated]

25  content in essentially the same format to a search engine, as this action does not change the origin

26  of the third-party content."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir.

27  2014) (selecting, republishing, and commenting upon user generated content, is not "creation or

28  development.").

The Ninth Circuit's decision in *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) provides a useful framework to distinguish Ancestry's actions from conduct that rises to the level of "information content provider."  There, the court considered first whether Roommates.com was immune under section 230 where it required users to enter discriminatory information as part of its registration process—for example, users were required to indicate whether there were "'Straight male(s),' 'Gay male(s),' 'Straight female(s)' or 'Lesbian(s)' living in the dwelling." *Id.* at 1165.  The court determined Roommates.com was not entitled to immunity for this aspect of its site because "the part of the profile that is alleged to offend the Fair Housing Act and state housing discrimination laws . . . is provided by subscribers in response to Roommate's questions, which they cannot refuse to answer if they want to use defendant's services." *Id.* at 1166.  On the other hand, Roommates.com also hosted an "Additional Comments" page as part of its sign-up process; users were prompted to write "a paragraph or two describing yourself and what you are looking for in a roommate." *Id.* at 1173.  In turn, "Roommate publishe[d] these comments as written. . . . [and was] not responsible, in whole or in part, for the development of this content, which comes entirely from subscribers and is passively displayed by Roommate." *Id.* at 1173-74.  Accordingly, "[t]his [was] precisely the kind of situation for which section 230 was designed to provide immunity," even though users could (and did) enter discriminatory preferences. *Id.* at 1174.

Here, like the "Additional Comments" in *Roommates.com*, plaintiffs allege Ancestry gave users the option to donate old yearbooks (ECF No. 1 at ¶ 49) and Ancestry then hosted this third-party content, which was simply "copied from [the] school yearbooks." *Id.* at ¶ 46.  Unlike the pre-set, discriminatory questions users were required to answer in *Roommates.com*, Ancestry was "not responsible, in whole or in part, for the development of this content[.]" *Roommates.Com, LLC*, 521 F.3d at 1173-74.

The decision in *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) provides another useful distinction.  There, the court  held Facebook was an "information content provider" with respect to the material at issue because Facebook did not just publish tortious content, but actually created and developed that content itself—Facebook used plaintiffs' likenesses to create a

"Sponsored Story" in which plaintiffs' names and images were used by Facebook as "endorsements of third-party products or services." *Id.* at 801. Here, plaintiffs allege no such thing—they do not contend Ancestry used their names or images to endorse Ancestry (or any other product). Instead, they claim only that Ancestry hosted the third-party content and required some users to pay to access that content—that alone is insufficient to transform Ancestry into an "information content provider." *See Roommates.com*, 521 F.3d at 1173 (the "Additional Comments" section, for which Roommates.com was entitled to section 230 immunity, was "visible only to paying subscribers.").

Because Ancestry merely published the third-party content that provides the basis for plaintiffs' claims, it is immune from these state-law causes of action pursuant to section 230 of the Communications Decency Act.

## IV. PLAINTIFFS' SECTION 3344 AND DERIVATIVE UCL CLAIM ARE PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT

Right of publicity claims are preempted by section 301 of the Copyright Act to the extent the claims rest on distribution or display of a copyrighted work, rather than on the misuse of a plaintiff's "likeness." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017). The Ninth Circuit applies the following framework:

> [A] publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness on merchandise or in advertising. But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act.

*Id.* at 1011 (emphasis in original). The Ninth Circuit's emphasis on the "use" of a person's name or likeness derived from the Seventh Circuit's decision in *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005), which held "[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question." *Id.*

In *Maloney*, the plaintiffs asserted claims under section 3344 where the defendant sold licenses that allowed customers to download photographs of plaintiffs. 853 F.3d at 1007. Although the plaintiffs alleged the defendant exploited their names and likenesses for commercial

1   purposes, the Ninth Circuit deemed the claims preempted—the plaintiffs "were asserting rights

2   equivalent to the exclusive rights contained in the Copyright Act because they did not identify a

3   use of their names or likenesses independent of the display, reproduction, and distribution of the

4   copyrighted images in which they are depicted." *Id.* at 1008-09.

