1  Michael F. Ram (SBN 104805)
   mram@forthepeople.com
2  Marie N. Appel (SBN 187483)
   mappel@forthepeople.com
3  MORGAN & MORGAN
   COMPLEX LITIGATION GROUP
4  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
5  Telephone: (415) 358-6913
   Telephone: (415) 358-6293
6
7
8  Benjamin R. Osborn (appearing *Pro Hac Vice*)
   102 Bergen St.
9  Brooklyn, NY 11201
   Phone: (347) 645-0464
10 Email: ben@benosbornlaw.com

11 *Attorneys for Plaintiffs*
   *and the Proposed Class*
12

13            THE UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16 | MEREDITH CALLAHAN and LAWRENCE | Case No.: 3:20-cv-8437-LB |
   | GEOFFREY ABRAHAM, individually and on | |
17 | behalf of all others similarly situated, | OPPOSITION TO MOTION TO DISMISS |
   | | AND MOTION TO STRIKE AND |
18 | Plaintiffs, | MEMORANDUM IN SUPPORT |
19 | | |
20 | v. | Hearing Date: February 18, 2021 |
   | | Time: 9:30 A.M. |
21 | | Location: Courtroom B |
22 | ANCESTRY.COM OPERATIONS INC., a | The Honorable Laurel Beeler |
   | Virginia Corporation; ANCESTRY.COM, INC., | |
23 | a Delaware Corporation; ANCESTRY.COM | |
   | LLC, a Delaware Limited Liability Company; | |
24 | and DOES 1 through 50, inclusive, | |
25 | Defendants. | |
26
27
28

PLAINTIFFS' OPPOSITION TO MOTION                    NO. 3:20-CV-8437-LB
TO DISMISS AND MOTION TO STRIKE

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................. 1

II. LEGAL STANDARD FOR MOTION TO DISMISS ......................................... 2

III. ARGUMENT .................................................................................................... 3

A.    Plaintiffs have properly alleged Article III standing............................. 3

B.    The Newsworthy exception does not apply because there is no legitimate public interest in Plaintiffs' likenesses, and Ancestry is exploiting them for a commercial purpose. ....... 8

C.    Section 230 of the Communications Decency Act does not apply because Ancestry did not obtain yearbooks from authors, and Ancestry created the illegal content. ................. 11

D.    Plaintiffs' claims are not preempted by copyright because Ancestry does not own or license yearbook copyrights, and Plaintiffs' likenesses are not copyrightable................ 13

E.    Plaintiffs have stated a claim for intrusion upon seclusion............................... 15

F.    California recognizes a claim for unjust enrichment. ...................................... 16

G.    Plaintiffs have properly alleged statutory damages. ..................................... 16

H.    Plaintiffs' restitution claim should not be struck because at this early stage we do not know if Plaintiffs have an adequate remedy at law. ....................................... 19

I.    This Court should deny Ancestry's anti-SLAPP motion to strike................................. 19

IV. CONCLUSION.................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdul-Jabbar v. General Motors Corporation*,
    85 F.3d 407 (9th Cir. 1996) ................................................................................................ 10

*Aldrin v. Topps Co., Inc.*,
    2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ................................................................. 9, 10

*also Columbia Broadcasting v. Democratic Comm*,
    412 U.S. 94, 201 (1973) ...................................................................................................... 10

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ............................................................................................... 17

*Badella v. Deniro Marketing LLC*,
    No. C 10-03908 CRB, 2011 WL 227668 (N.D. Cal. Jan. 24, 2011) ...................................... 6

*Batzel v. Smith*,
    333 F.3d 1018, 1031 n. 18 (9th Cir. 2003) ......................................................................... 13

*Davis v. Facebook, Inc.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................................................. 3, 4

*Del Amo v. Baccash*,
    2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) .................................................................... 19

*Deteresa v. Am. Broad. Cos., Inc.*,
    121 F.3d 460, 465 (9th Cir. 1997) ...................................................................................... 16

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) ............................................................................................... 21

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) .............................................................................. 8, 9, 14, 15

*ESG Capital Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ............................................................................................ 17

*Fair v. Roommates*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................................... 12, 13

*Fairfield v. American Photocopy Etc. Co.,*
   138 Cal. App. 2d 82 (1955) ............................................................. 17

*Fausto v. Credigy Services Corp.,*
   598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) ................................. 16

*Fleet v. CBS, Inc.,*
   50 Cal. App. 4th 1911 (1996) .................................................. 13, 14

*Fraley v. Facebook, Inc.,*
   830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) ..................... 3, 4, 5, 9, 10, 13, 17, 18, 19

*Gates v. Discovery Communications, Inc.,*
   34 Cal. 4th 679 (2004) ................................................................. 21

*Guglielmi v. Spelling-Goldberg Productions,*
   25 Cal. 3d 860 (1979) .................................................................. 10

*Hicks v. Richard,*
   39 Cal. App. 5th 1167 (2019) ....................................................... 21

*Hilton v. Hallmark Cards,*
   599 F.3d 894 (9th Cir. 2009) ................................................... 20, 21

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
   402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ............................... 16, 17

*IntegrityMessageBoards.com v. Facebook, Inc.,*
   No. 18-cv-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ................. 20

*Jordan Video, Inc. v. 144942 Canada Inc.,*
   617 F.3d 1146 (9th Cir. 2010) ...................................................... 14

*KNB Enterprises v. Matthews,*
   78 Cal. App. 4th 362 (2000) ........................................ 4, 5, 7, 12, 13, 15, 19

*Lectrodryer v. SeoulBank,*
   77 Cal. App. 4th 723 (2000) ........................................................ 17

*Makaeff v. Trump University, LLC,*
   715 F.3d 254 (9th Cir. 2013) ....................................................... 21

*Maloney v. T3Media, Inc.,*
   853 F.3d 1004 (9th Cir. 2017) ................................................. 14, 15

*Manzarek v. Marine,*
   519 F.3d 1025, 1031 (9th Cir. 2008) ............................................... 2

*Miller v. Collectors Univ,*
     159 Cal. App. 4th 988 (2008) ............................................................ 17, 18

*Nayab v. Capital One* Bank,
     942 F.3d 480 (9th Cir. 2019) ...................................................................... 2

*New Kids on the Block v. News Am. Pub.,*
     745 F. Supp. 1540 (C.D. Cal. 1990) ...................................................... 9, 10

*Perfect 10, Inc. v. Talisman Communications, Inc.,*
     2000 WL 364813 (C.D. Cal. March 27, 2000) ......................... 5, 11, 12, 15, 19

*Perkins v. Linkedin Corp.,*
     53 F. Supp. 3d 1222 (N.D. Cal. 2014) .................................................. 17, 18

