1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                            NORTHERN DISTRICT OF CALIFORNIA

10                                  San Francisco Division

11   MEREDITH CALLAHAN, et al., on behalf          Case No. 20-cv-08437-LB
     of themselves and all others similarly
12   situated,                                     **ORDER GRANTING MOTION TO**
                                                   **DISMISS AND DENYING MOTION TO**
13                         Plaintiffs,             **STRIKE.**

14          v.                                     Re: ECF No. 13

15   ANCESTRY.COM INC., et al.,

16                         Defendants.

17

18                                      **INTRODUCTION**

19          The plaintiffs are California residents who object to Ancestry.com's inclusion of their decades-

20   old yearbook photographs and information in Ancestry's Yearbook Database. They sued Ancestry —

21   individually and on behalf of a putative California class — for using their information to solicit

22   paying subscribers, claiming (1) a violation of their right of publicity under Cal. Civ. Code § 3344,

23   (2) unlawful and unfair business practices, in violation of California's Unfair Competition Law

24   (UCL), Cal. Bus. & Prof. Code § 17200, (3) intrusion upon seclusion, in violation of California

25   common law, and (4) unjust enrichment resulting from Ancestry's selling their personal information.[1]

26

27   ─────────────────────

28   [1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint
     citations are to the ECF-generated page numbers at the top of documents.

*United States District Court*
*Northern District of California*

Ancestry moved to dismiss the claims in part on the grounds that (1) the plaintiffs lack Article III standing to challenge its use of public data, and (2) it is immune from liability under the Communications Decency Act, 47 U.S.C. § 230(c)(1). The court dismisses the claims. First, the plaintiffs have not plausibly alleged standing. More is needed — beyond Ancestry's use of the data to solicit paying subscribers — such as an inference that the profiled persons personally endorsed Ancestry's product (or an equivalent interest). Second, Ancestry did not create the third-party content and thus is immune from liability under the Communications Decency Act.

Ancestry also moved to strike (1) the plaintiffs' prayer for statutory damages and claim for restitution under the UCL and (2) all claims under California's Anti-SLAPP statute, Cal. Civil Proc. § 425.16, on the ground that the content on its website is protected free speech and a public issue. The court denies the anti-SLAPP motion because Ancestry's inclusion of the yearbook information is not a public issue. Ancestry's motion to strike is otherwise moot.

## STATEMENT

Ancestry has databases of personal and historical information — including information from "school yearbooks, birth records, marriage records, death records, U.S. census records, immigration records, military records, and photographs of grave sites" — that it sells to subscribers.[2]

The plaintiffs' yearbook pictures and information were in the Ancestry Yearbook database. Each record in the Yearbook database — about 730 million collected from more than 450,000 yearbooks — has "at least" the following information: the person's name, photograph, school name, yearbook year, and city or town (at the time of the yearbook). A record can contain other information such as estimated age at the time of the photograph, estimated birth year, and school activities. Ancestry "does not disclose how it created" the Yearbook database, but a section of its website "encourage[es] visitors to donate their old yearbooks." It does not try to obtain consent

---

[2] *Id.* at 2 (¶ 3), 22–23 (¶ 45); *see* Mot. – ECF No. 13 at 11–12.

1

2

from the donors or the persons depicted in the yearbooks to display their information. It does ask the donor to sign a disclaimer about copyright restrictions.[3]

3

4

5

6

7

8

9

Ancestry's main selling point to paying subscribers to the Yearbook database is that the records "uniquely identify specific individuals." It offers access to the database (including searching, viewing, and downloading records) in several paid subscription plans, including the U.S. Discovery, World Explorer, and All Access plans. It gives free access in a 14-day promotion and through a limited-access website that has some of the Yearbook database records and that uses pop-up ads (when a user hovers over a yearbook record) to solicit paying subscribers. It also solicits subscribers through emails that contain yearbook records (such as photographs and names).[4]

