# EXHIBIT 1

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Benjamin R. Osborn (*Pro Hac Vice* application pending)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiffs
and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN AND LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>                              Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE §§ 3344, 3344.1, AND CAL. BUS. & PROF. CODE § 17200, INTRUSION UPON SECLUSION, UNJUST ENRICHMENT<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>~~CLASS ACTION COMPLAINT~~FIRST AMENDED CLASS ACTION COMPLAINT |

1.     Plaintiffs MEREDITH CALLAHAN and LAWRENCE GEOFFREY

ABRAHAM, by and through their attorneys, make the following allegations on information

and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal

knowledge.

## INTRODUCTION

2.      Plaintiffs bring this class action complaint against ANCESTRY.COM OPERATIONS INC.; ANCESTRY.COM INC; ANCESTRY.COM LLC; and DOES 1-50 (collectively, "Ancestry") for knowingly misappropriating the photographs, likenesses, names, and identities of Plaintiffs and the class; knowingly using those photographs, likenesses, names, and identities for the commercial purpose of selling access to them in Ancestry products and services; and knowingly using those photographs, likenesses, names, and identities to advertise, sell, and solicit purchases of Ancestry services and products; without obtaining prior consent from Plaintiffs and the class.

3.      Ancestry's business model relies on amassing huge databases of personal information, including names, photographs, addresses, places of birth, estimated ages, schools attended, and other biological information, then selling access to that information for subscription fees. Ancestry's databases comprise billions of records belonging to hundreds of millions of Americans. The main subject of this lawsuit is Ancestry's "U.S., School Yearbooks, 1900-1999" database ("Ancestry Yearbook Database"). To construct its Yearbook Database, Ancestry extracted personal information from school yearbooks. Ancestry then designed and created a record in its database corresponding to each individual who appears in a given yearbook. The Ancestry Yearbook database , which includes the names, photographs, cities of residence, and schools attended of many millions of Americans. According to the Ancestry website, the Ancestry Yearbook Database includes over 60 million individual records from California schools and universities.

4.      Ancestry has not received consent from, given notice to, or provided compensation to tens of millions of Californians whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database.

5.      The names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities contained in the Ancestry Yearbook Database uniquely identify

specific individuals.

6.      Ancestry knowingly uses the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities in its Ancestry Yearbook Database on and in its products and services. Ancestry sells access to those records to paying subscribers. In exchange for subscription payments ranging from $24.99 to $49.99 per month, depending on the plan, Ancestry subscribers receive the ability to search, view, and download records in Ancestry databases, including the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities Ancestry has amassed in its Ancestry Yearbook Database without consent.

7.      Ancestry knowingly uses the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities in its Ancestry Yearbook Database to advertise, sell, and solicit the purchase of its monthly subscription products and services, including its "U.S. Discovery," "World Explorer," and "All Access" subscription plans.

8.      Ancestry advertises and promotes its products and services to new subscribers by offering a 14-day promotional "free trial" that provides temporary access to search, view, and download records from Ancestry's databases. Users who sign up for the promotional "free trial" provide payment information but are not billed until the promotional "free trial" expires and may cancel before the trial expires without charge. During the promotional "free trial," users are encouraged to search Ancestry Databases, including its Yearbook Database, for the names of any people they may know or be curious about. In response to searches of the Ancestry Yearbook Database, users receive a list records, each of which corresponds to a specific identifiable person, and includes the individual's name, yearbook photo, estimated age, city of residence, school attended, and year of attendance. "Free trial" users may view and download full-resolution versions of yearbook photos of the individuals they have searched.

9.      The sole purpose of offering the promotional "free trial" is to induce users to subscribe to its paid product and service. By providing access to and encouraging use of its Ancestry Yearbook Database as part of its promotional "free trial", Ancestry is knowingly

using the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its subscription products and services.

10.     Ancestry also advertises is monthly subscription products and services by providing a promotional limited-access version of its website. Any visitor to the Ancestry website may access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users on the promotional limited-access version are encouraged to search Ancestry Databases, including its Yearbook Database, for the names of any people they may know or be curious about. In response to searches of the Ancestry Yearbook Database, users receive a list records, each of which corresponds to a specific identifiable person, and includes the individual's name, city of residence, and a low-resolution version of a yearbook photo. Users of the promotional limited-access version of the website may view the low-resolution photo, allowing them to confirm the record corresponds to the person they are searching for. Users cannot view the full-resolution version of the photograph or view additional information about the person such as estimated age, name of school, and yearbook year. If users click to view this information, they are encouraged to "sign up now" for a paid subscription.

11.     The sole purpose of offering the promotional limited-access version of the website is to induce users to subscribe to its paid product and service. By providing access to and encouraging use of its Ancestry Yearbook Database as part of its promotional limited-access website for non-subscribers, Ancestry is knowingly using the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its subscription products and services.

12.     Ancestry also advertises using by sending targeted promotional email messages that include names, photographs, images, likenesses, and other personal information it has amassed in its databases. promotional emails to users who have signed up for a free account but have not yet signed up for a paid subscription. Some of those promotional emails contain "hints" corresponding to yearbook records of people Ancestry believes the recipient may be

related to. The "hint" emails display the full name and estimated birth year of the individual. Clicking on either the individual's name or on the button labelled "See your hint" brings the recipient directly to a web page soliciting a six-month subscription to Ancestry.com for $99.00. If the recipient agrees to pay Ancestry, they may view the record corresponding to the name and likeness Ancestry sent in the "hint" email, including the individual's photograph. These targeted promotional email messages are intended to entice potential customers to purchase a paid subscription, and to entice existing customers to upgrade to more expensive plans. For example, in one of its more ghoulish advertising techniques, Ancestry sends to potential subscribers' photographs of the gravesites of their deceased relatives, promising that a paid subscription will reveal even more information about the deceased. On information and belief, Ancestry also sends to potential subscribers' messages containing names, photographs, images, biographical information, and likenesses from its Yearbook Database, including the names, photographs, images, biographical information, and likenesses of Plaintiffs and the class.