5       The same is true here.  Although plaintiffs frame their claims in terms of Ancestry's "use"

6   of their names and likenesses, in substance plaintiffs challenge Ancestry's model of paid access to

7   their copyrighted yearbooks.[10]  Plaintiffs do not identify any use of their names or images apart

8   from their mere appearance in the yearbook pages hosted on Ancestry's site—they do not contend

9   their names or images were used to make it appear they "endorse[d] the product in question" in

10  any way.  *See Toney*, 406 F.3d at 910.  Instead, plaintiffs claim only that Ancestry offered *access*

11  to those yearbook excerpts.

12      Plaintiffs' claims are similar to those rejected in *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911

13  (1996).  There, the producers of a film did not fully compensate the actors, who then brought

14  section 3344 claims arguing that their images had been used without consent.  *Id.* at 1915.  The

15  *Fleet* court reasoned that their appearances in the film were copyrightable, and because the actors

16  sought to prevent defendant "from reproducing and distributing their performances in the film,

17  their claims must be preempted by federal copyright law."  *Id.* at 1919.  Likewise, in *Jules Jordan

18  Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146 (9th Cir. 2010), the court rejected plaintiff's

19  section 3344 claims where the misappropriation of his name and persona resulted from

20  unauthorized production of DVDs, a copyrighted medium.  *Id.* at 1152-53.

21      Here, plaintiffs' allegations concerning use of their names and images arise solely from

22

23  _____

24  [10]  The yearbooks at issue here undoubtedly fall within the "subject matter of copyright."  *See*
    17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible

25  medium of expression," including "compilations").  In any event, the scope of preemption is
    broader than the scope of copyright protection—"the shadow actually cast by the Act's

26  preemption is notably broader than the wing of its protection."  *Endemol Entm't B.V. v. Twentieth
    Television Inc.*, 1998 WL 785300, at *3 (C.D. Cal. Sept. 29, 1998) (quotation, citation omitted).

27  *See also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (even where
    drawings were not protected by Copyright Act, unfair competition claims nonetheless preempted).

28

1   reproduction of pages from their yearbooks.  Had they wished to protect the distribution of these

2   yearbook pages, they could have "simply retain[ed] [or acquired] the copyright."  *Fleet*, 50 Cal.

3   App. 4th at 1921.  That they failed to do so does not allow them to circumvent the federal

4   Copyright Act by asserting state-law misappropriation claims.[11]

5   **V.      PLAINTIFFS CANNOT PLAUSIBLY STATE A CLAIM FOR INTRUSION UPON**

6   **SECLUSION**

7         An action for intrusion upon seclusion under California law requires: "(1) an intrusion into

8   a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person."

9   *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 991 (N.D. Cal. 2014).   Plaintiffs cannot

10  satisfy either of these two requirements.

11        First, plaintiffs cannot  plausibly contend they had "an objectively reasonable expectation

12  of seclusion or solitude in the place, conversation or data source."  *See Shulman v. Grp. W Prods.,*

13  *Inc.*, 18 Cal. 4th 200, 232 (1998), *as modified on denial of reh'g* (July 29, 1998).  The information

14  they rely upon appeared publicly in yearbooks anyone could access.  *See, e.g., Four Navy Seals v.*

15  *Associated Press*, 413 F. Supp. 2d 1136, 1144 (S.D. Cal. 2005) ("Numerous cases hold that there

16  is no privacy for a matter already in the public domain.") (collecting cases); *Moreno*, 172 Cal.

17  App. 4th at 1130 ("A matter that is already public or that has previously become part of the public

18  domain is not private."); *Sipple*, 154 Cal. App. 3d at 1047 ("there is no liability when the

19  defendant merely gives further publicity to information about the plaintiff which is already public

20  or when the further publicity relates to matters which the plaintiff leaves open to the public eye.").

21        Moreover, the yearbook information is otherwise generally available, public information—

22  names, depictions of plaintiffs' faces, and their school activities are not private matters.  *See, e.g.,*

23  *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) ("name and

24  former physical appearance are not private facts"); *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1040

25  (N.D. Cal. 2005) (names of TSA employees were "not private"); *Pierce v. Kernan*, 2017 WL

26  _____

27  [11]  For the reasons set forth above (*supra*, note 9), plaintiffs' derivative 17200 claim must fail
    with their claim for violation of California Civil Code section 3344.

28

4621252, at *7 (S.D. Cal. Oct. 16, 2017) (with respect to the activities in which plaintiffs participated, "no privacy rights could have reasonably existed while petitioner was out in the public and viewable to the naked eye.").