*Rivero v. Am. Fed'n of State, County, Mun. Emps.,*
     105 Cal. App. 4th 913 (2003) .................................................................. 20

*Scott v. Metabolife Int'l Inc.,*
     115 Cal. App. 4th 404 (2004) .................................................................. 21

*Shulman v. Group W Productions, Inc.,*
     18 Cal. 4th 200 (1998) .......................................................................... 8, 9

*Smith v. Levine Leichtman Capital Partners, Inc.,*
     723 F. Supp. 2d 1205 (N.D. Cal. 2010) ...................................................... 22

*Solano v. Playgirl, Inc.,*
     292 F.3d 1078 (9th Cir. 2002). .................................................................. 7

*Sonner v. Premier Nutrition Corp.,*
     971 F.3d 834 (9th Cir. 2020) .................................................................. 20

*Weinberg v. Feisel,*
     110 Cal. App. 4th 1122 (2003) ................................................................ 20

**Statutes**

Cal. Civ. Code § 3344 ................................................................................ 2

17 U.S.C. §§ 103 ..................................................................................... 14

17 U.S.C. §§ 102 ..................................................................................... 14

47 U.S.C. § 230 ................................................................................. 11, 12

Cal. Bus. & Prof. Code § 17200 "UCL" ........................................................ 19

Cal. Civ. Code § 3344 ............................................. 1, 2, 7, 8, 10, 11, 15, 17, 18, 19

Cal. Code Civ. P. § 425.17............................................................................................. 22

Cal. Code. Civ. P. § 425.17............................................................................................. 22

**Other Authorities**

1 Nimmer on Copyright § 1.01[B][1][c] at 1-23 (1999)................................................. 15

## I.  PRELIMINARY STATEMENT

Ancestry's motions to dismiss and to strike are based on two fundamental misunderstandings of Plaintiffs' claims. First, Ancestry misunderstands the rights and the harm at issue. Plaintiffs assert a claim under Cal. Civ. Code § 3344, which prohibits the knowing use of a person's "name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Ancestry extracted Plaintiffs' names, photographs as minors (aged 12 to 16), and biographical information from yearbooks, then used Plaintiffs' likenesses to create advertisements for Ancestry.com and records that Ancestry users pay subscription fees to access. Ancestry stole and profited from something that rightfully belongs to Plaintiffs: control of their likenesses.

California law imposes an obligation on corporations to solicit consent before they use a person's likeness. A person might refuse consent because they wish to control and cultivate a professional reputation; because they do not wish to endorse a company they know nothing about; because they feel it is wrong for others to profit from selling something that belongs to them; or because they value their privacy. Ancestry denied Plaintiffs and the class the opportunity to refuse consent, which lead to the filing of this lawsuit.

Ancestry argues Plaintiffs cannot allege harm because their yearbooks are not secret, and because Plaintiffs did not lose dollars that were previously in their possession. But there is no requirement in § 3344 that the victim's likeness be entirely private (even if that were possible), or that the victim sought to profit from their likeness in the past. Plaintiffs have the right to choose which uses they consent to and which they do not. Plaintiffs consented as minors between the ages of 12 and 16, at a time when the internet barely existed, to have their photographs taken for yearbooks intended for use by their immediate family and classmates. Plaintiffs did not consent to Ancestry using their likenesses decades later in advertisements and records Ancestry created to sell subscriptions to a worldwide audience. Plaintiffs' likenesses have value, as evidenced by Ancestry using their likenesses to attract new subscribers. Plaintiffs have suffered harm by the denial of their statutory rights, by Ancestry earning unjust profits from their

likenesses, and by Ancestry's failure to provide compensation for the use of their likenesses.

<u>Second</u>, Ancestry misrepresents Plaintiffs' allegations about how Ancestry uses their likenesses. Plaintiffs do not allege that Ancestry "hosted . . . third party content" submitted by its users. (ECF No. 13 at 16.) Ancestry extracts information from yearbooks – including names, photographs, cities of residence, and school activities – and uses that personal information as raw material to create advertisements and records promoting its subscription services. (*See, e.g.* ECF No. 1 at ¶¶ 45-57.) Far from "hosting" content created by authors, Ancestry does not even attempt to contact yearbook authors, much less gain their consent. (*See* ECF No. 1 at ¶¶ 49-51.)

The Complaint details three advertisements Ancestry created using Plaintiffs' likenesses. In one of these, Ancestry displays the Plaintiffs' names and photographs along with text promising "There's more to see" about Plaintiffs – including higher-resolution versions of their photographs, estimated ages, birth years, and other biographical details – if the visitor "Sign[s] Up Now" for a paid subscription. (ECF No. 1 at ¶¶ 30-31; 42-43; 55.) In addition to use in advertising, Ancestry also uses Plaintiffs' likenesses to create records about Plaintiffs, then sells access to those records. (*Id.* at ¶¶ 25; 37; 52.) California law forbids such use of a likeness "on or in" a commercial product without consent. Cal. Civ. Code § 3344(a).

Most if not all of Ancestry's arguments stem from their fundamental misunderstandings of the rights protected by § 3344, and how Ancestry used Plaintiffs' likenesses. For this reason, and for the additional reasons below, Plaintiffs respectfully request this Court deny Ancestry's motion to dismiss and motion to strike. In the alternative, Plaintiffs respectfully request that if this Court grants Defendants' motions in whole or in part, it should be with leave to amend.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

On a 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if it is "plausible on its face." *Nayab v. Capital One* Bank, 942 F.3d 480 (9th Cir. 2019) (quotation omitted).

\\\

\\\

### III. ARGUMENT

**A.     Plaintiffs have properly alleged Article III standing.**

The Complaint alleges three forms of injury, each of which separately satisfies the requirements for standing. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) (standing exists where there is an "injury in fact" that is "concrete and particularized," "actual or imminent," "fairly traceable to the challenged action," and it is "likely. . . that the injury will be redressed by a favorable decision.") (quotations omitted).