10

11

12

13

14

15

16

17

The named plaintiffs are Lawrence Abraham and Meredith Callahan, California residents who are not Ancestry subscribers (and thus are not subject to Ancestry's terms of service). Their yearbook records — pictures and personal information such as name, estimated age, city, and school activities — are in a subdirectory of the Yearbook database called the U.S. School Yearbooks, 1900–1999. Ancestry users who hover over the plaintiffs' records receive pop-up ads offering more access to the plaintiffs' information to paying subscribers. Ancestry also solicited paying subscribers by sending emails that included the plaintiffs' names and photographs. The plaintiffs did not consent to Ancestry's use of their information, and Ancestry never paid them for it.[5]

18

19

20

21

The plaintiffs assert the following claims individually and on behalf of a putative California class: (1) a violation of their right of publicity under Cal. Civil Code § 3344; (2) unlawful and unfair business practices, in violation of the UCL; (3) intrusion upon seclusion, in violation of California common law; and (4) unjust enrichment.[6] The class definition is as follows:

22

23

24

> [A]ll California residents who (a) are not currently subscribers of any Ancestry services, (b) have never donated a yearbook to Ancestry, and (c) whose names, photographs, and/or likeness were uploaded by Ancestry into its Ancestry Yearbook Database and offered for sale as part of Ancestry's paid subscription plans, and/or used by Ancestry to advertise,

25

26

27

28

---

[3] Compl. – ECF No. 1 at 2 (¶ 3), 23–24 (¶¶ 46–50).

[4] *Id*. at 4–5 (¶ 12), 24–25 (¶¶ 51–54).

[5] *Id*. at 7–22 (¶¶ 22–44).

[6] *Id*. at 29–32 (¶¶ 66–89).

United States District Court<br>Northern District of California

sell, and solicit the purchase of Ancestry's paid subscription plans, without Ancestry obtaining their consent.[7]

Ancestry moved to dismiss the claims on the following grounds: (1) the plaintiffs lack standing to challenge its use of public data; (2) Cal. Civil Code § 3344 exempts it from liability for the right-of-publicity and UCL claims for its use of the yearbook information "in connection with . . . public affairs;" (3) it is immune from liability under § 230(c)(1) of the Communications Decency Act; (4) the Copyright Act, 17 U.S.C. § 301, preempts the right-of-publicity and the UCL claims; (5) the plaintiffs did not plausibly state a claim for intrusion upon seclusion because the yearbook information is public; and (6) there is no standalone claim for unjust enrichment. Ancestry also moved to strike (1) the plaintiffs' prayer for statutory damages under § 3344 because they did not allege mental anguish, which is a predicate for statutory damages, (2) any claim for restitution under the UCL because § 3344 provides an adequate remedy at law, and (3) all claims under California's Anti-SLAPP statute, Cal. Civil Proc. § 425.16, on the ground that the content on its website is protected free speech.[8] The court held a hearing on February 25, 2021.

The court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). All parties consented to magistrate jurisdiction.[9]

## STANDARD OF REVIEW

### 1. Rule 12(b)(1)

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiffs have the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are

---

[7] *Id*. at 26 (¶ 58).

[8] Mot. – ECF No. 13 at 14–32.

[9] Compl. – ECF No. 1 at 5–6 (¶ 15); Consents – ECF Nos. 10, 15.

themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). This is a facial attack. The court thus "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiff[]." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Ancestry contends that the plaintiffs lack standing. Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citation omitted).

Dismissal of a complaint without leave to amend should be granted only if the jurisdictional defect cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## 2.   Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The court dismisses the claims for lack of Article III standing and, alternatively, because Ancestry is immune from liability under § 230(c)(1) of the Communications Decency Act. The court denies the anti-SLAPP motion because Ancestry's inclusion of the yearbook information is not a public issue. Ancestry's motion to strike is otherwise moot.