13. 12.  Ancestry appropriated and continues to grow its massive databases of personal information, including its Ancestry Yearbook Database, which contains the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities of tens of millions of Californians. Ancestry uses these records both as the core element of its products and services, and to sell and advertise its products and services, without providing any notice to the human beings who are its subjects. Ancestry did not ask the consent of the people whose personal information and photographs it profits from. Nor has it offered them any compensation for the ongoing use of their names, photographs, likenesses, and identities as part of its products and services, and to sell and advertise its products and services.

14. 13.  These practices, as further detailed in this complaint, violate the California right to publicity as codified in Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; California's common law right protecting against Intrusion upon Seclusion; and California Unjust Enrichment law.

## JURISDICTION AND VENUE

15.14.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) all members of the putative class are citizens of a state different from any defendant. According to available public records, while defendants maintain an office in San Francisco, California, Defendants are all incorporated in either Delaware or Virginia, and are headquartered in Utah. The class members are residents of California. (B) The proposed class consists of at least 100 members. Ancestry advertises that its Ancestry Yearbook Database comprises about 730 million individual records collected from "more than 450,000 yearbooks and more than 62 million pages."  A search of the database for records located in "California, USA" returns in excess of 60 million individual records. Even accounting for the fact that some individuals may appear in multiple records, that some are deceased or no longer live in California while others have moved into the state, and that the class excludes current Ancestry subscribers, the class likely comprises millions of Californians. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for damages equal to the greater of $750 per violation, the actual damages suffered by Plaintiffs, or the profits earned by Defendants attributable to the unauthorized use. Given more than 60 million individual records in California, the amount in controversy is well over the jurisdictional amount.

16.15.  This Court has personal jurisdiction over the claims of Plaintiffs and the non-named class members. Upon information and belief, many of Ancestry's actions giving rise to the claims in this complaint took place in this District. Ancestry maintains its second-largest office in San Francisco, California. According to publicly available information, the San Francisco office employs about 400 people, including software engineers, product designers, managers, and other staff. On information and belief, staff at Ancestry's San Francisco office contributed to the strategy, design, creation, and maintenance of the products giving rise to this suit. Ancestry also maintains substantial connections to the state of California and this district by, among other things, advertising its subscription products and services to prospective customers in this state and district, providing its subscription products and services to existing

customers in this state and district, and using the misappropriated names, photographs, likenesses, images, and identities of residents of this state and district as described in this complaint.

17.16.   Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. Defendant maintains an office in this District at 153 Townsend Street, San Francisco, California, from which it conducts the operations that gave rise to this cause of action. A substantial portion of the class members reside in this state and district. Named Plaintiff Lawrence Geoffrey Abraham resides in this district.

## INTRADISTRICT VENUE

18.17.   Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco County and Defendant's second-largest office is located in this County. Plaintiff Lawrence Geoffrey Abraham lives in San Francisco.

## PARTIES

**Defendant Ancestry**

19.18.   Defendant ANCESTRY.COM OPERATIONS INC. is a Delaware corporation with its headquarters in Lehi, Utah. It conducts business under the brand names "Ancestry.com," "Ancestry," and other brand names associated with the various website and services it owns and operates. Ancestry is registered to do business in California and maintains an office at 153 Townsend Street in San Francisco, California with roughly 400 employees. It conducts business throughout this district, California, and the United States. Ancestry owns and operates the website Ancestry.com.

20.19.   Defendant ANCESTRY.COM INC. is a Delaware corporation with its headquarters in Lehi, Utah. Defendant ANCESTRY.COM LLC is a Delaware limited liability company with its headquarters in Lehi, Utah.

21.20.   There are many related corporate entities associated with the Ancestry.com

website. Plaintiffs are ignorant of which additional related corporate entities were involved in the wrongdoing alleged herein. Plaintiffs therefore sues these Doe Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously named Doe Defendants when they are ascertained. Each of the fictitiously named Doe Defendants is responsible for the conduct alleged in this Complaint and Plaintiffs' damages were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

**Plaintiff Lawrence Geoffrey Abraham**

22.21.  Plaintiff Lawrence Geoffrey Abraham is a resident of San Francisco, California. Mr. Abraham is not a subscriber of any Ancestry products or services and is not subject to any Terms of Service or any other agreement with Ancestry.

23.22.  Mr. Abraham has never provided consent to Ancestry, written or otherwise, for the use of his name, photograph, or likeness.

23.     Ancestry has never notified, requested consent, or provided compensation to Mr. Abraham for its appropriation of his name, photograph, and likeness. Mr. Abraham first became aware that his personal information and photographs are being used by Ancestry through the investigation of this lawsuit.

24.     Upon learning his name, photograph, and likeness were being used by Ancestry without his consent, Mr. Abraham experienced feelings of anger, embarrassment, and discomfort. He was and remains unsettled and disturbed by the knowledge that a corporation is profiting from his name, photograph, and likeness without consent. He is also disturbed by the possibility that Ancestry's use of his name, photograph, and likeness may harm or dilute his personal and professional reputation.