Second, the information at issue is not "highly offensive to a reasonable person." *Varnado*, 43 F. Supp. 3d at 991.  Almost every person who attended school in the United States (including plaintiffs) have voluntarily had *exactly* this type of information published about them—in school yearbooks.  The information at issue ranges from entirely benign (school portraits; participation on a track team) to résumé-worthy (plaintiff Callahan's distinction as class valedictorian).  Even setting aside that plaintiffs themselves already voluntarily disclosed this information in their public yearbooks, its dissemination would not otherwise offend any reasonable person.  *See, e.g., Stern v. Weinstein*, 2010 WL 11459791, at *6 (C.D. Cal. Jan. 6, 2010), *aff'd*, 512 F. App'x 701 (9th Cir. 2013) (case did "not present a 'sufficiently serious' invasion of privacy" where "Plaintiff voluntarily shared his posting with approximately 2,300 CAALA listserv members"; "California case law . . . dictates a higher threshold. Absent any allegation of the unauthorized accessing or disclosure of sensitive medical information or comparably sensitive or embarrassing information, this claim fails."); *Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at *10 (C.D. Cal. Oct. 13, 2011), *aff'd sub nom. Sarver v. Chartier,* 813 F.3d 891 (9th Cir. 2016) ("[T]he portrayal of Plaintiff was not highly offensive to a reasonable person. If the character of Will James was in fact modeled on Plaintiff, then Plaintiff was portrayed as a war hero, struggling with presumably the same conflicts experienced by many modern military soldiers, deployed in a foreign country."); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding the disclosure of a person's name and identity, contact list, and contents of communications to third-party developers was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding the disclosure of a person's age, gender, and geolocation information was not a breach of social norms); *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002) ("The covert videotaping of a business conversation among strangers in business offices does not rise to the level of an exceptional prying into another's private affairs, which the Restatement's illustrations indicate is required for

'offensiveness.' . . . In addition, any offensiveness of the alleged intrusion is mitigated by the public interest in the news gathered"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992-93 (2011), *as modified* (June 7, 2011) (noting "California has adopted the Restatement Second of Torts formulation of the intrusion-into-private-matters tort," and holding retailer's conduct of obtaining customer's ZIP code under false pretenses and using it for its own marketing purposes was not highly offensive); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295-301 (2009) (employer's installation of surveillance camera "in an [employee's] office that was reasonably secluded from public access and view" did not constitute a "highly offensive and ... egregious violation of prevailing social norms"); *Felix v. State Comp. Ins. Fund*, 2007 WL 3034444, at *9 (C.D. Cal. Oct. 3, 2007) ("Even if Defendant . . . listened in on Plaintiff's private phone conversations in the next cubicle, these intrusions were not serious or 'highly offensive to a reasonable person.'"). *See also* § 12:6. Highly offensive to a reasonable person, 2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6 ("Generally, accurate photographic depictions of an individual are not considered highly offensive to a reasonable person."). Accordingly, plaintiffs' third cause of action should be dismissed.

## VI.  NO STANDALONE CLAIM FOR UNJUST ENRICHMENT EXISTS

Although plaintiffs assert a separate cause of action for unjust enrichment, *see* ECF No. 1 at ¶¶ 85-89, courts have consistently recognized "there is no cause of action for unjust enrichment under California law." *See, e.g., Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) ("Both this Court, as well as other federal district courts, have previously determined that there is no cause of action for unjust enrichment under California law.") (collecting cases). Accordingly, plaintiffs' fourth cause of action should be dismissed.

## VII.  THE COURT SHOULD STRIKE PLAINTIFFS' PRAYER FOR STATUTORY DAMAGES BECAUSE PLAINTIFFS HAVE NOT, AND CANNOT, ALLEGE MENTAL ANGUISH

Plaintiffs seek statutory damages in connection with their section 3344 claim. *See* ECF No. 1 at ¶¶ 70, 90(f). However, this statutory damages provision applies only where plaintiffs have suffered mental anguish as a result of the alleged violation. *See Miller v. Collectors*

1 *Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008) ("[T]he legislative history of section 3344(a)

2 reveals the statutory minimum damages were meant to compensate non-celebrity plaintiffs who

3 suffer . . . mental anguish yet no discernible commercial loss. To the extent Miller suffered

4 commercial loss . . . his recourse was to prove actual damages like any other plaintiff whose name

5 has commercial value."); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1243 (N.D. Cal. 2014)

6 (following *Miller* to dismiss statutory damages claim where plaintiffs had not alleged mental

7 anguish resulted from the claimed violations). Here, plaintiffs have not claimed any "mental

8 anguish" resulted from Ancestry's inclusion of their publicly-available yearbook records in

9 Ancestry's database, nor could they—as set forth above, the yearbook information at issue here is

10 not only entirely benign, but has also been publicly available through other sources for decades.