<u>First</u>, Plaintiffs have suffered economic injury in the form of Ancestry's unjust profits from the use of their likenesses. (ECF No. 1 at ¶¶ 6, 52-56, 60, 86.) Ancestry has profited by using Plaintiffs' likenesses in advertisements designed to convert non-paying users to paying subscribers (*see* ECF No. 1 at ¶¶ 29-32, 41-44 & 54-57, describing Ancestry's use of Plaintiffs likenesses in on-site messages encouraging users to "Sign Up Now" and in "Hints" emailed to non-paying users), and in records designed to attract new subscribers and retain existing subscribers (*see* ECT No. 1 at ¶¶ 26-28, 37-39, 52-54). In statements to its investors, Ancestry has recognized the value of the advertisements and records containing Plaintiffs' likenesses in attracting subscribers, converting non-paying users to subscribers, and retaining subscribers.[1]

In cases involving a violation of statutory rights, a defendant's unjust enrichment alone is sufficient to confer standing. *Davis v. Facebook, Inc.*, 956 F.3d 589, 599 (9th Cir. 2020) ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss.") *See also Fraley*, 830 F. Supp. 785 at 799 (standing existed when plaintiffs alleged "that Facebook has been unlawfully profiting from the nonconsensual exploitation of Plaintiffs' statutory right of publicity" by using their likenesses in advertisements); *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000)

---

[1] *See* Form 10-Q filed June 30, 2016 by Ancestry.com LLC ("Our conversion marketing efforts are focused on converting registered users to paying subscribers through on-site messaging, email, targeted offers and compelling product features like record hinting."); *see also id*. ("Our inability to offer certain vital records or other valuable content as part of our family history research databases. . . could have a material adverse impact on our number of subscribers."). Available at https://www.sec.gov/Archives/edgar/data/1575319/000157531916000041/ acom2016063010-q.htm#s77FC53301E940CD0A1BDD6FC46C1ABAC.

(reversing summary judgment on § 3344 claims brought by non-celebrities when a website profited by placing their photos in a database accessible to paying subscribers).

Second, Plaintiffs have lost potential earnings from the commercial use of their likenesses. As in *Fraley*, Plaintiffs suffered economic injury when Ancestry appropriated their likenesses and used them without compensating Plaintiffs. *See Fraley*, 830 F. Supp. 2d at 799 (standing existed when "Plaintiffs allege that they have been injured by Facebook's failure to compensate them for the use of their personal endorsements").

Third, Plaintiffs have suffered injury by the denial of their statutory right to control the distribution and use of their likenesses. The denial of a statutory right is a concrete injury for which Article III standing exists. *Davis v. Facebook, Inc.*, 956 F.3d at 598 (plaintiffs had standing to assert claims under the California Invasion of Privacy Act, the federal Wiretap Act, and the federal Stored Communications Act on grounds that statutes intended to protect historical privacy rights "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."). *See also Fraley,* at 785 ("[plaintiffs] have alleged a violation of their individual statutory rights under California Civil Code § 3344, and therefore, an invasion of a legally protected interest for Article III purposes.").

Ancestry makes four arguments against standing, all of which fail. First, Ancestry argues the yearbooks from which Ancestry obtained the names and likenesses it used to generate advertisements and records are "not private" and therefore their "disclosure cannot cause harm." (ECF No. 13 at 6, 8).[2] Ancestry misunderstands the rights at issue and the harm caused by its exploitation. The injury to Plaintiffs exists regardless of whether Plaintiffs' yearbooks were previously published. California law grants Plaintiffs the right to control how their likenesses are used, including the right to deny consent to others who would use their likenesses for profit. *Fraley*, 830 F. Supp. 2d at 806 ("The right of publicity has therefore 'become a tool to control

---

[2] Ancestry attempts to introduce evidence into the record by asserting that copies of their yearbooks are available at Plaintiffs' "hometown libraries." (ECF No. 13, at 7.) The introduction of evidence by the defendant is improper in a 12(b)(6) motion. Plaintiffs reserve the right to contest these claims. In any event, the availability of one's photograph in a hometown library does not imply consent to have that photograph exploited commercially worldwide.

the commercial use and, thus, protect the economic value of one's name, voice, signature, photograph, or likeness'") (*quoting KNB Enterprises*, 78 Cal. App. 4th at 366).

Agreeing to publication for a limited purpose is not agreement to widespread commercial exploitation. As minor children (aged 12 to 17), Plaintiffs consented decades ago to have their photographs taken for a high school yearbook, which they believed would be distributed in print form primarily amongst the other students in their high school. This does not affect Plaintiffs' right to refuse consent to a website exploiting their likenesses for profit on a worldwide scale by selling access to their likenesses and using them in advertisements distributed across the Internet.

To the extent Ancestry is asserting that, by consenting as children to have their photographs taken for a yearbook, Plaintiffs consented to unlimited future commercial exploitation, that reasoning has been rejected by California courts evaluating right to publicity claims. *See KNB Enterprises*; *Perfect 10, Inc. v. Talisman Communications, Inc.*, 2000 WL 364813 (C.D. Cal. March 27, 2000). In both *KNB Enterprises* and *Perfect 10*, the court recognized the rights of non-celebrity models to control where and how their likenesses were used. Although the models agreed to have their photographs published and sold on one website, the models were harmed when a rival website copied the photographs without permission and began selling access in exchange for subscriptions. Here, Plaintiffs never consented to any commercial use, much less worldwide use decades later by a company they do not know.

The cases Ancestry cites are inapposite. Tellingly, none involves a claim based on economic injury, and none involves a right to publicity claim stemming from the commercial use of a likeness. (*See* ECF No 13, cases cited on pages 7 & 8.) Unlike the plaintiffs in those cases, Plaintiffs are not alleging harm stemming from the mere disclosure of personal information. Plaintiffs allege Ancestry commercially exploited their personal information for its own financial gain without consent. It is the way Ancestry used Plaintiffs' personal information, not the mere fact of its disclosure, that created the harm and cause of action in this case.

Second, Ancestry argues Plaintiffs cannot allege actual injury because Plaintiffs "do not allege Ancestry . . . used their names to promote its service." (ECF No. 13 at 9.) Ancestry mischaracterizes the Complaint. Plaintiffs allege three separate advertising techniques of which

they are aware in which Ancestry used Plaintiffs' names, photographs, images, and likenesses to promote its services and products. The Complaint describes these techniques in detail, including screenshots showing how Ancestry incorporates the names and likenesses of named Plaintiffs Callahan and Abraham in promotional messages:

(a). "Sign Up Now" messages show Plaintiffs' names and photographs, and promise "There's more to see" about Plaintiffs. Ancestry displays these advertising messages to website visitors to entice them to buy subscriptions. (ECF No. 1, at ¶¶ 30-31; 42-43.)

(b). Records show the Plaintiffs' names, photographs, ages, cities of residence, schools, grades, and other personal information, and encourage the viewer to "Upgrade" their subscription. Ancestry displays these records to users of its 14-day promotional "Free Trial" to demonstrate the breadth of personal information available on its the service and persuade users to buy subscriptions. (ECF No. 1, at ¶¶ 25-27; 37-39.)  *See Badella v. Deniro Marketing LLC*, No. C 10-03908 CRB, 2011 WL 227668, at *2 (N.D. Cal. Jan. 24, 2011) (messages displayed on a website as part of a free trial were designed to "induc[e] the individual to purchase a fee-paying membership").