## 1.   Article III Standing

"The 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Id.* (cleaned up) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

Ancestry's main argument is that the plaintiffs have not established injury.[10]

---

[10] Ancestry also argues causation and redressability in a paragraph. Mot. – ECF No. 13 at 18. Given the court's holding on injury in fact, and the overall slight briefing on the issues of redressability and causation, the court does not reach the issues.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist. . . . [and be] 'real,' and not 'abstract.'" *Id.* (citing dictionaries). "'Concrete' is not . . . necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* at 1549 (citations omitted).

The plaintiffs allege three forms of injury: (1) Ancestry exploits and profits from their likenesses by obtaining paid subscribers; (2) they have lost potential earnings from the commercial use of their likenesses; and (3) they have suffered injury by Ancestry's denial of their § 3344 right to control the distribution and use of their likenesses.[11] These allegations do not establish standing.

First, the information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry).[12] Ancestry's using the public profiles to solicit paying subscribers — standing alone — does not establish injury. *Cf. In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own."). Section 3344 cases suggest that more is needed beyond using the profiles.

For example, standing can be established if the exploitation of users' profiles suggests that the users personally endorse a product or service. In *Fraley v. Facebook*, Facebook marketed products (such as the Rosetta Stone language program) to a user's Facebook friends by sending an advertisement to the user's friends with the user's profile and her "Like" of the product. 830 F. Supp. 2d 785, 791–92 (N.D. Cal. 2011). Facebook did this without the user's consent and without paying her. *Id.* at 797. This was concrete economic injury because it suggested the user's personal

---

[11] Opp'n – ECF No. 19 at 9–10.

[12] Mot. – ECF No. 13 at 16 (disclosure of public information alone is not a harm) (collecting cases).

1   endorsement of the product, which was — according to Facebook's CEO and COO — "the Holy

2   Grail of advertising." *Id.* at 799; *accord Perkins v. LinkedIn Corp.*, 53 F. Supp 3d 1190, 1208

3   (N.D. Cal. 2014) (in *Fraley*, the court found that the "plaintiffs had articulated a coherent theory of

4   economic injury because the plaintiffs had alleged that 'individual personalized endorsement of

5   products, services, and brands to their friends and acquaintances has concrete, provable value in

6   the economy at large, which can be measured by the additional profit Facebook earns by selling

7   Sponsored Stories [the ads at issue] compared to its sale of regular advertisements.'") (quoting

8   *Fraley*, 830 F. Supp. 2d at 799). In contrast to the *Fraley* plaintiffs' asserted property interest in

9   that endorsement, Ancestry's use of the plaintiffs' profiles does not imply an endorsement of

10   Ancestry's products or an equivalent interest. *Id.*

11       Second, the plaintiffs do not have a commercial interest in their public profiles that precludes

12   Ancestry's use of the profiles for commercial gain. In *Cohen v. Facebook*, for example, Facebook

13   marketed its Friend Finder feature — a service that compares a user's email contacts with Facebook

14   users — by telling potential users that their Facebook friends used the feature. 798 F. Supp. 2d 1090,

15   1092 (N.D. Cal. 2011). That use benefited Facebook because it could grow its user base (and profit

16   from the new users). *Id.*, 2011 WL 5117164 at *2–3. But the use was not concrete injury that

17   established standing for the plaintiffs' § 3324 claim because the profiles were displayed only to the

18   users' Facebook friends, who already had access to the profiles. *Id.* at *3. The plaintiffs — like the

19   plaintiffs here — did not show that they had a commercial interest in their images that precluded the

20   platform's use of them. *Id.* (distinguishing cases involving persons who — while not celebrities —

21   were models and thus had a commercial interest in their likenesses).

22       Third, the plaintiffs claim injury by Ancestry's denial of their § 3344 right to control the

23   distribution and use of their likenesses. But the statute imposes liability only where "persons [are]

24   injured as a result." Cal. Civ. Code § 3344(a). That makes this case different from cases involving

25   statutes that establish liability for a statutory violation alone. *In re Facebook, Inc. Internet Tracking

26   Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) (standing for claims under the California Invasion of

27   Privacy Act, the Wiretap Act, and the Stored Communications Act because "the legislative history

28

United States District Court
Northern District of California

and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the" acts).