24.25.  Upon learning his name, photograph, and likeness were being used by Ancestry without his consent, Mr. Abraham spent about five hours searching the free version of Ancestry.com to confirm his records were being used, performing web searches to ascertain how easily the Ancestry records could be found using a web browser, and communicating with

CLASS ACTION COMPLAINTFIRST AMENDED CLASS ACTION COMPLAINT

8

his social connections to warn them their own records may also have been misappropriated by Ancestry.com.

26.    Ancestry has and continues to knowingly use Mr. Abraham's name, photograph, and likeness in its products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans without his permission. Subscribers who pay monthly subscriptions fees of between $24.99 and $49.99 per month, depending on the plan, receive in exchange the ability to search for, view, and download records in Ancestry's Yearbook Database. This database includes three separate records corresponding to Mr. Abraham: two from a 1999 yearbook from Albuquerque Academy in Albuquerque, New Mexico, where Mr. Abraham attended school; and one from a 1998 yearbook from the same school. Paying subscribers may search for Mr. Abraham and view and download the three records containing his name, photograph, and likeness.

27.    There is no indication in either of the Albuquerque Academy yearbooks that the authors intended the content to be published or otherwise distributed online. Upon information and belief, Ancestry has not attempted to contact the authors of either yearbook, nor has Ancestry received any indication the authors intended the content to be published or otherwise distributed online.

25.28.  Upon information and belief, Ancestry does not hold copyright in either of the Albuquerque Academy yearbooks, nor has it made any attempt to identify the copyright holders and obtain copyright.

26.29.  Ancestry has and continues to knowingly use Mr. Abraham's name, photograph, and likeness for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Mr. Abraham's name, photograph, and likeness in its 14-day promotional "free trial". Users of the promotional "free trial" may search for, download, and view records in Ancestry's Yearbook Database. "Free trial" users receive access to the same three records corresponding to Mr. Abraham that are available to paying users.

Ancestry's sole purpose in using Mr. Abraham's name, photograph, and likeness in the promotional "free trial" version of its website is to advertise, sell, and solicit the purchase of paid subscription plans.

27.30.   A screenshot showing the results of a search for Mr. Abraham's name on Ancestry.com is shown below, followed by three screenshots showing the more detailed version of each record that is delivered if the user clicks the "View Record" link corresponding to each record in the list. These pages are accessible both to paying subscribers and to users of Ancestry's promotional 14-day "free trial."









28.31.  The three records corresponding to Mr. Abraham uniquely identify Mr. Abraham. All three plainly and conspicuously display Mr. Abraham's name, image, photograph, estimated age, school, city of residence, and the date of the yearbook in which the photo appears. In two of the records Mr. Abraham's face is the sole subject of the photograph. One of the records identifies school participation in the school track team.

29.32.  Ancestry has and continues to knowingly use Mr. Abraham's name, photograph, and likeness for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Mr. Abraham's name, photograph, and likeness in the promotional limited-access version of its website. Any visitor to the Ancestry website may access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users of the promotional limited-access version of the website may search for records in Ancestry's Yearbook and may view a

limited portion of the information in those records, including the name, city of residence, and a low-resolution version of the photograph corresponding to each record.  Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same three records corresponding to Mr. Abraham that are available to paying users.

30.33.  Ancestry's sole purpose in using Mr. Abraham's name, photograph, and likeness in the promotional limited-access version of its website is to advertise, sell, and solicit the purchase of paid subscription plans. Users who search for Mr. Abraham's name are shown a limited version of the records corresponding to Mr. Abraham, which includes Mr. Abraham's name, city of residence, and a low-resolution version of Mr. Abraham's photograph.  Users who hover over the "View Record" link corresponding to each record receive a promotional pop-up advertisement from Ancestry displaying Mr. Abraham's name, a low-resolution version of his photograph, and a message indicating "There's more to see" and promising the user access to Mr. Abraham's estimated age, birth year, school, yearbook date, school location, and a full-resolution of Mr. Abraham's photograph if they "Sign Up Now" for a paid subscription.

31.34.  A screenshot showing the results of a search for Mr. Abraham's name on the promotion limited-access version of the Ancestry website is shown below, followed by three screenshots showing the promotional pop-up advertisement Ancestry delivers to users who hover over the "View Record" link corresponding to each record.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



32.    On information and belief, Ancestry has and continues to knowingly use Mr.

Abraham's name, photograph, and likeness for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Mr. Abraham's name, photograph, and likeness in targeted promotional email messages. Ancestry regularly sends promotional email messages that are intended to entice potential customers to purchase a paid subscription, and to entice existing customers to upgrade to more expensive plans. These email promotions often include the names, photographs, and likenesses of people Ancestry believes may be related to the recipient and encourage the recipient to sign up or upgrade their subscription plan to learn more about the relative. Upon information and belief, Ancestry has and continues to send targeted promotional email messages including Mr. Abraham's name, photograph, and likeness.

35.     As one of its advertising techniques, Ancestry regularly sends promotional emails to users who have signed up for a free account with Ancestry but have not yet become paying users. Some of those promotional emails contain "hints" corresponding to yearbook records of people Ancestry believes the recipient may be related to. The "hint" emails display the full name and estimated birth year of the individual. Clicking on either the individual's name or on the button labelled "See your hint" brings the recipient directly to a web page soliciting a six-month subscription to Ancestry.com for $99.00.