11 *See supra* at Part I. Accordingly, the Court should strike plaintiffs' prayer for statutory damages.

## VIII.   THE COURT SHOULD STRIKE PLAINTIFFS' RESTITUTION-BASED CLAIMS

13 ###   BECAUSE AN ADEQUATE REMEDY AT LAW EXISTS

14        Among other remedies, plaintiffs' complaint seeks restitution. *See* ECF No. 1 at ¶ 90(e).

15 To the extent plaintiffs seek restitution in connection with their claim for violation of California

16 Business & Professions Code section 17200, this remedy is precluded by the Ninth Circuit's

17 decision in *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir.), *opinion amended and*

18 *superseded on denial of reh'g*, 971 F.3d 834 (9th Cir. 2020). In *Sonner*, the court held a plaintiff

19 "must establish that she lacks an adequate remedy at law before securing equitable restitution for

20 past harm under the UCL[.]" *Id.* at 1081. Here, plaintiffs' UCL claims are premised on the same

21 conduct that underlies their claim for violation of California Civil Code section 3344, which

22 provides a remedy at law. *See* ECF No. 1 at ¶¶ 72-77.

23        Accordingly, plaintiffs' request for restitution should be struck to the extent it is premised

24 on their UCL claim. *See, e.g., KEMA, Inc. v. Koperwhats*, 2010 WL 3464737, at *13 (N.D. Cal.

25 Sept. 1, 2010) ("[T]o the extent Koperwhats' prayer for damages and restitution is based on

26 Koperwhats' UCL claim, the motions to strike the prayer will be granted.").

27

28

1    **IX.     THE COURT SHOULD STRIKE PLAINTIFFS' CLAIMS PURSUANT TO**

2          **CALIFORNIA'S ANTI-SLAPP STATUTE**

3          California's anti-SLAPP statute allows defendants to bring a special motion to strike

4    where the action arises from any act "in furtherance of the person's right of petition or free speech

5    . . . in connection with a public issue[.]"  Cal. Code Civ. P. 425.16(b)(1).  The Ninth Circuit has

6    recognized the availability of this special motion in federal court proceedings.  *E.g., DC Comics v.*

7    *Pac. Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013).

8          To succeed on an anti-SLAPP motion, "the moving defendant must make a prima facie

9    showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional

10   right to free speech."  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).  "The

11   burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its

12   claim in order for that claim to survive dismissal."  *Id.*

13         The anti-SLAPP statute recognizes four categories of protected speech and petitioning,

14   including "any written or oral statement or writing made in a place open to the public or a public

15   forum in connection with an issue of public interest," Cal. Civ. Proc. Code § 425.16(e)(3), and

16   "any other conduct in furtherance of the exercise of the constitutional right of petition or the

17   constitutional right of free speech in connection with a public issue or an issue of public interest,"

18   *id.* § 425.16(e)(4).  Here, the conduct at issue falls into both of these categories.

19         As to the first, it is well established that "[w]eb sites accessible to the public ... are 'public

20   forums' for purposes of the anti-SLAPP statute."  *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4

21   (2006).   Here the challenged yearbook excerpts appeared on Ancestry's website, a public forum.

22   *See id.*

23         Sections 425.16(e)(3) & (4) also require that the speech at issue occur "in connection" with

24   "an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3) & (4).  This requirement is also

25   readily satisfied.  "[M]atters in the public interest are not restricted to current events," and instead

26   broadly encompass activities that "may legitimately inform and entertain the public with the

27   reproduction of past events[.]"  *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 543 (1993)

28   (quotations, citations omitted).  That the challenged speech is a "documentary . . . of an historical

1   nature" does not "diminish[] any constitutional protection it enjoys."  *Gates v. Discovery*

2   *Commc'ns, Inc.,* 34 Cal. 4th 679, 695–96 (2004).  "[T]here is no indication that the First