(c). "Hint" emails show Plaintiffs' names, suggest Plaintiffs may be relatives of the recipients, and urge recipients to "See your hint" and learn more about Plaintiffs by visiting Ancestry.com. Plaintiffs' names are displayed as hyperlinks, so that clicking on the name brings the recipient to Ancestry.com. Ancestry sends these advertising emails to non-subscribers for the purpose of bringing traffic to its website and selling subscriptions.[3]

In addition to use in advertisements, Plaintiffs also allege that Ancestry's use of Plaintiffs' images in records that subscribers must pay money to access is a separate and additional harm. (¶¶ 25; 37.) *See* Cal. Civ. Code § 3444(a) (liability for use "on or in" products and services); *Solano v. Playgirl, Inc*., 292 F.3d 1078, 1089 n. 7 (9th Cir. 2002).

<u>Third</u>, Ancestry argues Plaintiffs cannot demonstrate "actual injury" because they fail to

---

[3] Plaintiffs do not yet have a screenshot of an Ancestry "Hint" email populated with Ms. Callahan's and Mr. Abraham's images, but do allege such emails were sent and expect to verify this in discovery. (ECF No. 1 at ¶¶ 32, 44.)

allege "someone sought out their yearbook records and paid to access them." (ECF No. 13 at 9.) As Ancestry would have it, Plaintiffs must point to a specific person who would not otherwise have paid for Ancestry services, but chose to do so because they saw an advertisement with Plaintiffs' likenesses, or they sought access to the specific records with Plaintiffs' likenesses.

There is no such requirement in § 3444. Plaintiffs have the right not to sell their likenesses to anyone. The injury recognized by § 3344 occurred when Ancestry created the records containing Plaintiffs' likenesses and placed them in its database. From that moment, Plaintiffs names and likenesses became part of the scheme Ancestry uses to promote its website subscriptions for profit. By Ancestry's own admission, its techniques for attracting new subscribers are effective only if it has a vast database of names and likenesses available to populate its "Sign Up Now" messages, "Free Trial records, and "Hint" emails.[4] Proof of actual access by a subscriber is not required. *See KNB Enterprises*, 78 Cal. App. 4th at 365-66 (claim arose under §3344 when defendant website placed 417 photographs depicting 452 models on its website, without discussion of whether paying subscribers viewed specific photographs). In any case, Plaintiffs do allege their specific records were viewed by paying customers of Ancestry, and that Ancestry generated and displayed "Sign Up Now" messages, "Free Trial" records, and "Hint" emails that it populated with Plaintiffs' likenesses. (ECF No. 1 at ¶¶25-55.)

Fourth, Ancestry asserts that any injury cannot be redressed because the yearbooks containing Plaintiff's photographs are "available through a variety of forums." (ECF No. 13 at 10.) Again, this misunderstands the nature of Plaintiffs claims. Plaintiffs are not seeking that all copies of their yearbooks be removed from bookshelves. They seek that Ancestry cease exploiting their likenesses for its own commercial gain without their permission.

\\\

\\\

\\\

---

[4] Form 10-Q filed June 30, 2016 by Ancestry.com LLC, supra n. 1 ("In order to retain and expand our subscriber base. . . we must continue to expend significant resources to acquire significant amounts of additional historical content, digitize it and make it available to our subscribers online.").

**B.    The Newsworthy exception does not apply because there is no legitimate public interest in Plaintiffs' likenesses, and Ancestry is exploiting them for a commercial purpose.**

No Legitimate Public Interest. The newsworthy exception to California's right to publicity statute provides that consent is not required for the use of a name, photograph, or likeness "in connection with any news, public affairs, or sports broadcast or account, or any political campaign." Cal. Civ. Code § 3344(d). The exception tracks the First Amendment right to freedom of speech and excludes liability for "the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Fraley*, 830 F. Supp. 2d at 804 (*quoting Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)). The newsworthy exception "extends 'to almost all reporting of recent events,' as well as to publications about 'people who, by their accomplishments, mode of living, professional standing, or calling, create a 'legitimate and widespread attention' to their activities.'"). *Downing*, at 1001 (*quoting Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416 (1983)). Information that is primarily of personal or limited interest does not qualify for protection. The facts disclosed must concern an issue of "legitimate public interest." *Shulman v. Group W Productions, Inc*., 18 Cal. 4th 200, 214-215 (1998).

Here, there is no legitimate public interest in the names, photographs, and likenesses Ancestry is using to sell subscriptions and advertise its services. Plaintiffs are not public figures. Photos of what they looked like as children are not of legitimate public interest, nor are the ages, names, school activities, and cities of residence Ancestry has extracted and associated with their photographs. *See Downing*, 265 F.3d 994 (photograph did not concern a matter of public interest even when its subjects were professional surfers at a surfing competition).

Ancestry's public statements prove they envision the yearbook records being used for matters of personal, not public, interest. Ancestry.com encourages visitors to use the Ancestry Yearbook Database to "[f]ind out what your relatives were really like in high school and college." However interested an Ancestry subscriber may be in discovering what his cousin looked like at age 12, it is not matter of legitimate public interest.

Tellingly, most of the authority Ancestry relies on concerns famous individuals whose

names and likenesses were already in the public eye at the time of the alleged misappropriation. *See New Kids on the Block v. News Am. Pub*., 745 F. Supp. 1540 (C.D. Cal. 1990) (famous boy band); *Aldrin v. Topps Co., Inc.*, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) (astronaut). The members of New Kids on the Block and Buzz Aldrin are public figures who "create a legitimate and widespread attention to their activities." *See Downing*, at 1001. Plaintiffs are not.

Facts about private individuals who are not public figures can be a matter of legitimate public interest, but only if those facts concern the private individual's involvement in an inherently newsworthy event. *See Shulman v. Group W Productions, Inc*., 18 Cal. 4th 200, 215 (1998). In *Shulman*, the court found the public had a legitimate interest in a news report about a recent car accident in which the plaintiff had been involved. *Id*. at 212. Unlike the news report in *Shulman*, Ancestry's misappropriation, distribution, and use in advertising of Plaintiffs' photographs as children and other personal information is unrelated to any newsworthy event.