In sum, the plaintiffs have not plausibly pleaded Article III standing. The court dismisses the complaint with leave to amend to give the plaintiffs an opportunity to cure the jurisdictional defect.

## 2. The Communications Decency Act

Ancestry is immune from liability under the Communications Decency Act. 47 U.S.C. § 230(c)(1).

Under the Act, (1) website operators generally are immune from liability for third-party content posted on their websites, but (2) they are not immune if they create or develop the information, in whole or in part. 47 U.S.C. §§ 230(c)(1) & (f)(3). "Immunity from liability exists for (1) a provider or user of an interactive computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker of (3) information provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (cleaned up).

Ancestry is an interactive-computer service. It did not create the underlying yearbook records and instead obtained them from third parties. It thus is immune from liability for the third-party content. 47 U.S.C. § 230(f)(3). The plaintiffs nonetheless that two contexts here create liability: Ancestry did not obtain the yearbooks from another information-content provider, and it created content by extracting the yearbook content and using the content in its own webpages and emails.

First, Ancestry obtained the yearbook content from someone else, presumably other yearbook users.[13] The plaintiffs assert that this is not enough because Ancestry did not obtain the content from the author of the content. To support this assertion, they cite two cases, "*KNB Enterprises* and *Perfect 10*[, where] the defendants copied photographs from rival websites [and] then sold access to the photos for a subscription fee." Those defendants, the plaintiffs say, "could not have claimed the

---

[13] Statement (Ancestry does not disclose how it creates the Yearbook database but it encourages users to donate their old yearbooks).

protection of § 230" "[b]ecause they did not obtain the photographs from the people who created them. . . ." They conclude that similarly, Ancestry cannot claim § 230(c)(1) immunity.[14] But *KNB Enterprises* and *Perfect 10* do not address § 230. *Perfect 10, Inc. v. Talisman Commc'ns Inc.*, No. CV 99-10450 RAP MCX, 2000 WL 364813 (C.D. Cal. Mar. 27, 2000); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362 (2000). Moreover, no case supports the conclusion that § 230(a)(1) immunity applies only if the website operator obtained the third-party content from the original author. To the contrary, the Act "immunizes an interactive computer service provider that 'passively displays content that is created entirely by third parties.'" *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (quoting *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162) ), *aff'd*, 697 F. App'x 526, 526–27 (9th Cir. 2017).

Second, Ancestry extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages and in its email solicitations, adds information (such as an estimated birth year and age), and adds interactive buttons (such as a button prompting a user to upgrade to a more expensive subscription). The plaintiffs say that by these actions, Ancestry creates content. To support that contention, they cite *Fraley*.[15]

But *Fraley* involved the transformation of the Facebook user's content (liking a product) into an advertisement that — without the user's consent — suggested the user's endorsement of the product (and resulted in a profit to Facebook by selling the ads). 830 F. Supp. 2d at 791–92, 797. In contrast to the *Fraley* transformation of personal likes into endorsements, Ancestry did not transform data and instead offered data in a form — a platform with different functionalities — that did not alter the content. Adding an interactive button and providing access on a different platform do not create content. They just add functionality. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (Yelp! had § 230 immunity despite adding a star rating to reviews from other websites); *Coffee v. Google, LLC*, No. 5:20-cv-08437, ECF No. 56 at 13 (Google had § 230 immunity despite adding industry standards and requiring app developers to disclose the odds of winning).

---

[14] Opp'n – ECF No. 19 at 17 (citations omitted).

[15] *Id.* at 18–19.