1    36.    Because Ancestry.com extracted his yearbook photographs without permission,

2  Mr. Abraham's name and likeness is now part of the database from which Ancestry populates

3  the "hint" emails it sends soliciting payment for Ancestry.com services. The screenshot below

4  illustrates the use of Mr. Abraham's name and likeness in a "hint" email Ancestry.com sent to a

5  non-paying Ancestry account Plaintiffs' counsel established as part of their investigation. The

6  second screenshot shows the webpage the recipient sees after clicking on the name "Geoffrey

7  Abraham" or the "See your hint" button.





37.     Mr. Abraham has a property interest in his likeness recognized by California statutory law. He has the right to exclude anyone from making commercial use of his likeness without his permission. By using Mr. Abraham's likeness for profit without his permission, Ancestry created a right for Mr. Abraham in the unjust profit Ancestry has earned. Ancestry causes Mr. Abraham continuing injury every day it denies him the profits it has unjustly earned from his likeness.

38.     Ancestry has also injured Mr. Abraham by violating rights to privacy protected by statute and common law. The violation of such a right is itself injury, and creates an entitlement in Mr. Abraham to injunctive relief, nominal damages, and statutory damages.

39.     Ancestry has also caused Mr. Abraham mental anguish through the knowledge his likeness is being exploited for profit, and through the knowledge of potential risk to his reputation.

40.     Ancestry has also injured Mr. Abraham by causing him to spend time searching the free version of Ancestry.com to confirm his records were being used, performing web

searches to ascertain how easily the Ancestry records could be found using a web browser, and communicating with his social connections to warn them their own records may also have been misappropriated by Ancestry.com. The opportunity cost associated with Mr. Abraham's use of time is a recognized form of injury.

**Plaintiff Meredith Callahan**

33.41.  Plaintiff Meredith Callahan (née Whipple) is a resident of the city of Del Mar in San Diego County, California. Ms. Callahan is not a subscriber of any Ancestry products or services, and is not subject to a Terms of Service or any other agreement with Ancestry.

34.42.  Ms. Callahan has never provided consent to Ancestry, written or otherwise, for the use of her name, photograph, or likeness.

35.43.  Ancestry has never notified, requested consent, or provided compensation to Ms. Callahan for its use of her name, photograph, and likeness. Ms. Callahan first became aware that her personal information and photographs are being used by Ancestry through the investigation of this lawsuit.

44.  Ms. Callahan is a published author and runs a coaching and consulting business. The image she presents online contributes to her book sales and forms a significant part of the brand and value of her business. She has a professional interest in maintaining her image and exerting control over how her name and image is used.

36.45.  Upon hearing that Ancestry was profiting off her likeness and image, Ms. Callahn felt initially confused and then angered. Ms. Callahan felt small in the face of the strength and anonymity of a large corporation - and powerless to exercise control over aspects of her identity in that context.

46.  Ancestry has and continues to knowingly use Ms. Callahan's name, photograph, and likeness in its products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans. Subscribers who pay monthly subscriptions fees of between $24.99 and $49.99 per month, depending on the plan, receive in exchange the ability to search

for, view, and download records in Ancestry's Yearbook Database. This database includes twenty-six separate records corresponding to Ms. Callahan, all of which are copied from yearbooks between the years of 1996 and 1999 for Northern High School in Port Huron, Michigan, where Ms. Callahan attended school. Paying subscribers may search for Ms. Callahan and view and download the twenty-six records containing her name, photograph, and likeness.

47.    There is no indication in any of the Northern High School yearbooks that the authors intended the content to be published or otherwise distributed online. Upon information and belief, Ancestry has not attempted to contact the authors of any of the Northern High School yearbooks, nor has Ancestry received any indication the authors intended the content to be published or otherwise distributed online.

37.48.  Upon information and belief, Ancestry does not hold copyright in any of the Northern High School yearbooks, nor has it made any attempt to identify the copyright holders and obtain the copyright.

38.49.  Ancestry has and continues to knowingly use Ms. Callahan's name, photograph, and likeness for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Ms. Callahan's name, photograph, and likeness in its 14-day promotional "free trial." Users of the promotional "free trial" may search for, download, and view records in Ancestry's Yearbook Database. "Free trial" users receive access to the same twenty-six records corresponding to Ms. Callahan that are available to paying users. Ancestry's sole purpose in using Ms. Callahan's name, photograph, and likeness in the promotional "free trial" version of its website is to advertise, sell, and solicit the purchase of paid subscription plans.

39.50.  A screenshot showing the first five of twenty-six results of a search for Ms. Callahan's name on Ancestry.com is shown below, followed by three screenshots depicting a representative sample of the more detailed versions that are delivered if the user clicks the

"View Record" link corresponding to each of the twenty-six records in the list. These pages are accessible both to paying subscribers and to users of Ancestry's promotional 14-day "free trial."







40.51.  The twenty-six records corresponding to Ms. Callahan uniquely identify Ms. Callahan. All plainly and conspicuously display Ms. Callahan's name, image, photograph, estimated age, school, city of residence, and the date of the yearbook in which the photo appears. In four of the records Ms. Callahan's face is the sole subject of the photograph. In all twenty-six records she is clearly identifiable by name and image. Various of the records identify Ms. Callahan's school participation in student council, cross country running, track, "Students Against Drunk Driving, "Quiz Bowl," the National Honors Society, and ski club. One record identifies her as a valedictorian of her senior class.