3   Amendment provides less protection to historians than to those reporting current events."  *Id.*

4   (quotation, citation omitted).  Nor does it matter that the statements concern information of

5   interest to a specific community, or about an otherwise non-public person.  *See, e.g., Hicks v.*

6   *Richard*, 39 Cal. App. 5th 1167, 1176 (2019), *review denied* (Jan. 2, 2020) (there was "little

7   question" the conduct of a private elementary school principal implicated an issue of public

8   interest); *Gates*, 34 Cal. 4th at 683, 696 (anti-SLAPP motion granted where plaintiff, "a person

9   who many years previously served a prison term for a felony conviction but who has since lived

10  an obscure, lawful life and become a respected member of the community," filed suit as a result of

11  historical documentary that was based on information from public records).

12          The yearbooks at issue serve as "a record of the year's activities" at each plaintiffs'

13  respective schools.  *See* "Yearbook." Merriam-Webster.com Dictionary, Merriam-Webster,

14  https://www.merriam-webster.com/dictionary/yearbook.  They are a snapshot in time, in the same

15  way as a clipping from a local newspaper documenting a town fair, or a vignette in Ken Burns'

16  "Jazz" documentary featuring local club attendees.  Much like the government-run libraries that

17  have collected and maintained this exact information because of its historical value,[12] Ancestry

18  collects this historical, documentary information for others to access.  *See, e.g., New Kids On The*

19  *Block*, 745 F. Supp. at 1546 ("gathering information for dissemination to the public" is "a

20  protected First Amendment activity"); *Dora*, 15 Cal. App. 4th at 543 (1993) ("reproduction of past

21  events" constitutes matter "in the public interest") (quotations, citations omitted); *Gates,* 34 Cal.

22  4th at 695–96 (historians entitled to same protection as those reporting current events);

23  ───────────────────

24          [12]  *See http://sccl.lib.mi.us/Yearbooks.aspx* (full color yearbooks, including those at issue here,
    available through the St. Clair County Library system);
25  *https://albuq.cabq.gov/search~S1?/Xyearbook*+albuquerque+academy&searchscope=1&SORT=D
    /Xyearbook+albuquerque+academy&searchscope=1&SORT=D&SUBKEY=yearbook+albuquerq
26  ue+academy/1%2C5%2C5%2CB/frameset&FF=Xyearbook+albuquerque+academy&searchscope
    =1&SORT=D&2%2C2%2C (copies of plaintiff Abraham's middle school yearbook available
27  through the Albuquerque Public Library).

28

*Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413  (2001) (holding that the First Amendment protected Major League Baseball's use of "factual data concerning players, their performance statistics, and verbal descriptions and video depictions of their play.").  Congress has explicitly recognized the public value in facilitating the more widespread availability of this type of information through the internet.  *See* 47 U.S.C. § 230(a)(1) (recognizing the "rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.").

Because plaintiffs' action seeks to inhibit speech in connection with an issue of public interest, plaintiffs bear the burden to demonstrate it is probable they will succeed on the merits. *Makaeff*, 715 F.3d at 261.  They cannot meet that hurdle here.  As shown above, plaintiffs' claims suffer myriad defects: no injury resulted from the alleged violations, a required element of plaintiffs' first and second causes of action (*see supra* at Part I); their section 3344 and 17200 claims also fail because the conduct at issue falls within a statutory exception for public affairs (*see supra* at Part II); all plaintiffs' claims are foreclosed by section 230 of the Communications Decency Act (*see supra* at Part III); their section 3344 and 17200 claims are preempted by the Copyright Act (*see supra* at Part IV); they cannot plausibly state a claim for "intrusion upon seclusion" (*see supra* at Part V); and no independent cause of action for "unjust enrichment" exists (*see supra* at Part VI).

Accordingly, the Court should strike plaintiffs' claims and, should the Court grant Ancestry's motion, Ancestry should be awarded its attorney's fees and costs.  *See* Cal. Code Civ. P. 425.16(c)(1) ("a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.").

## **CONCLUSION**

For all these reasons, Ancestry's motion to dismiss and/or special motion to strike should be granted.

Respectfully submitted,

DATED:  January 4, 2021                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


                                           By /s/ Shon Morgan
                                              Shon Morgan
                                              Attorneys for ANCESTRY.COM OPERATIONS
                                              INC., ANCESTRY.COM INC., and
                                              ANCESTRY.COM LLC