<u>Commercial Purpose</u>. Even if the photographs, names, and likenesses Ancestry misappropriated concerned matters of legitimate public interest (which they do not), Ancestry's use still would not qualify for the newsworthy exception because Ancestry uses this information for the commercial purpose of promoting its products and selling subscriptions. In *Fraley*, when Facebook users "liked" certain pages and brands, Facebook created "Sponsored Stories" communicating those likes to the users' Facebook friends. The *Fraley* court found that even if the fact of users liking certain pages and brands were a matter of legitimate public interest, the newsworthy exception still would not apply because Facebook had a commercial purpose for disclosing these facts. *Fraley*, 830 F. Supp. 2d at 805 ("Facebook's commercial use of those actions in Sponsored Stories removes them from the scope of § 3344(d)'s newsworthy privilege."). *See also Abdul-Jabbar v. General Motors Corporation*, 85 F.3d 407 (9th Cir. 1996) (statements that a famous basketball player won an "award" three years in a row and was a "champ" concerned matters of public interest, but were not protected by § 3344(d) because they were made in an "advertisement, not in a news or sports account.").

Ancestry's commercial use of Plaintiffs' likenesses is even less worthy of protection than Facebook's use in *Fraley* because Plaintiffs have no preexisting relationship with Ancestry. In

*Fraley*, the plaintiffs willingly created Facebook profiles, submitted their names and profile pictures to Facebook, agreed to Facebook's Terms of Service, and clicked links indicating they in fact "liked" the pages and brands that became the subjects of Sponsored Stories. Here, Plaintiffs and the class have no relationship with Ancestry, never agreed to the use of their names or likenesses by Ancestry for any purpose, and never indicated any endorsement of Ancestry.

Ancestry asserts that in considering whether the unauthorized use of a likeness qualifies for the newsworthiness exception, "[i]t is immaterial whether such use has a commercial purpose." (ECF No. 13, at 11.) This is incorrect, as Ancestry's own cited authority acknowledges. *See Aldrin v. Topps Co., Inc.*, 2011 WL 4500013, at *3 (C.D. Cal. Sep. 27, 2011) (speech at issue was newsworthy in part because "the images are not commercial speech"). At most, the authority Ancestry cites stands for the proposition that speech does not lose all First Amendment protection simply because it is commercial in nature. *See Guglielmi v. Spelling-Goldberg Productions*, 25 Cal. 3d 860 (1979); *New Kids on the Block. See also Columbia Broadcasting v. Democratic Comm*, 412 U.S. 94, 201 (1973) ("it has generally been understood that 'commercial' speech enjoys less First Amendment protection than speech directed at the discussion of controversial issues of public importance") (internal citations omitted).

Ancestry argues that because Plaintiffs' names and likenesses are not being used to sell "an unrelated product," the use is protected under §3344(d). (ECF No. 13 at 11-12.) As Ancestry would have it, because part of Ancestry's product offering includes access to the Plaintiffs' misappropriated likenesses, Ancestry may use their likenesses in advertisements promoting the product. No such rule exists. Section 3344 prohibits the unauthorized use of a person's likeness "on or in products, merchandise, or goods," <u>and</u> prohibits use "for the purposes of advertising." Ancestry cannot avoid liability under the "advertising" part of the statute by violating the "on or in products" part. Ancestry's position would produce the bizarre result that defendants could immunize themselves from liability by ensuring the likenesses they appropriate are <u>as central as possible</u> to the value of the products they sell – i.e., the <u>more</u> they exploit Plaintiffs' likenesses, the <u>less</u> liability they would face. In fact, Ancestry has violated both parts of the statute. *See Perfect 10, Inc. v. Talisman Communications*, 2000 WL 364813, at *2 (C.D. Cal. March 27,

2000) (use of photographs on a website was both "for the purpose of advertising . . . the further sale of photographs and other works on [defendant]'s Internet website," and "for the purpose of selling the appropriated photographs through paid subscriptions.").

**C.     Section 230 of the Communications Decency Act does not apply because Ancestry did not obtain yearbooks from authors, and Ancestry created the illegal content.**

Ancestry's misappropriation is not protected by §230 of the Communications Decent Act ("CDA") for two independent reasons. <u>First</u>, the protection of CDA §230 applies only to information "provided by another information content provider." 47 U.S.C. § 230. An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development" of the information. 47 U.S. Code § 230(f)(3) (emphasis added). Because Ancestry did not obtain yearbooks from their authors, it cannot claim to be distributing information "provided by another information content provider."

Plaintiffs do not know how Ancestry obtains yearbooks. Ancestry does not disclose this information on Ancestry.com. Because Ancestry.com contains a section soliciting yearbook donations, Plaintiffs alleged in their Complaint that at least some, and potentially all, of the yearbooks Ancestry amassed were provided via such donations. (ECF No. 1 at ¶¶ 49-50.) Ancestry may have other methods, including digitally copying yearbooks from online sources.

It is clear Ancestry does <u>not</u> obtain yearbooks by providing a website on which authors may post yearbooks they have created. Ancestry.com is not a forum for yearbook authors. Ancestry does not even contact the authors of a yearbook before it extracts the photographs, names, and personal information it needs to create its records and advertisements. Plaintiff Callahan was a member of the editorial staff that created her yearbook. Ancestry never contacted her, nor is she aware of Ancestry contacting any of her co-authors. (ECF No. 1 at ¶¶ 34-35.)

Ancestry's actions are like those of the defendants in *KNB Enterprises*, 78 Cal. App. 4th 362 (2000), and *Perfect 10*, 2000 WL 364813 (C.D. Cal. March 27, 2000). In both cases, the defendants copied photographs from rival websites, then sold access to the photos for a subscription fee. Because the defendants did not obtain the photographs from the people who created them, they could not have claimed the protection of §230. Nor may Ancestry.

1   <u>Second</u>, Ancestry created the records and advertisements that are the source of illegality.

2   Section 230 of the CDA "applies only if the interactive computer service provider is not also an

3   'information content provider' . . . 'responsible, in whole or in part, for the creation or

4   development of the offending content.'" *Fair v. Roommates*, 521 F.3d 1157, 1162 (9th Cir. 2008)

5   (*quoting* CDA § 230(f)(3)). This inquiry is informed by whether the website "materially

6   contribut[ed] to its alleged unlawfulness." *Id.*

7       Here, Ancestry is an 'information content provider' ineligible for protection under CDA

8   § 230 because it created the records and advertisements at issue in this case. Ancestry does not

9   merely display pages from Plaintiffs' yearbooks as they were originally printed. It uses software

10  to digitally extract Plaintiffs' names, photographs, and personal information from yearbook

11  pages, then uses the extracted elements as inputs in webpages and messages of its own design.