1    Instead of creating content, Ancestry — by taking information and photos from the donated

2    yearbooks and republishing them on its website in an altered format — engaged in "a publisher's

3    traditional editorial functions [that] [] do not transform an individual into a content provider within

4    the meaning of § 230." *Fraley*, 830 F. Supp. 2d at 802 (cleaned up); *cf. Roomates.com*, 521 F.3d at

5    1173–74 (website is immune under §230 where it "publishes [] comments as written" that "come[]

6    entirely from subscribers and [are] passively displayed" by the website operator). Ancestry did not

7    contribute "materially" to the content. *Roomates.com*, 521 F.3d at 1167–68. In sum, Ancestry has

8    immunity under § 230(c)(1).

9

10   **3.  Motion to Strike**

11   Ancestry also moved to strike (1) the plaintiffs' prayer for statutory damages, (2) any claim for

12   restitution under the UCL, and (3) all claims under California's Anti-SLAPP statute, Cal. Civil

13   Proc. § 425.16, on the ground that the content on its website is protected free speech. The court

14   denies the anti-SLAPP motion because Ancestry's inclusion of the yearbook information is not a

15   public issue. The court otherwise denies Ancestry's motion to strike as moot.

16   California Code of Civil Procedure § 425.16 is called the anti-SLAPP statute because it allows

17   a defendant to gain early dismissal of claims that are designed primarily to chill the exercise of

18   First Amendment rights. *Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1568 (2005). Section

19   425.16(b)(1) provides:

20       A cause of action against a person arising from any act of that person in furtherance of the
         person's right of petition or free speech under the United States Constitution or the

21       California Constitution in connection with a public issue shall be subject to a special
         motion to strike, unless the court determines that there is a probability that the plaintiff will

22       prevail on the claim.

23   And Section 425.16(e) provides that acts "in furtherance of" these rights include:

24       (1) any written or oral statement or writing made before a legislative, executive, or judicial
         proceeding, or any other official proceeding authorized by law;

25       (2) any written or oral statement or writing made in connection with an issue under
26       consideration or review by a legislative, executive, or judicial body, or any other official
         proceeding authorized by law;

27       (3) any written or oral statement or writing made in a place open to the public or a public
28       forum in connection with an issue of public interest; or

United States District Court
Northern District of California

(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

California's anti-SLAPP statute applies to state claims in federal court. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005).

In ruling on an anti-SLAPP motion, a court engages in a two-step process. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* The claim is subject to dismissal only when (1) the defendant shows that the claim is based on protected conduct and (2) the plaintiff fails to show a probability of success on that claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002).

Ancestry contends that its speech is protected because websites accessible to the public are public forums, and its speech is in connection to an issue of public interest.[16] To support its contention, Ancestry cites cases that involve celebrities, public officials, or the public realm or more obvious public interest. *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 540 (1993) (a "legendary figure in surfing" in a documentary about surfing); *Gates v. Discovery Comm'ncs, Inc.*, 34 Cal. 4th 679, 683, 696 (2004) (documentary about a "person who many years previously served a prison term for a felony conviction but who has since lived an obscure, lawful life" is protected by the First Amendment); *Hicks v. Richard*, 39 Cal. App. 5th 1167, 1176–77 (2019) (a principal's misconduct was of public interest); *New Kids On The Block v. News Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1545–47 (C.D. Cal. 1990) (magazine's "gathering information for dissemination to the public" through use of popular music groups' images in a poll was a protected First Amendment activity); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410–13, 415–16 (2001) (publishing of professional baseball players' images and performance statistics was of "significant

---

[16] Mot. – ECF No. 13 at 30–32.

public interest"). Viewed through the prism of these cases, decades-old yearbooks are not demonstrably an issue of public interest. The court denies the motion to strike.

## CONCLUSION

The court grants the motion to dismiss and denies the motion to strike. The plaintiffs must file any amended complaint within 21 days and attach a blackline of the changes.

This disposes of ECF No. 13.

**IT IS SO ORDERED.**

Dated: March 1, 2021

_____
LAUREL BEELER
United States Magistrate Judge