41.52.  Ancestry has and continues to knowingly use Ms. Callahan's name, photograph, and likeness for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Ms. Callahan's name, photograph, and likeness in the promotional limited-access version of its website. Any visitor to the Ancestry website may

access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users of the promotional limited-access version of the website may search for records in Ancestry's Yearbook and may view a limited portion of the information in those records, including the name, city of residence, and a low-resolution version of the photograph corresponding to each record.  Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same twenty-six records corresponding to Ms. Callahan that are available to paying users.

42.53.  Ancestry's sole purpose in using Ms. Callahan's name, photograph, and likeness in the promotional limited-access version of its website is to advertise, sell, and solicit the purchase of paid subscription plans. Users who search for Ms. Callahan's name are shown a limited version of the records corresponding to Ms. Callahan, which includes Ms. Callahan's name, city of residence, and a low-resolution version of Ms. Callahan's photograph.  Users who hover over the "View Record" link corresponding to each record receive a promotional pop-up advertisement from Ancestry displaying Ms. Callahan's name, a low-resolution version of her photograph, and a message indicating "There's more to see" and promising the user access to Ms. Callahan's estimated age, birth year, school, yearbook date, school location, and a full-resolution of Ms. Callahan's photograph if they "Sign Up Now" for a paid subscription.

1    43.54.  A screenshot showing the first eleven of twenty-six results of a search for Ms.

2    Callahan's name on the promotion limited-access version of the Ancestry website is shown

3    below, followed by three screenshots depicting a representative sample of the promotional pop-

4    up advertisement Ancestry delivers to users who hover over the "View Record" link

5    corresponding to each record.





~~On information and belief, Ancestry has and continues to knowingly use Ms. Callahan's name, photograph, and likeness for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Ms. Callahan's name, photograph, and likeness in targeted promotional email messages. Ancestry regularly sends promotional email messages that are intended to entice potential customers to purchase a paid subscription, and to entice existing customers to upgrade to more expensive plans. These email promotions often include the names, photographs, and likenesses of people Ancestry believes may be related to the recipient and encourage the recipient to sign up or upgrade their subscription plan to learn more about the relative. Upon information and belief, Ancestry has and continues to send targeted promotional email messages including Ms. Callahan's name, photograph, and likeness.~~

55.     As one of its advertising techniques, Ancestry regularly sends promotional emails to users who have signed up for a free account with Ancestry but have not yet become paying users. Some of those promotional emails contain "hints" corresponding to yearbook records of people Ancestry believes the recipient may be related to. The "hint" emails display

the full name and estimated birth year of the individual. Clicking on either the individual's name or on the button labelled "See your hint" brings the recipient directly to a web page soliciting a six-month subscription to Ancestry.com for $99.00.

56.   Because Ancestry.com extracted her yearbook photographs without permission, Ms. Callahan's name and likeness is now part of the database from which Ancestry populates the "hint" emails it sends soliciting payment for Ancestry.com services. The screenshot below illustrates the use of Ms. Callahan's name and likeness in a "hint" email Ancestry.com sent to a non-paying Ancestry account Plaintiffs' counsel established as part of their investigation. The second screenshot shows the webpage the recipient sees after clicking on the name "Meredith

Whipple" or the "See your hint" button.



57.    Ms. Callahn has a property interest in her likeness recognized by California

statutory law. She has the right to exclude anyone from making commercial use of her likeness without her permission. By using Ms. Callahan's likeness for profit without her permission, Ancestry created a right for Ms. Callahan in the unjust profit Ancestry has earned. Ancestry causes Ms. Callahan continuing injury every day it denies her the profits it has unjustly earned from her likeness.

58.    Ancestry has also injured Ms. Callahan by violating rights to privacy protected by statute and common law. The violation of such a right is itself injury, and creates in Ms. Callahan an entitlement to injunctive relief, nominal damages, and statutory damages.

44.59.  Ancestry has also caused Ms. Callahan mental anguish through the knowledge her likeness is being exploited for profit.

## STATEMENT OF COMMON FACTS

45.60.  Ancestry's business model is based on gathering personal information from various sources, then selling access to that information for a monthly subscription fee. Ancestry uses the personal information it has amassed to advertise, sell, and solicit the purchase of its subscription products and services. Sources from which Ancestry.com collects personal information include school yearbooks, birth records, marriage records, death records, U.S. census records, immigration records, military records, and photographs of grave sites.

46.61.  As part of this business model, Ancestry amassed and continues to grow its "Ancestry Yearbook Database", which contains names, yearbook photos, estimated ages, schools attended, and additional personal information copied from school yearbooks. The Ancestry Yearbook Database comprises about 730 million individual records collected from "more than 450,000 yearbooks and more than 62 million pages." Of those 730 million records, about 60 million are marked in the database as corresponding to students in California schools.

47.62.  Each record in the Ancestry Yearbook Database includes at least the following information: the name of a specific individual; a photograph depicting that individual; the name of the school the individual attended; the year in which the yearbook was printed; and the city in which that individual lived. Some records contain additional personal information, including

the individual's estimated age at the time of the photograph, estimated year of birth, and hobbies and interests while in school.

48.63.  Ancestry did not and does not seek consent from, give notice to, or provide compensation to Plaintiffs and the class before placing their personal information in its Ancestry Yearbook Database, selling that information as part of its subscription products, and using that information to sell, advertise, and solicit the purchase of its subscription products.

64.    Although Ancestry does not disclose how it created the Ancestry Yearbook Database. , Plaintiffs are ignorant of the methods by which Ancestry acquires yearbooks and digitally extracts their contents. Tthere is a section of Ancestry's website encouraging visitors to donate their old yearbooks to Ancestry. At least some, and possibly all, of the, so it is possible some of the Yearbook Database was built via such donations.