12  For example, the screenshot at the top of page 10 of the Complaint depicts a record Ancestry

13  created using Plaintiff Abraham's likeness. Ancestry extracted Mr. Abraham's photograph,

14  name, yearbook date, school, and grade from a yearbook. Ancestry added some information of

15  its own creation: an estimated birth year (1986) and age (12 years old). Ancestry then created a

16  record in which Mr. Abraham's photograph is prominent and isolated (in the yearbook, the photo

17  was one of many arranged in rows). Ancestry inserted a column of personal information to the

18  right of his photograph (this does not exist in the yearbook). Finally, Ancestry added interactive

19  buttons, including one prompting the user to "Upgrade" to a more expensive subscription.

20      True, the photographs and information that Ancestry uses as its raw materials are sourced

21  from yearbooks Ancestry did not create. But an "information content provider" need not have

22  created all of the content at issue; it suffices that Ancestry is "responsible . . . in part" for its

23  creation. *Fair v. Roommates,* at 1162. Here, the "part" of the content Ancestry created is

24  precisely what rendered the content illegal.

25      Facebook's actions in the *Fraley* case are instructive. In *Fraley*, Facebook created

26  advertisements using raw material supplied by its users. Users uploaded their names and

27  photographs when they created accounts. When users "liked" certain pages or products,

28  Facebook created a "Sponsored Story" and displayed it to other Facebook users. Facebook was

---

responsible for the design and delivery of Sponsored Stories, but the names, photographs, and "likes" Facebook used to populate its Stories all came from user submissions. *See Fraley v. Facebook, Inc.,* 830 F. Supp. 2d 785 (N.D. Cal. 2011). Like Facebook, Ancestry uses existing information as raw material to populate records and advertisements it designed and created. Accordingly, Ancestry is an information content provider with respect to those advertisements and records, and is not protected by § 230 of the CDA. *See id.* at 802 (Facebook was a content provider because its "actions in creating Sponsored Stories go beyond 'a publisher's traditional editorial functions'") (*quoting Batzel v. Smith*, 333 F.3d 1018, 1031 n. 18 (9th Cir. 2003)).

**D.    Plaintiffs' claims are not preempted by copyright because Ancestry does not own or license yearbook copyrights, and Plaintiffs' likenesses are not copyrightable.**

      <u>Ancestry does not own or license yearbook copyrights</u>. When a defendant does not hold exclusive copyright in a work, there is no preemption. *See KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000). In *KNB Enterprises*, the defendant copied photographs from a published website without permission from the copyright holders. In rejecting defendant's copyright preemption argument, the court reasoned "[w]e do not believe a section 3344 claim is preempted under *Fleet* where, as here, the defendant has no legal right to publish the copyrighted work." *Id*. at 374 (*citing Fleet v. CBS, Inc*., 50 Cal. App. 4th 1911 (1996)). Like the defendant website in *KNB Enterprises*, Ancestry did not obtain permission from the copyright holders before it extracted names, photographs, and likenesses from yearbooks.[5] Having played fast and loose with copyright law, they cannot now claim their disregard for copyright insulates them from liability under the right to publicity.

      Ancestry leans heavily on *Maloney v. T3Media, Inc*., 853 F.3d 1004, 1011 (9th Cir. 2017), but in *Maloney* it was the entity who created the photographs in question, and thus held exclusive copyright, that chose to distribute the photographs on a website. The plaintiffs'

---

[5] The Ancestry webpage soliciting yearbook donations attempts to avoid copyright liability by pushing responsibility for any copyright violation on the donor. By donating a yearbook, the donor represents that the yearbook is "not bound by copyright restrictions," that the donor knows the copyright holder "grants permission to Ancestry," or that the donor herself "own[s] the copyright."). (ECF No. 1 at ¶50.)

---

misappropriation claims were preempted because they were challenging a "copyright holder's decision to distribute the copyright images themselves." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017). So too in *Fleet. See Fleet v. CBS, Inc.*, at 1914 (CBS had "exclusive rights to distribute the motion picture" that was the source of the plaintiff's claims). In *Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146 (9th Cir. 2010), preemption applied when the plaintiff owned the copyright and asserted both copyright and right to publicity claims arising from the unauthorized distribution of a video. Unlike *Jordan Video*, in this case neither Plaintiffs nor Ancestry own exclusive copyright in Plaintiffs' yearbooks. Plaintiffs do not and could not obtain redress of their injuries by asserting a copyright claim.

<u>Plaintiffs' right to publicity claims stem from the misuse of their likenesses, which cannot be copyrighted</u>. Copyright preemption requires two conditions. "First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act." *Downing v. Abercrombie Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) (internal citation omitted). Neither condition is met where, as here, the subject matter of Plaintiffs claims is the likenesses and names pictured in their yearbooks, not the yearbooks themselves. *See id.* at 1003-1004 ("the 'work' that is the subject matter of the right of publicity is the persona. . . Such name or likeness does not become a work of authorship because it is embodied in a copyrightable work such as a photograph.") (*quoting* 1 Nimmer on Copyright § 1.01[B][1][c] at 1-23 (1999)).

Ancestry again relies on *Maloney*, but the court's reasoning in *Maloney* does not support its argument. Seeking to reconcile several prior cases including *Downing*, the *Maloney* court reasoned that "preemption turns on how a copyrighted work is used." *Maloney*, at 1013. If the defendant simply publishes an artistic work in which it holds copyright, preemption applies. But if the defendant goes "beyond the mere republication of the photograph" by using the photograph as part of an advertising scheme, then the defendant does injury to the uncopyrightable likeness, and there is no preemption. *Id., quoting Downing*, 265 F.3d 994, 1003 (9th Cir. 2001). Here, Ancestry has gone far beyond "mere republication" of Plaintiffs' yearbook photographs. The

Complaint details how Ancestry designed and created messages, webpages, and emails that use Plaintiffs' likenesses to advertise its products.

Ancestry makes much of the assertion Plaintiffs did not plead their names or images were used to explicitly "endorse Ancestry." (ECF No. 13, at 17.) But there is no requirement that an advertisement contain an explicit endorsement to support a § 3344 claim. *See Downing* (photo published in a magazine contained no explicit endorsement, and no advertisements appeared on the same page); *KNB Enterprises* (no indication models' photographs were used to imply endorsement); *Perfect 10 Inc.* (same). Regardless, Plaintiffs have plead facts showing Ancestry's advertising techniques could reasonably create confusion as to whether Plaintiffs endorse Ancestry. (*See, e.g.* ECF No. 1, at ¶¶ 38-44.) An Ancestry user who receives "Sign Up Now" or "Hint" emails bearing Ms. Callahan's name and likeness could reasonably conclude Ms. Callahan endorses Ancestry.com. At the very least, they could (falsely) conclude Ms. Callahan is an Ancestry user and willingly shared her personal information with Ancestry.