65.    Upon information and belief, Ancestry does not take any steps to determine whether the authors of the yearbooks that are the source of raw material in its Yearbook Database intended their content for publication online. Many of the yearbooks were published well before the Internet was widely used. Plaintiff Callahan was part of a team that authored her yearbook. Ancestry never contacted her, nor to her knowledge has it contacted any of her co-authors.

49.66.  Upon information and belief, Ancestry does not take any steps to acquire copyright in the yearbooks that are the source of raw material in its Yearbook Database.

50.67.  With the exception of the implied consent of the donor herself (who may or may not personally appear in the donated yearbook), Ancestry makes no attempt to contact or gain the consent of any of the people whose names, photographs, likenesses, biographical information, and identities appear in a donated yearbook. Ancestry is apparently alert to the risks its business model runs under copyright law, but it does not even attempt to meet its obligations under the California right to publicity. Ancestry asks the yearbook donors to sign a disclaimer that the donated yearbook is either "not bound by copyright restrictions" or "the copyright is held by the donor." But Ancestry does not require or even suggest the donor

should ask the consent of the people who appear in the yearbook to have their names, photographs, and images added to the Ancestry Yearbook Database.

51.68.  Each record in the Ancestry Yearbook Database uniquely identifies an individual human being. Indeed, the fact these records uniquely identify specific individuals is the primary selling point Ancestry uses to attract new subscribers. In its online promotional materials, Ancestry touts that subscribers will gain access to the records in its Ancestry Yearbook Database, each of which "Pinpoints an individual in a particular time and place" by joining information about the person including name, "school or town," time, "a photo," "interests and hobbies," and "family linkages" because siblings may appear in the same yearbook.

52.69.  Ancestry has and continues to knowingly use the names, photographs, and likenesses of Plaintiffs and the class in its products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans. Subscribers who pay monthly subscriptions fees of between $24.99 and $49.99 per month, depending on the plan, receive in exchange the ability to search for, view, and download records in Ancestry's Yearbook Database. Paying subscribers may view and download records containing the names, photographs, and likenesses of Plaintiffs and the class.

53.70.  Ancestry has and continues to knowingly use the names, photographs, and likenesses of Plaintiffs and the class for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using the names, photographs, and likenesses of Plaintiffs and the class in its 14-day promotional "free trial." Users of the promotional "free trial" may search for, download, and view records in Ancestry's Yearbook Database. "Free trial" users receive access to the same records that are available to paying users. Ancestry's sole purpose in using the names, photographs, and likenesses of Plaintiffs and the class in the promotional "free trial" version of its website is to advertise, sell, and solicit the purchase of paid subscription plans.

54.71.  Ancestry has and continues to knowingly use the names, photographs, and likenesses of Plaintiffs and the class for the purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using the names, photographs, and likenesses of Plaintiffs and the class in the promotional limited-access version of its website. Any visitor to the Ancestry website may access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users of the promotional limited-access version of the website may search for records in Ancestry's Yearbook and may view a limited portion of the information in those records, including the name, city of residence, and a low-resolution version of the photograph corresponding to each record.  Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same records that are available to paying users.

72.    Ancestry's sole purpose in using the names, photographs, and likenesses of Plaintiffs and the class in the promotional limited-access version of its website is to advertise, sell, and solicit the purchase of paid subscription plans. Users may access limited versions of the records Ancestry has amassed corresponding to Plaintiffs and the class. The limited-version records include a name, city of residence, and a low-resolution version of a photograph portraying the class member.  Users who hover over the "View Record" link corresponding to each record receive a promotional pop-up advertisement from Ancestry displaying the class member's name, a low-resolution version of the photograph, and a message indicating "There's more to see" and promising the user access to the class member's estimated age, birth year, school, yearbook date, school location, and a full-resolution of the class member's photograph if they "Sign Up Now" for a paid subscription.

73.    Ancestry derives measurable economic value from its use of yearbook records in on-site messages designed to convert visitors into paying subscribers. In public statements to investors, Ancestry has recognized that its ability to attract and retain subscribers depends on amassing the largest possible database of photographs and other personal information with

which to populate on-site messages. "In order to retain and expand our subscriber base. . . we must continue to expend significant resources to acquire significant amounts of additional historical content, digitize it and make it available to our subscribers online. . . Our inability to offer certain vital records or other valuable content as part of our family history research databases. . . could have a material adverse impact on our number of subscribers."[1]

74.    Ancestry has and continues to knowingly use the names, biographical information, and likenesses of Plaintiffs and the class in promotional "hint" emails it sends to users who have signed up for a free account with Ancestry but have not yet become paying users. The "hint" emails contain links to yearbook records of people Ancestry believes the recipient may be related to. The "hint" emails display the full name and estimated birth year of the individual. Clicking on either the individual's name or on the button labelled "See your hint" brings the recipient directly to a web page soliciting a six-month subscription to Ancestry.com for $99.00.

~~55.~~    Ancestry derives measurable economic value from its use of "hint" emails containing class members' names and likenesses. In public statements to investors, Ancestry has specifically recognized the value "hint" emails play in converting non-paying users to registered subscribers. "Our conversion marketing efforts are focused on converting registered users to paying subscribers through on-site messaging, *email*, targeted offers and *compelling product features like record hinting*." Form 10-Q filed June 30, 2016 by Ancestry.com LLC (emphasis added).[2]

75.    The vast majority of people whose personal information Ancestry has amassed in its Ancestry Yearbook Database have no business relationship with Ancestry, are not Ancestry subscribers, and are not subject to a Terms of Service or any other agreement with

---

[1] Available at https://www.sec.gov/Archives/edgar/data/1575319/000157531916000041/acom2016063010-q.htm#s77FC53301E940CD0A1BDD6FC46C1ABAC.