**E.     Plaintiffs have stated a claim for intrusion upon seclusion.**

A claim for intrusion upon seclusion exists against "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Fausto v. Credigy Services Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (*quoting Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997)). Whether specific conduct is offensive is typically left to a jury. *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").

Here, Plaintiffs have alleged a reasonable expectation of privacy in the photographs and biographical information Ancestry is distributing for profit. (ECF No. 1 at ¶78.) Plaintiffs consented as minor children (aged 12 to 16) decades ago to have their photographs and names printed in yearbooks intended for use by their family and classmates. But Plaintiffs reasonably expect not to see their photographs and information distributed to a worldwide audience decades later for a profit-making purpose. California law recognizes that people who willingly share

personal information among a limited group of social connections do not lose their ability to assert privacy claims when a company shares that information much more broadly for profit. In *In re Facebook*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), Facebook users retained a reasonable expectation of privacy even after they willingly shared personal information with their social connections on Facebook. The court rejected Facebook's position as misguided because "it treats privacy as an all-or-nothing proposition . . . the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law.'" *Id.* at 782 (*quoting Sanders v. Am. Broad. Co., Inc.*, 20 Cal. 4th 907, 916 (1999)).

Plaintiffs have alleged facts sufficient for a reasonable jury to conclude Ancestry's conduct is highly offensive. Ancestry disclosed Plaintiffs' private information to a worldwide audience comprising millions of subscribers and potential subscribers. The information is highly sensitive, including photographs of Plaintiffs as minors, birth years, estimated ages, and geographical location. And Ancestry's use is for a commercial purpose to which Plaintiffs did not consent. *See In re Facebook, Inc.*, at 797 (plaintiffs adequately alleged offensive conduct when Facebook "disclosed to tens of thousands of app developers and business partners sensitive information about them without their consent, including their photos.").

**F.     California recognizes a claim for unjust enrichment.**

California law recognizes plaintiffs may assert a claim for unjust enrichment as a separate cause of action. *See, e.g. ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense.") (*citing Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

**G.     Plaintiffs have properly alleged statutory damages.**

Plaintiffs allege actual damages based on three theories: (1) unjust profits; (2) lost earnings; and (3) denial of their statutorily protected rights. Because Plaintiffs have alleged actual damages, they have properly plead a claim for statutory damages under Cal. Civ. Code § 3344. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011).

The case law concerning the proper standard for pleading statutory damages under § 3344 is not easy to reconcile. At least three cases must be dealt with: *Miller v. Collectors Univ*, 159 Cal. App. 4th 988 (2008); *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785 (N.D. Cal. 2011); and *Perkins v. Linkedin Corp*., 53 F. Supp. 3d 1222 (N.D. Cal. 2014).

In *Miller*, a California state court concluded in dicta that "the legislative history of section 3344(a) reveals the statutory minimum damages were meant to compensate noncelebrity plaintiffs who suffer the *Fairfield* form of mental anguish." *Miller*, 159 Cal. App. 4th at1006 (*citing Fairfield v. Am. Photocopy Etc. Co.*, 138 Cal. App. 2d 82 (1955)). While *Miller* recognizes statutory damages in § 3344 were meant to compensate non-celebrity plaintiffs who suffer mental anguish, nothing in *Miller* indicates statutory damages are available <u>exclusively</u> for that purpose. Nor does the statutory text require mental anguish.

In *Fraley*, decided three years later, the court denied a motion to dismiss a claim seeking statutory damages under § 3344 in which plaintiffs plead injury based on the defendant's failure to compensate plaintiffs for the value of their likenesses. *Fraley*, 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011) ("Plaintiffs allege not that they suffered mental anguish as a result of Defendant's actions, but rather that they suffered economic injury because they were not compensated for Facebook's commercial use of their names and likenesses in targeted advertisements"). The court reasoned the plaintiffs would be entitled § 3344's statutory minimum damages so long as they could "prove actual damages" in some amount at trial. *Id.* at 809.

In *Perkins*, the court revisited the legislative history, revising the analysis from *Miller* to posit an "inferred" additional requirement that non-celebrity plaintiffs must allege mental anguish to support statutory damages under § 3344. *See Perkins*, 53 F. Supp. 3d 1222 at 1242 ("The text of section 3344, it is true, contains no express requirement that a plaintiff plead mental harm in order to claim the minimum statutory damages figure. A California Court of Appeal, however, has inferred such a requirement.") (*citing Miller*).

On the face of the opinions, *Perkins* and *Fraley* are difficult to reconcile. One path forward is to follow the approach the *Perkins* court took in distinguishing *Fraley*. Critically, while the plaintiffs in *Perkins* plead only minimum statutory damages, "plaintiffs in *Fraley* had

claimed *both* minimum statutory damages and actual damages in their complaint." *Perkins*, 53 F. Supp. 3d at 1245 (emphasis in original). If the Court follows this path, Plaintiffs have met the pleading standard. Like the plaintiffs in *Fraley*, and unlike the plaintiffs in *Perkins*, Plaintiffs plead both actual damages and minimum statutory damages in the Complaint. (*See, e.g.* ¶ 90.)

An alternative path is to acknowledge that *Fraley* and *Perkins* represent conflicting interpretations of §3344 and determine which is the better interpretation. If the Court follows this path, Plaintiffs urge *Fraley* as the correct interpretation of California law. That is, plaintiffs properly plead a claim for minimum statutory damages so long as they can plausibly plead some amount of actual damage. Actual damage may be in the form of mental anguish, or it may be in the form of the economic and statutory harms recognized in *Fraley*.

This interpretation finds support in the long history of courts allowing non-celebrity plaintiffs to bring statutory damage claims under § 3344, even when their damages were economic in nature and the plaintiffs did not allege mental anguish. In *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000), the court reasoned that statutory damages under § 3344 exist precisely for the case of a non-celebrity plaintiff for whom "appropriation . . . would not inflict as great an economic injury as would be suffered by a celebrity plaintiff," and noted that part of the purpose of a statutory damages provision is to "discourage such appropriation" by the defendant. *Id.* at 367 (internal quotation omitted). *See also Perfect 10, Inc. v. Talisman Communications, Inc.,* 2000 WL 364813 (C.D. Cal. March 27, 2000); *Del Amo v. Baccash*, 2008 WL 4414514, at *6 (C.D.Cal. Sept. 16, 2008) (plaintiff properly asserted a §3344 claim for minimum statutory damages without alleging mental anguish).