[2] *Supra* n. 1.

CLASS ACTION COMPLAINTFIRST AMENDED CLASS ACTION COMPLAINT

Ancestry.

56.76.  California residents have a property interest in their likenesses recognized by California statutory law. They have the right to exclude anyone from making commercial use of their likenesses without permission. By using class members' likenesses for profit without their permission, Ancestry created a right for each class member in the unjust profit Ancestry has earned from their likeness. Ancestry causes the class continuing injury every day it denies them the profits it has unjustly earned from their likenesses. Ancestry has also injured the class by violating their rights to privacy protected by statute and common law. The violation of such a right is itself injury, and creates in the class members an entitlement to injunctive relief, nominal damages, and statutory damages. Ancestry has also caused class members mental anguish through the knowledge their likeness are being exploited for profit, and through the knowledge of potential risk to their reputations.

57.77.  Ancestry's knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California statute protecting publicity rights of deceased persons, Cal. Civ. Code § 3344.1; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; California's common law right protecting against Intrusion upon Seclusion; and California Unjust Enrichment law.

## CLASS ALLEGATIONS

58.78.  Plaintiffs bring this complaint on behalf of themselves and a class of all California residents who (a) are not currently subscribers of any Ancestry services, (b) have never donated a yearbook to Ancestry, and (c) whose names, photographs, and/or likenesses were uploaded by Ancestry into its Ancestry Yearbook Database and offered for sale as part of Ancestry's paid subscription plans, and/or used by Ancestry to advertise, sell, and solicit the purchase of Ancestry's paid subscription plans, without Ancestry obtaining their consent. Excluded from the class are (a) Plaintiffs' counsel; (b) Ancestry, its officers and directors,

counsel, successors and assigns; (c) any entity in which Ancestry has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

59.79.  The members of the proposed class are so numerous that joinder of individual claims is impracticable. As of September 2020, Ancestry represents that its Ancestry Yearbook Database contains 730 million records. Of those, 60 million records correspond to schools in California. Even accounting for the fact that some individuals have multiple records present in the database, that some are deceased or no longer reside in California, and that the class excludes current Ancestry subscribers (Ancestry represents it has 3 million subscribers worldwide), the class numbers in the millions.

60.80.  There are significant questions of fact and law common to the members of the class. These issues include:

a. Whether Ancestry's collection of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, estimated ages, cities of residence, schools attended, and interest and hobbies, in its Ancestry Yearbook Database, and selling of that information via paid subscription plans, constitute the knowing use of another's name, photograph, or likeness, in any manner, on or in products, merchandise or goods within the meaning of Cal. Civ. Code § 3344;

b. Whether Ancestry's use of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, estimated ages, cities of residence, schools attended, and interests and hobbies, by offering access to that information as part of its promotional 14-day "free trial," constitutes the knowing use of another's name, photograph, or likeness for purposes of advertising or selling, or soliciting purchases of, Ancestry products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

c. Whether Ancestry's use of personal information about Plaintiffs and the class members, including names, yearbook photographs, and cities of residence, by

offering access to that information as part of the promotional limited-access version of its website constitutes the knowing use of another's name, photograph, or likeness for purposes of advertising or selling, or soliciting purchases of, Ancestry products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

d.  Whether Ancestry's use of personal information about Plaintiffs and the class members, including names and ~~yearbook photographs~~biographical information, by including that information in "hint" ~~targeted promotional~~ email messages to potential subscribers constitutes the knowing use of another's name, photograph, or likeness for purposes of advertising or selling, or soliciting purchases of, Ancestry products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

e.  Whether Plaintiffs and the class consented to the use of their names, photographs, and likenesses in Ancestry products and advertisements;

f.  Whether Ancestry's use of names, photographs, and likeness constitutes a use in connection with news or public affairs for which consent is not required;

g.  Whether Ancestry's conduct as described in this complaint violated California's Unfair Competition Law;

h.  Whether Ancestry was unjustly enriched as a result of the conduct described in this complaint; and

i.  Whether class members are entitled to injunctive, declaratory and monetary relief as a result of Ancestry's conduct as described in this complaint.

~~61.~~81.  Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by Ancestry's misappropriation and misuse of their names, likenesses, photographs, and other personal information.

~~62.~~82.  The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the

class, and they are represented by qualified counsel experienced in class action litigation of this nature.

63.83.  A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Ancestry's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

64.84.  The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Ancestry has acted on ground generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the class as a whole.

65.85.  The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION
### (Cal. Civ. Code § 3344)

66.86.  Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

67.87.  California's Right of Publicity Statute, California Civil Code § 3344, prohibits and provides damages for the knowing misappropriation of a name, voice, signature, photograph, or likeness in advertising or soliciting without prior consent.

68.88.  By engaging in the forgoing acts and omissions, Ancestry knowingly used class

members' names, photographs, and likenesses in its products and services for the purpose of advertising and selling its services, without class members' consent.

69.89.  Each use of a class member's name, photograph, or likeness is a separate and distinct violation of California Civil Code § 3344 giving rise to damages.