Allowing statutory damage claims based on economic damage is compatible with the clear intent of both California courts, and the California legislature, to give non-celebrity plaintiffs the right and ability to bring claims for economic harm caused by the misappropriation of their likenesses. *See Fraley*, 830 F. Supp. 2d 785, 806-808 (analyzing statutory text and case law). Given the small dollar amounts at issue, the right of a non-celebrity to bring a § 3344 for economic harm would be rendered meaningless if statutory damages were unavailable.

In the event this court decides Plaintiffs must plead mental anguish as a precondition for

seeking statutory damages under § 3344, Plaintiffs would respectfully request leave to amend. Plaintiffs Callahan and Abraham experienced distress at the knowledge Ancestry was profiting from their likenesses, and were concerned about the potential reputational impact. Both *Miller* and *Perkins* recognize that a person's knowledge of economic loss or reputational injury is a basis for mental anguish. *See Miller*, at 1006 n. 12; *Perkins*, at 1246.

### H. Plaintiffs' restitution claim should not be struck because at this early stage we do not know if Plaintiffs have an adequate remedy at law.

A plaintiff may simultaneously pursue a claim for restitution under Cal. Bus. & Prof. Code § 17200 ("UCL"), and a claim for damages based on a remedy at law, if the amounts sought under each theory are not co-extensive. *See, e.g., IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *3-8 (N.D. Cal. Nov. 6, 2020) (denying motion to dismiss UCL restitution claims when recovery for future harm was available in restitution but not at law). We cannot yet know whether Plaintiffs have an adequate remedy at law. For example, if this court were to find that Plaintiffs' damages under § 3344 were limited to the fair market value of Plaintiffs' likenesses, the UCL restitution claim would be Plaintiffs' only recourse for pursuing Ancestry's unjust profits. For this reason, dismissal is premature. *Cf. Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal because the plaintiff "seeks the *same sum* in equitable restitution . . . she requested in damages.") (emphasis added).

### I. This Court should deny Ancestry's anti-SLAPP motion to strike.

A defendant moving to strike on anti-SLAPP grounds must show "that the act or acts of which the plaintiff complains were taken in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009) (quotations omitted). If the defendant meets this burden, the court then asks whether the complaint makes a "prima facie showing of facts to sustain a favorable judgment." *Id.* (quotations omitted). If so, the motion to strike must be denied. "[T]he required probability that [the plaintiff] will prevail need not be high." *Id.* at 908.

The anti-SLAPP statute does not define "public issue." California state courts apply two

competing standards. Under either standard, decades-old personal information about a private citizen's activities in high school is not a "public issue." *See Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003) (a matter "of concern to the speaker and a relatively small, specific audience is not a matter of public interest"); *Rivero v. Am. Fed'n of State, County, Mun. Emps.*, 105 Cal. App. 4th 913 (2003) (matters of public interest must concern a person or entity "in the public eye," "conduct that could directly affect a large number of people," or "a topic of widespread public interest."). Ancestry itself envisions its records being of interest only to individuals seeking out information about their own families. (See Part III(B), above.)

The cases Ancestry cites in support of its motion demonstrate just how far removed Ancestry's conduct is from the kinds of activity courts view as "speech . . . in connection with a public issue." The advertisements and records Ancestry created using Plaintiffs' likenesses, including their photographs as children, do not serve to warn the public against fraud or harassment. *See Makaeff v. Trump University*, LLC, 715 F.3d 254 (9th Cir. 2013) (negative review reporting alleged fraud by Trump University); *Hicks v. Richard*, 39 Cal. App. 5th 1167 (2019) (letter reporting a principal's sexual harassment of multiple faculty members). Nor has Ancestry published a documentary on a matter of public interest in which Plaintiffs are important characters. *See Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536 (1993); *Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679 (2004).

The design of Ancestry's advertisements and records – including prominent buttons prompting viewers to "Upgrade," "Sign Up Now," and click on Plaintiffs names to visit Ancestry.com – demonstrates that Ancestry's purpose is not promoting the public understanding on an issue of public interest, but promoting sales of Ancestry.com subscriptions. Where a defendant's speech is primarily commercial in nature, anti-SLAPP does not apply. *See Scott v. Metabolife Int'l Inc.*, 115 Cal. App. 4th 404 (2004).

Even if Ancestry could show Plaintiffs' names, ages, and photographs as children relate to matters in the public interest (which they do not), the anti-SLAPP statute would not protect Ancestry's choice to use that information to promote its products in violation of California law. When the "principal thrust or gravamen" of the plaintiff's complaint concerns unprotected

commercial speech, defendants cannot invoke anti-SLAPP merely by also engaging in incidental protected speech. *See Scott v. Metabolife Int'l, Inc*., 115 Cal. App. 4th, at 414.

Regardless of whether Ancestry's conduct is speech concerning a public issue, Plaintiffs have made prima facie showing of likelihood of success. Accordingly, Ancestry's motion to strike must be denied. *See Hilton*, at 908 (only suits that "lack even minimal merit" are subject to strike by anti-SLAPP motion) (quotations omitted).

Recognizing "that there has been a disturbing abuse" of the anti-SLAPP law, undermining the very rights "of speech and petition" the anti-SLAPP law was meant to protect, California's legislature recognizes an exception for "any action brought solely in the public interest or on behalf of the general public." Cal. Code Civ. P. § 425.17. Such an action is immune from anti-SLAPP if (1) the plaintiff does not seek relief different from the class, (2) the action would enforce an "important right affecting the public interest," and (3) "private enforcement is necessary and places a disproportionate financial burden on the plaintiff." *Id.*

Plaintiffs' suit against Ancestry is protected under § 425.17. Named plaintiffs Callahan and Abraham seek the same relief as the class, the action seeks to protect the public from the unscrupulous theft of their likenesses, and the amounts at stake are too small for individual claims to be a viable path to protecting the public interest. *See, e.g., Smith v. Levine Leichtman Capital Partners, Inc*., 723 F. Supp. 2d 1205, 1218-19 (N.D. Cal. 2010) (applying exception to deny anti-SLAPP motion in a class action by consumers against a debt collection company).

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

**IV. CONCLUSION**

For the above-stated reasons, Ancestry's motions to dismiss and to strike should be denied. In the alternative, Plaintiffs should be granted leave to amend. While Plaintiffs have plead facts sufficient to state a claim, given leave to amend Plaintiffs would allege additional relevant facts, including: (1) Plaintiffs suffered mental anguish; (2) a detailed description of the promotional email messages that incorporate Plaintiffs' likenesses (*see* ECF No.1, at ¶32); (3) Ancestry makes no attempt to acquire or license copyrights in the yearbooks.

Respectfully submitted,

Dated: January 19, 2021                          By:  _____/s/ Michael F. Ram_____
                                                          Michael F. Ram

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (Admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiffs*
*and the Proposed Class*