70.90.  Plaintiffs seek nominal damages, declaratory relief, injunctive relief, and monetary damages for themselves and on behalf of each member of the proposed class as provided for in California Civil Code § 3344, including nominal damages equal to $1 per class member, statutory damages equal to the greater of $750 per violation, actual damages, or profits from Ancestry's illegal actions, punitive damages, and the award of attorneys' fees and costs in the event Plaintiffs prevail in this action.

71.91.  Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294.  The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

## SECOND CAUSE OF ACTION
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

72.92.  Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

73.93.  Ancestry has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq.* ("UCL").

74.94.  As described in this complaint, Ancestry's misappropriation and use without consent of Plaintiffs' and class members' names, photographs, likenesses, and personal information is a violation of California's Right to Publicity Statute, Cal. Civ. Code § 3344.

75.95.  As described in this complaint, Ancestry's misappropriation and use without consent of the names, photographs, likenesses, and personal information of the deceased relatives of Plaintiffs and members of the class is a violation of California's statute protecting publicity rights of deceased persons, Cal. Civ. Code § 3344.1.

76.96.  By engaging in the conduct described in this complaint and violating California law, Ancestry engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

77.97.  By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Ancestry engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

78.98.  As a result of Ancestry's actions, Plaintiffs and the class have been injured. Plaintiffs and members of the class each lost the value of their names and images, and that of the use of the names and images of their deceased relatives. Plaintiffs and members of the class also lost the right to refuse consent and protect their own and deceased family members' privacy, as guaranteed by California law.

### THIRD CAUSE OF ACTION
### (Intrusion Upon Seclusion)

79.99.  Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

80.100.      Plaintiffs and class members have a reasonable expectation of privacy in their personal information, including their photographs and biographical details.

81.101.      Ancestry intentionally intruded on the seclusion of Plaintiffs and the class by appropriating their names, likeness, photographs, and biographical information, and the names likenesses, photographs, and biographical information of their deceased relatives, and using the appropriated information to advertise and sell online services.

82.102.      Ancestry's misuse of personal information reveals private facts in which a reasonable person would expect privacy. It maintains, sells, and advertises using records that reveal intimate details about subjects' private lives, including ages, locations, biographical details, and photographs.

83.103.      Plaintiffs and members of the class were harmed by Ancestry's intrusion into their private affairs as detailed in the compliant.

84.104.      Among other remedies, Plaintiffs and members of the class seek damages, including punitive damages in light of Ancestry's conscious disregard of Plaintiffs' and class members privacy rights and exploitation of their personal information for profit.

85.105.      Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294.  The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

86.106.      Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

87.107.      Plaintiffs and members of the class have conferred an unwarranted benefit on Ancestry. Ancestry's business model centers around selling subscriptions for access to personal information that rightfully belongs to Plaintiffs and members of the class. Ancestry uses the personal information it misappropriated to sell its services without consent. Each subscription sold and each advertisement sent represents an unwarranted benefit conferred by the class.

88.108.      Under principles of equity and good conscience, Ancestry should not be permitted to retain the benefits it gained as a result of its actions.

89.109.      Plaintiffs and members of the class have suffered loss as a direct result of Ancestry's conduct.

90.110.      Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class members, seek the imposition of a constructive trust and restitution of proceeds Ancestry received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest pursuant to Cal. Civ. Proc. Code § 1021.5.

## PRAYER FOR RELIEF

91.111.      WHEREFORE Plaintiffs, on behalf of themselves and all others

similarly situation, hereby demands judgment against Defendant Ancestry as follows:

(a) For an order certifying the proposed class and appointing Plaintiffs and their counsel to represent the class;

(b) For a declaration that Ancestry's acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of California law;

(b)(c)    For nominal damages awarded in recognition of Ancestry's violation of the statutorily protected property and privacy rights of Plaintiffs and the class;

(c)(d)    For preliminary and permanent injunctive relief enjoining and preventing Ancestry from continuing to operate its Ancestry website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(d)(e)    For an order enjoining Ancestry from continuing the unlawful and unfair conduct described in this complaint;

(e)(f)    For restitution for Plaintiffs and members the class for the value that Defendants derived from misappropriating their likenesses;

(f)(g)    For an award of damages, including without limitation damages for actual harm, profits earned by Ancestry in the operation of its websites selling access to misappropriated personal information, damages for lost time, damages for mental anguish, and statutory damages;

(g)(h)    For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(h)(i)    For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

1    Respectfully submitted,

2    Dated: March 22, 2021~~March 22, 2021~~~~March 19, 2021~~          By:   /s/ Michael F. Ram

3                                                                      Michael F. Ram

4                                                                      Michael F. Ram (SBN 104805)
                                                                       mram@forthepeople.com
5                                                                      Marie N. Appel (SBN 187483)
                                                                       mappel@forthepeople.com
6                                                                      MORGAN & MORGAN
7                                                                      COMPLEX LITIGATION GROUP
                                                                       711 Van Ness Avenue, Suite 500
8                                                                      San Francisco, CA 94102
                                                                       Telephone: (415) 358-6913
9                                                                      Facsimile: (415) 358-6923

10

11                                                                     Benjamin R. Osborn (To be admitted *Pro
                                                                       Hac Vice*))
12                                                                     102 Bergen St.
                                                                       Brooklyn, NY 11201
13                                                                     Telephone: (347) 645-0464
                                                                       Email: ben@benosbornlaw.com
14

15                                                                     *Attorneys for Plaintiffs
                                                                       and the Proposed Class*

16

17

18

19

20

21

22

23

24

25

26

27

28