QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

  Cristina Henriquez (Bar No. 317445)
  (cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5ᵗʰ Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5000

Attorneys for ANCESTRY.COM OPERATIONS
INC., ANCESTRY.COM INC., and
ANCESTRY.COM LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN and LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          vs.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>          Defendants. | CASE NO. 3:20-cv-08437-LB<br><br>**NOTICE OF DEFENDANTS' MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FRCP 12 AND MEMORANDUM IN SUPPORT;**<br><br>**[PROPOSED] ORDER**<br><br>Hearing Date: May 13, 2021<br>Hearing Time: 9:30 a.m.<br>Location: San Francisco Courthouse, Courtroom B |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................2

PLAINTIFFS' AMENDED COMPLAINT ..............................................................................3

ARGUMENT ............................................................................................................................4

I.     PLAINTIFFS DID NOT SUFFER ANY INJURY AS A RESULT OF THE
       ALLEGED VIOLATIONS ...........................................................................................4

       A.    The Court's Dismissal Order.............................................................................4

       B.    Plaintiffs' New Allegations Of "Injury" Are Insufficient .................................5

II.    PLAINTIFFS' CLAIMS ARE FORECLOSED BY SECTION 230 OF THE
       COMMUNICATIONS DECENCY ACT .....................................................................9

III.   PLAINTIFFS' SECTION 3344 AND DERIVATIVE UCL AND UNJUST
       ENRICHMENT CLAIMS ARE PREEMPTED BY SECTION 301 OF THE
       COPYRIGHT ACT ....................................................................................................11

IV.    PLAINTIFFS CANNOT PLAUSIBLY STATE A CLAIM FOR INTRUSION
       UPON SECLUSION ...................................................................................................14

V.     PLAINTIFFS' DERIVATIVE CLAIMS FOR UNJUST ENRICHMENT AND
       VIOLATION OF SECTION 17200 FAIL .................................................................16

VI.    THE COURT SHOULD STRIKE PLAINTIFFS' PRAYER FOR STATUTORY
       DAMAGES BECAUSE PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED
       MENTAL ANGUISH ................................................................................................17

VII.   THE COURT SHOULD STRIKE PLAINTIFFS' RESTITUTION-BASED
       CLAIMS BECAUSE AN ADEQUATE REMEDY AT LAW EXISTS ............................17

CONCLUSION ........................................................................................................................18

1

# **TABLE OF AUTHORITIES**

2

**Page**

**Cases**

*Andrade v. Arby's Rest. Grp., Inc.,*
    2015 WL 6689475 (N.D. Cal. Nov. 3, 2015) ................................................................... 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................................... 6

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) .................................................................................. 9, 10

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ........................................................................................... 8

*Downing v. Abercrombie & Fitch,*
    265 F.3d 994 (9th Cir. 2001) .................................................................................. 11, 12

*Endemol Entm't B.V. v. Twentieth Television Inc.,*
    1998 WL 785300 (C.D. Cal. Sept. 29, 1998) ............................................................... 12

*Fairfield v. American Photocopy Equipment Co.,*
    138 Cal. App. 2d 82 (1955) ............................................................................................. 7

*Felix v. State Comp. Ins. Fund,*
    2007 WL 3034444 (C.D. Cal. Oct. 3, 2007) ................................................................. 16

*Fleet v. CBS, Inc.,*
    50 Cal. App. 4th 1911 (1996) .................................................................................. 12, 13

*Folgelstrom v. Lamps Plus, Inc.,*
    195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ................................................ 15

*Four Navy Seals v. Associated Press,*
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................................ 14

*Fus v. CafePress, Inc.,*
    2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) .................................................................. 6

*Gordon v. F.B.I.,*
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) ........................................................................ 14

*Hernandez v. Hillsides, Inc.,*
    47 Cal. 4th 272 (2009) ................................................................................................... 15

*In re Google, Inc. Privacy Policy Litig.,*
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ......................... 5, 15

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................ 15

*Jackson v. Loews Hotels, Inc.,*
    2019 WL 2619656 (C.D. Cal. Jan. 4, 2019) ................................................................... 6

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) ............................................................................. 12, 13

*KEMA, Inc. v. Koperwhats*,
    2010 WL 3464737 (N.D. Cal. Sept. 1, 2010) ........................................................... 17

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ..................................................................................... 12

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ................................................................................... 2, 5

*Lightbourne v. Printroom Inc.*,
    307 F.R.D. 593 (C.D. Cal. 2015) .................................................................................. 8

*Low v. Linkedin Corp.*
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................................... 6, 7, 8

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ..................................................................................... 11

*Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*,
    306 F.3d 806 (9th Cir. 2002) ....................................................................................... 15

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) ................................................................................... 7, 16

*Moreno v. Hanford Sentinel, Inc.*,
    172 Cal. App. 4th 1125 (2009) .................................................................................... 14

*Perfect 10, Inc. v. CCBill, LLC*,
    340 F. Supp. 2d 1077 (C.D. Cal. 2004) ........................................................................ 9

*Perkins v. Linkedin Corp.*,
    53 F. Supp. 3d 1222 (N.D. Cal. 2014) ........................................................................ 16

*Pierce v. Kernan*,
    2017 WL 4621252 (S.D. Cal. Oct. 16, 2017) .............................................................. 14

*Polydoros v. Twentieth Century Fox Film Corp.*,
    67 Cal. App. 4th 318 (1997) ....................................................................................... 14

*Porch v. Masterfoods USA, Inc.*,
    364 F. App'x 365 (9th Cir. 2010) ............................................................................... 13

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) ....................................................................................... 5

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ....................................................................................... 15

*Sarver v. Hurt Locker LLC*,
    2011 WL 11574477 (C.D. Cal. Oct. 13, 2011) ........................................................... 15

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998) ............................ 14

*Sipple v. Chronicle Publ'g Co.*,
    154 Cal. App. 3d 1040 (1984)................................................................................. 6, 14

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007)...................................................................................... 10

*Sonner v. Premier Nutrition Corp.*,
    962 F.3d 1072 (9th Cir.), *opinion amended and superseded on denial of
    reh'g*, 971 F.3d 834 (9th Cir. 2020) ........................................................................ 17

*Stern v. Weinstein*,
    2010 WL 11459791 (C.D. Cal. Jan. 6, 2010),
    *aff'd*, 512 F. App'x 701 (9th Cir. 2013) .................................................................... 15

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005)................................................................................ 11, 12

*Vallarta v. United Airlines, Inc.*,
    |2020 WL 6271151 (N.D. Cal. Oct. 26, 2020) ...................................................... 13, 16

*Varnado v. Midland Funding LLC*,
    43 F. Supp. 3d 985 (N.D. Cal. 2014) ......................................................................... 14

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) ............................................................... 13, 16

## **Statutes**

17 U.S.C. §§ 102-103 ........................................................................................................ 12

47 U.S.C. § 230(c)(1) .......................................................................................................... 8

Cal. Civ. Code § 3344(a).................................................................................................... 4

## **Other Authorities**

2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6 ...................... 16

1    PLEASE TAKE NOTICE that, on May 13, 2021 at 9:30 a.m., or as soon thereafter as

2  counsel may be heard, in Courtroom B of the above entitled Court, defendants Ancestry.com

3  Operations Inc., Ancestry.com Inc., and Ancestry.com LLC (collectively, "Ancestry"), by and

4  through their attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) hereby

5  move the Court to dismiss with prejudice plaintiffs' First Amended Complaint in its entirety, to

6  strike plaintiffs' claim for statutory damages pursuant to California Civil Code section 3344, and

7  to strike plaintiffs' claim for restitution to the extent it is premised on the claim for violation of

8  California Business & Professions Code section 17200.

9    Ancestry moves to dismiss on the grounds that plaintiffs lack Article III standing and the

10  complaint fails to state a claim upon which relief can be granted.  Ancestry moves to strike

11  plaintiffs' prayer for statutory damages on the grounds plaintiffs have failed to plausibly allege

12  any mental anguish resulting from the alleged violations.  Ancestry moves to strike plaintiffs'

13  prayer for restitution on the grounds such recovery is unavailable under the UCL where there is an

14  otherwise adequate remedy at law.

15    This motion is based upon this Notice, the following memorandum of points and

16  authorities, the pleadings and records on file herein, and on such other and further argument and

17  evidence as may be presented at the time of the hearing, and all matters of which this Court may

18  take judicial notice.

19

20

21

22

23

24

25

26

27

28

1

## **PRELIMINARY STATEMENT**

2          Plaintiffs' amended complaint rests on the same faulty foundation that resulted in the

3     Court's first dismissal order.  ECF No. 30.  Plaintiffs challenge Ancestry's model of providing

4     access to yearbook records.  But as this Court previously determined, "the information in the

5     Yearbook database is not private: it is public yearbook information distributed to classmates (and

6     ultimately to Ancestry)," and Ancestry's role is limited to the republication of this publicly-

7     available content: Ancestry's use "does not imply an endorsement of Ancestry's products or an

8     equivalent interest."  *Id.* at 7-8.  Moreover, Ancestry "did not create the underlying yearbook

9     records and instead obtained them from third parties."  *Id.* at 9.  Ancestry simply "offered data in a

10    form — a platform with different functionalities — that did not alter the content."  *Id.* at 10.  No

11    amendment can cure these fundamental flaws, as plaintiffs' new complaint confirms.

12          ***No Injury.***  The Court previously found no Article III standing, *id.* at 9, which plaintiffs

13    attempt to cure by claiming they "spent time" searching Ancestry's website.  But plaintiffs

14    concede they only became aware their records existed on Ancestry's site "through the

15    investigation of this lawsuit."  Plaintiffs' reasoning is circular: they now contend their "injury" is

16    investigating actions by Ancestry that the Court already ruled did not harm plaintiffs.

17    Investigation of "no injury" claims cannot itself constitute "concrete injury"—otherwise, *every*

18    plaintiff would satisfy Article III because investigating and filing a lawsuit necessarily requires

19    expenditure of time. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,

20    624 F.3d 1083, 1088 (9th Cir. 2010) (plaintiff "cannot manufacture the injury by incurring

21    litigation costs").  Nor can plaintiffs' supposed "anger" or "embarrassment" provide the requisite

22    "concrete injury."  Disclosure of already public information does not create a new harm, nor could

23    yearbook information plausibly cause the "mental anguish" plaintiffs now claim.

24          ***Section 230 Immunity.***  The Court previously determined "Ancestry is immune from

25    liability under the Communications Decency Act."  ECF No. 30 at 9.  Plaintiffs' amended

26    complaint tweaks the original allegations, but no changes alter that the claims are premised on

27    third-party content that Ancestry "republish[ed] . . . on its website in an altered format" consistent

28    with "a publisher's traditional editorial functions that do not transform an individual into a content

1   provider within the meaning of § 230." *Id.* at 11 (quotation, citation, alterations omitted).

2   Accordingly, all plaintiffs' claims should once again be dismissed pursuant to section 230.

3         ***The Copyright Act Preempts Plaintiffs' Claims.***  Should the Court need to go further,

4   plaintiffs' claims under section 3344 and derivative claims for unjust enrichment and violation of

5   section 17200 are also preempted by the federal Copyright Act.  The Court already determined

6   that "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's

7   products[.]" ECF No. 30 at 8.  Because plaintiffs can allege no other use of their names or images

8   apart from their mere appearance in excerpts, these claims are preempted.

9         ***No Intrusion Upon Seclusion.***  Finally, plaintiffs' intrusion upon seclusion claim fails

10  because the Court already determined "the information in the Yearbook database is not private[.]"

11  ECF No. 30 at 7.  Moreover, no reasonable person could be "highly offended" by sharing a school

12  portrait, nor as to plaintiff Callahan, by her admirable distinction as class valedictorian.

13        For these reasons and others set forth below, plaintiffs' claims fail pursuant to Rule 12.

14  <u>**PLAINTIFFS' AMENDED COMPLAINT**</u>

15        In their amended complaint, plaintiffs concede they were unaware Ancestry maintained

16  their yearbook records in Ancestry's database until their "investigation" of this lawsuit.  *See id.* at

17  ¶¶ 23, 43.  Plaintiff Abraham now alleges that, after his investigation revealed this information, he

18  "spent about five hours searching the free version of Ancestry.com to confirm his records were

19  being used, performing web searches to ascertain how easily the Ancestry records could be found

20  using a web browser, and communicating with his social connections to warn them their own

21  records may also have been misappropriated by Ancestry.com." *Id.* at ¶ 25.  Plaintiff Abraham

22  also alleges he felt "anger, embarrassment, and discomfort" and is "disturbed" by the "possibility"

23  the existence of his yearbook records on Ancestry's website will "harm or dilute his personal and

24  professional reputation." *Id.* at ¶ 24.  Likewise, plaintiff Callahan now alleges she felt "confused

25  and then angered" upon learning her yearbook excerpts existed on Ancestry's website. *Id.* at ¶ 45.

26        With these new allegations, plaintiffs reassert the same four claims on behalf of a putative

27  class of California residents: (1) violation of California Civil Code § 3344 (California's "right to

28

publicity statute"); (2) violation of California Business & Professions Code § 17200; (3) intrusion upon seclusion; and (4) unjust enrichment. *Id.* at ¶¶ 78, 86-110.

## ARGUMENT

**I.      PLAINTIFFS DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS**

**A.      The Court's Dismissal Order**

The Court previously dismissed plaintiffs' claims because plaintiffs had "not plausibly pleaded Article III standing." ECF No. 30 at 6-9. The Court rejected three separate forms of "injury" claimed by plaintiffs: "(1) Ancestry exploits and profits from their likenesses by obtaining paid subscribers; (2) they have lost potential earnings from the commercial use of their likenesses; and (3) they have suffered injury by Ancestry's denial of their § 3344 right to control the distribution and use of their likenesses." *Id.* at 7. Plaintiffs' amendments continue to advance these same theories, and the claims fail for the same reasons.

Plaintiffs allege they have a "property interest" in their likenesses (ECF No. 32 at ¶¶ 37, 57), but as this Court previously explained, "plaintiffs do not have a commercial interest in their public profiles that precludes Ancestry's use of the profiles for commercial gain." ECF No. 30 at 8. "[T]he information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry)." *Id.* at 7. Thus, "more is needed beyond using the profiles. For example, standing can be established if the exploitation of users' profiles suggests that the users personally endorse a product or service." *Id.* However, plaintiffs have not—and cannot—proceed on an "endorsement" theory because "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest." *Id.* at 8.

Plaintiffs' amendments also include assertions that they had a "right to exclude anyone from making commercial use" of their likenesses. ECF No. 32 at ¶¶ 37, 57. But again, this theory was addressed and rejected in the Court's order: "the statute imposes liability only where 'persons [are] injured as a result.'" ECF No. 30 at 8 (quoting Cal. Civ. Code § 3344(a)). Permitting a claim to proceed based solely on the purported "right" under the statute to limit the use of a name or image would negate the statute's separate injury requirement.

1    Finally, plaintiffs' amendments reprise the same assertions made in opposition to

2 Ancestry's first motion to dismiss to contend Ancestry "derives measurable economic value" from

3 use of their yearbook information.  *Compare* ECF No. 32 at ¶¶ 73-74 *with* ECF No. 19 at 3-7.

4 However, the Court already determined this "does not establish injury" because a "plaintiff must

5 do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the

6 process he lost dollars of his own."  ECF No. 30 at 7 (quoting *In re Google, Inc. Privacy Policy*

7 *Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013)).

8    Each "new" allegation has thus already been addressed and rejected by the Court.

9    **B.    Plaintiffs' New Allegations Of "Injury" Are Insufficient**

10    Plaintiffs also advance two new theories of "injury," neither of which suffices for purposes

11 of Article III standing.

12    **First**, plaintiff Abraham alleges he "spent about five hours searching the free version of

13 Ancestry.com to confirm his records were being used, performing web searches to ascertain how

14 easily the Ancestry records could be found using a web browser, and communicating with his

15 social connections to warn them their own records may also have been misappropriated by

16 Ancestry.com."  ECF No. 32 at ¶ 25.  None of this activity constitutes a "concrete injury."  A

17 plaintiff "cannot manufacture the injury by incurring litigation costs or simply choosing to spend

18 money fixing a problem that otherwise would not affect the [plaintiff] at all."  *La Asociacion de*

19 *Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  A

20 plaintiff "must instead show that it would have suffered some other injury if it had not diverted

21 resources to counteracting the problem."  *Id.*  In other words, for such allegations to be even

22 arguably sufficient,[1] plaintiff Abraham would have to identify both a "problem" and some

23 _____

24    [1] Notably, the concepts of injury plaintiffs invoke come from the doctrine of "organizational

25 standing," an already-tenuous expansion of Article III that applies to organizations suing on their
own behalf to address issues that adversely affect the core mission of the organization.  *See*

26 *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1135 n.10 (9th Cir. 2019) (discussing the "'grave
tension' between the expansion of *Havens*-based organizational standing and broader Article III

27 standing principles," and noting "We share many of these concerns but are bound to apply current
precedent regardless.").  The notion that investigation of an alleged violation or outreach to

28    (footnote continued)

1    independent "injury" that would have resulted had he not chosen to spend five hours browsing the

2    internet or talking with his friends.  He cannot do so for the reasons explained in this Court's order

3    dismissing plaintiffs' original complaint.  ECF No. 30 (determining that Ancestry had not only

4    "engaged in a publisher's traditional editorial functions . . . within the meaning of § 230," but also

5    that plaintiffs had failed to allege any concrete injury resulted).  Time spent investigating non-

6    actionable conduct that resulted in no injury to plaintiff cannot be deemed itself a constitutional

7    injury, or the standing concept would be wholly swallowed.  Were plaintiff Abraham's

8    investigation time sufficient to establish standing, *every* plaintiff could manufacture standing by

9    citing time investigating and filing a lawsuit.

10            **Second,** both plaintiffs claim to have suffered "anger" and "embarrassment" upon learning

11   their already-public yearbook records existed in Ancestry's database.  ECF No. 32 at ¶¶ 24, 45.

12   However, these purported injuries are simply not plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662,

13   678 (2009).  The yearbook information at issue is not only entirely benign, but has also been

14   publicly available through other sources for decades as a result of plaintiffs' choice to appear in

15   the yearbooks in the first instance.  *See* ECF No. 30 at 7 ("the information in the Yearbook

16   database is not private").  Where the information at issue is already a matter of public record, its

17   disclosure cannot plausibly cause any harm.  *See, e.g., Jackson v. Loews Hotels, Inc.*, 2019 WL

18   2619656, at *3–4 (C.D. Cal. Jan. 4, 2019) (finding that the plaintiff suffered no injury-in-fact

19   when only publicly available information such as her "full name, email, phone number, and

20   address" was exposed in data breach); *Fus v. CafePress, Inc.*, 2020 WL 7027653, at *3 (N.D. Ill.

21   Nov. 30, 2020) (no concrete injury where "most of Fus's information possessed by CafePress at

22   the time of the hack was publicly available information").  "Moreover, it is equally underlined that

23   there is no liability when the defendant merely gives further publicity to information about the

24   plaintiff which is already public or when the further publicity relates to matters which the plaintiff

───────────────────────────

26   address it can suffice to confer Article III standing has not been adopted outside the context of
     organizations suing to prevent frustration of their core missions, nor would it make sense to do so.
27   In any event, to the extent plaintiff is attempting to invoke these principles for his individual
     claim, this argument also fails for the reasons set forth above.

1  leaves open to the public eye." *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047

2  (1984).

3      The court in *Low v. Linkedin Corp.* addressed an analogous situation.  2011 WL 5509848

4  at *3 (N.D. Cal. Nov. 11, 2011).  There, the plaintiff claimed he suffered "embarrassment and

5  humiliation caused by the disclosure of his personally identifiable browsing history." *Id.*

6  (alterations omitted).  However, the plaintiff claimed only that "his personal LinkedIn user

7  identification number, associated with a social search for his own name, was transmitted to third

8  parties by LinkedIn." *Id.*  The court rejected these purported "injuries" as insufficient—plaintiff

9  had failed to allege "what information was actually disclosed to third parties . . . would lead

10  Plaintiff to suffer emotional harm," such as "embarrassing details of his personal browsing

11  patterns . . . linked to his identity by LinkedIn[.]" *Id.*  Here, plaintiffs similarly cannot point to any

12  "embarrassing details" that were revealed, nor any use of their names that could plausibly have

13  resulted in "anger" or "embarrassment."  Nearly every person who attended school in the United

14  States has appeared in a yearbook, and it defies reason to believe revelation of this fact would

15  cause "anger" or "embarrassment."

16      The "mental anguish" injury plaintiffs are attempting to invoke stems from the California

17  appellate court decision in *Fairfield v. American Photocopy Equipment Co.*, 138 Cal. App. 2d 82

18  (1955).  *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008) (recognizing

19  "the legislative history of section 3344(a) reveals the statutory minimum damages were meant to

20  compensate non-celebrity plaintiffs who suffer the *Fairfield* form of mental anguish").  But in

21  *Fairfield*, the defendant circulated "a printed advertisement indicating that plaintiff was a satisfied

22  user" of defendant's product—a photocopy machine the plaintiff had previously purchased then

23  returned for a refund.  *Fairfield*, 138 Cal. App. 2d at 85.  The court determined it was error to

24  prevent the plaintiff from proving he was entitled to more than nominal damages—"[t]he

25  advertisement necessarily carried the implication that plaintiff endorsed the machine and had

26  permitted defendant to use his name as a lawyer in its advertisements. He had done neither," and,

27  as a result of the advertisement, "he had received telephone calls from other lawyers and . . . he

28  had had conversations with other lawyers pertaining to the advertisement." *Id.* at 88, 90.  The trial

1   court prohibited the plaintiff from testifying whether those conversations caused him to feel any

2   "mental anguish," which the appellate court determined to be error.  *Id.* at 91.  Thus, the form of

3   "mental anguish" the court recognized in *Fairfield* did not result from mere republication of

4   plaintiff's name and image.  Instead, it was supported by concrete facts that could plausibly have

5   led to such injury—that his colleagues believed plaintiff had endorsed a product that the plaintiff

6   had, in fact, been completely dissatisfied with.

7       In contrast, plaintiffs here simply intone the words "embarrassment," "anger," and "mental

8   anguish," but can offer no plausible explanation why republication of already-public facts could

9   have made them feel this way.[2]

10      Finally, plaintiff Abraham's claim that the existence of his yearbook excerpts on

11  Ancestry's website might "harm or dilute his personal and professional reputation" fails for the

12  same reasons.  Not only is it entirely implausible that one's reputation could be harmed by middle

13  school class portraits or a photograph depicting participation on a track team (ECF No. 32 at ¶ 30),

14  plaintiff Abraham claims only that such harm *might* occur (ECF No. 32 at ¶ 24).  This claimed

15  injury is far "too theoretical to support injury in-fact for the purposes of Article III standing."

16  *Low*, 2011 WL 5509848 at *4.  *See also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir.

17  2009) (finding lack of standing because of the "conjectural and hypothetical nature" of the alleged

18  injury). This information has been publicly available for *decades*; his suggestion that it *might* harm

19  his reputation now that he has chosen to file suit is both theoretical and implausible.

20

---

21      [2]  Though not an issue for this motion, plaintiffs' "Hail Mary" attempt to allege an injury
22  makes clear this action is improper for class treatment because individual inquiries would be
    necessary to determine whether any other class members claim to be "angered" or "embarrassed"
23  about the republication of their already-public high school yearbook excerpts. *See, e.g.,*
    *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 602–03 (C.D. Cal. 2015) ("[I]ndividualized
24  inquiries would be required . . . to determine . . . class members' entitlement to statutory damages .
    . . while Section 3344 of the California Civil Code provides for $750 in statutory damages, courts
25  parsing the statute have unanimously concluded that these statutory damages are recoverable only
    upon a showing of actual damages, whether they are commercial in nature or stem from a non-
26  celebrity plaintiff's mental anguish . . . prosecuting this action on a classwide basis would
    necessitate myriad individual inquiries of each athlete and disputed photograph. These inquiries
27  predominate over any common questions").

28

**II.     PLAINTIFFS' CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**

This Court previously determined "Ancestry is immune from liability under the Communications Decency Act." ECF No. 30 at 9 (citing 47 U.S.C. § 230(c)(1)). "Ancestry is an interactive-computer service. It did not create the underlying yearbook records and instead obtained them from third parties. It thus is immune from liability for the third-party content." *Id.* Nothing in plaintiffs' amended complaint changes this outcome.

Plaintiffs alter the wording of their previous allegations to assert Ancestry "extracted personal information from school yearbooks," and "designed and created a record in its database corresponding to each individual who appears in a given yearbook." ECF No. 32 at ¶ 3. But those same records were included in their previous complaint and plaintiffs advanced this same argument. As this Court determined, "Ancestry did not transform data and instead offered data in a form — a platform with different functionalities — that did not alter the content." ECF No. 30 at 10. Accordingly, Ancestry cannot be deemed a "content provider" within the meaning of section 230. *Id.* at 10-11.

Plaintiffs also contend there is no indication "the authors intended the content to be published or otherwise distributed online." ECF No. 32 at ¶¶ 27, 47. These allegations appear relate to plaintiffs' previous argument that Ancestry is not entitled to immunity because it "obtained the yearbook content from someone else" and not the original author. *See* ECF No. 30 at 9. As this Court explained, "no case supports the conclusion that § 230(a)(1) immunity applies only if the website operator obtained the third-party content from the original author. To the contrary, the Act immunizes an interactive computer service provider that passively displays content that is created entirely by third parties." *Id.* at 10 (quotations, citation omitted). Were it otherwise, Twitter (for example) could be held liable for defamation if a user copies and pastes a defamatory comment from a third party, but would not be liable if the user wrote and posted the comment. That is not the law.

Plaintiffs also contended at oral argument that the Ninth Circuit's decision in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) limits immunity under section 230 to information conveyed

to the publisher with the express purpose of posting it online.  But this misreads *Batzel*.  There, "the Court withdrew protection only for those internet service providers who would publish on the Internet *private* communications the provider knew or had reason to know were never intended to be published at all." *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110–11 (C.D. Cal. 2004) ("All of the images owned by Perfect 10 were intended to be published and they are indeed published on Perfect 10's own website. . . . None of the evidence provided by Perfect 10 creates a genuine issue of material fact as to whether the images on the Defendants' affiliate websites were intended to be private and unpublished.") (emphasis in original), *aff'd on CDA grounds* 488 F.3d 1102 (9th Cir. 2007).  Unlike the private email at issue in *Batzel*, the yearbook records at issue here were neither "private" nor "unpublished."  Further, *Batzel* recognized "the focus should be not on the information provider's intentions or knowledge when transmitting content but, instead, on the service provider's or user's reasonable perception," otherwise, "posting of information on the Internet and other interactive computer services would be chilled, as the service provider or user could not tell whether posting was contemplated."  333 F.3d at 1034.  Although in *Batzel* questions remained whether the defendant could reasonably have believed the private email was intended for publication on the internet, here there can be no doubt—plaintiffs contend the yearbooks were donated to Ancestry for that purpose.  ECF No. 32 at ¶ 64 ("There is a section of Ancestry's website encouraging visitors to donate their old yearbooks to Ancestry, so it is possible some of the Yearbook Database was built via such donations.").[3]

---

[3]   Plaintiffs also altered their previous allegations concerning the "targeted email advertisements" in recognition that (1) those "hint" emails do not include any photographs, as plaintiffs had previously alleged; and (2) contrary to their prior allegations, neither plaintiff here had ever been featured in one of these "hint" emails at the time this lawsuit was initiated.  *See* ECF No. 32 at ¶¶ 11, 55.  This issue was already addressed and the revisions do not alter the CDA analysis in any way.  *See* ECF No. 30 at 10 ("Ancestry extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages and in its email solicitations, adds information (such as an estimated birth year and age), and adds interactive buttons (such as a button prompting a user to upgrade to a more expensive subscription). . . . Ancestry did not transform data and instead offered data in a form — a platform with different functionalities — that did not alter the content.").  Further, plaintiffs' concession that neither appeared in one of these "hint" emails at the time they filed this lawsuit should prevent them from basing their claims
    (footnote continued)

1   No new facts have been, or could be, alleged to remove Ancestry from the purview of

2  section 230's immunity.  Nothing can change that Ancestry did not create the yearbook excerpts

3  that underlie plaintiffs' complaint.  As the Court previously determined, "[i]nstead of creating

4  content, Ancestry — by taking information and photos from the donated yearbooks and

5  republishing them on its website in an altered format — engaged in a publisher's traditional

6  editorial functions that do not transform an individual into a content provider within the meaning

7  of § 230."  ECF No. 30 at 11 (quotation, citation, alterations omitted).

8  **III.  PLAINTIFFS' SECTION 3344 AND DERIVATIVE UCL AND UNJUST**

9      **ENRICHMENT CLAIMS ARE PREEMPTED BY SECTION 301 OF THE**

10     **COPYRIGHT ACT**

11     Right of publicity claims are preempted by section 301 of the Copyright Act to the extent

12  the claims rest on distribution or display of a copyrighted work, rather than on the misuse of a

13  plaintiff's "likeness."  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017). The

14  Ninth Circuit applies the following framework:

15      [A] publicity-right claim is not preempted when it targets non-consensual *use* of
        one's name or likeness on merchandise or in advertising. But when a likeness has
16      been captured in a copyrighted artistic visual work and the work itself is being
        distributed for personal use, a publicity-right claim interferes with the exclusive
17      rights of the copyright holder, and is preempted by section 301 of the Copyright
        Act.
18

19  *Id*. at 1011 (emphasis in original).  The Ninth Circuit's emphasis on the "use" of a person's name

20  or likeness derived from the Seventh Circuit's decision in *Toney v. L'Oreal USA, Inc.*, 406 F.3d

21  905, 910 (7th Cir. 2005), which held "[t]he basis of a right of publicity claim concerns the

22  message—whether the plaintiff endorses, or appears to endorse the product in question."  *Id.*

23     In *Maloney*, the plaintiffs asserted claims under California's right-of-publicity statute

24  where "[c]onsumers could view digital thumbnails of the images" available for sale and were

25  _____

26  on these emails.  *See, e.g., Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 n.5 (9th
27  Cir. 2007) ("Standing must exist at the time the action is filed and cannot be established by
    showing later actions").
28

given the option to purchase the full versions of the photographs.  853 F.3d at 1007.  Although the plaintiffs alleged the defendant exploited their names and likenesses for commercial purposes, the Ninth Circuit deemed the claims preempted—plaintiffs "were asserting rights equivalent to the exclusive rights contained in the Copyright Act because they did not identify a use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted."  *Id.* at 1008-09.  In reaching its decision, *Maloney* distinguished the court's earlier decision in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), where "Abercrombie went well beyond the mere republication of the photograph.  Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo.  ***Importantly, we said that Abercrombie had suggested that the surfers had endorsed Abercrombie's t-shirts***."  *Id.* at 1013-14 (discussing *Downing*, 265 F.3d 994) (quotations, citations, alterations omitted) (emphasis added).

Here, as in *Maloney* (and unlike *Downing*), although plaintiffs frame their claims in terms of Ancestry's "use" of their names and likenesses, in substance plaintiffs challenge Ancestry's model of paid *access* to their copyrighted yearbooks.[4]  Plaintiffs do not identify any use of their names or images apart from their mere appearance in the yearbook pages hosted on Ancestry's site—as this Court already determined, they cannot contend their names or images were used to make it appear they "endorse[d] the product in question" in any way.  *See Toney*, 406 F.3d at 910; ECF No. 30 at 8 ("Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products").  Instead, plaintiffs claim only that Ancestry offered *access* to those

---

[4]  Plaintiffs did not dispute the yearbooks at issue here fall within the "subject matter of copyright," and there is no doubt they do.  *See* 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including "compilations").  In any event, the scope of preemption is broader than the scope of copyright protection—"the shadow actually cast by the Act's preemption is notably broader than the wing of its protection."  *Endemol Entm't B.V. v. Twentieth Television Inc.*, 1998 WL 785300, at *3 (C.D. Cal. Sept. 29, 1998) (quotation, citation omitted).  *See also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (even where drawings were not protected by Copyright Act, unfair competition claims nonetheless preempted).

1    yearbooks.

2         Plaintiffs' claims are similar to those rejected in *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911

3    (1996).  There, the producers of a film did not fully compensate the actors, who then brought

4    section 3344 claims arguing that their images had been used without consent.  *Id.* at 1915.  The

5    *Fleet* court reasoned that their appearances in the film were copyrightable, and because the actors

6    sought to prevent defendant "from reproducing and distributing their performances in the film,

7    their claims must be preempted by federal copyright law."  *Id.* at 1919.  Likewise, in *Jules Jordan*

8    *Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146 (9th Cir. 2010), the court rejected plaintiff's

9    section 3344 claims where the misappropriation of his name and persona resulted from

10   unauthorized production of DVDs, a copyrighted medium.  *Id.* at 1152-53.

11        Plaintiffs previously argued that when "a defendant does not hold exclusive copyright in a

12   work, there is no preemption."  ECF No. 19 at 13.  Plaintiffs have now amended their complaint to

13   try to bolster that argument.  ECF No. 32 at ¶¶ 28, 48 (asserting "Ancestry does not hold

14   copyright" to the yearbooks).  However, as Ancestry pointed out, the Ninth Circuit explicitly

15   rejected this position.  *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154–55

16   (9th Cir. 2010) ("We do not read *Fleet* or the Copyright Act so narrowly. Whether a claim is

17   preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on

18   whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the

19   general scope of the copyright. . . . If a plaintiff asserts a claim that is the equivalent of a claim for

20   infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the

21   defendant might have acquired.") (discussing *Fleet v. CBS, Inc.*, 50 Cal. 4th 1911 (1996), on

22   which plaintiffs previously relied).

23        Here, plaintiffs' allegations concerning use of their names and images arise solely from

24   reproduction of pages from their yearbooks.  Had they wished to protect the distribution of these

25   yearbook pages, they could have "simply retain[ed] [or acquired] the copyright."  *Fleet*, 50 Cal.

26   App. 4th at 1921.  That they failed to do so does not allow them to circumvent the federal

27

28

1    Copyright Act by asserting state-law misappropriation claims.[5]

2    **IV.    PLAINTIFFS CANNOT PLAUSIBLY STATE A CLAIM FOR INTRUSION UPON**

3            **SECLUSION**

4          An action for intrusion upon seclusion under California law requires: "(1) an intrusion into

5    a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person."

6    *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 991 (N.D. Cal. 2014).   Plaintiffs cannot

7    satisfy either of these two requirements.

8          First, plaintiffs cannot plausibly contend they had "an objectively reasonable expectation

9    of seclusion or solitude in the place, conversation or data source."  *See Shulman v. Grp. W Prods.,*

10   *Inc.*, 18 Cal. 4th 200, 232 (1998), *as modified on denial of reh'g* (July 29, 1998).  Indeed, this

11   Court already determined "the information in the Yearbook database is not private: it is public

12   yearbook information distributed to classmates (and ultimately to Ancestry)."  ECF No. 30 at 7.

13   *See also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1144 (S.D. Cal. 2005)

14   ("Numerous cases hold that there is no privacy for a matter already in the public domain.")

15   (collecting cases); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) ("A

16   matter that is already public or that has previously become part of the public domain is not

17   private."); *Sipple*, 154 Cal. App. 3d at 1047 ("there is no liability when the defendant merely gives

18   further publicity to information about the plaintiff which is already public or when the further

19   publicity relates to matters which the plaintiff leaves open to the public eye.").

20         Moreover, the yearbook information is otherwise generally available, public information—

21   names, depictions of plaintiffs' faces, and their school activities are not private matters.  *See, e.g.,*

22

---

23

24        [5] Plaintiffs' claims for violation of section 17200 and unjust enrichment are entirely derivative
of their section 3344 claim.  Accordingly, these claims fail for the same reason.  *See, e.g., White*

25   *v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007) (section 17200 claim fails as
derivative claim); *Andrade v. Arby's Rest. Grp., Inc.*, 2015 WL 6689475, at *4 (N.D. Cal. Nov. 3,

26   2015) (dismissing derivative 17200 claim where claim from which it derived was dismissed);
*Porch v. Masterfoods USA, Inc.*, 364 F. App'x 365, 367 (9th Cir. 2010) (same); *Vallarta v. United*

27   *Airlines, Inc.*, 2020 WL 6271151, at *12 (N.D. Cal. Oct. 26, 2020) (unjust enrichment claim fails
when premised on same conduct as another dismissed claim).

28

*Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) ("name and former physical appearance are not private facts"); *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1040 (N.D. Cal. 2005) (names of TSA employees were "not private"); *Pierce v. Kernan*, 2017 WL 4621252, at *7 (S.D. Cal. Oct. 16, 2017) (with respect to the activities in which plaintiffs participated, "no privacy rights could have reasonably existed while petitioner was out in the public and viewable to the naked eye.").

Second, the information at issue is not "highly offensive to a reasonable person." *Varnado*, 43 F. Supp. 3d at 991. Almost every person who attended school in the United States (including plaintiffs) have voluntarily had *exactly* this type of information published about them—in school yearbooks. The information at issue ranges from entirely benign (school portraits; participation on a track team) to résumé-worthy (plaintiff Callahan's distinction as class valedictorian). Even setting aside that plaintiffs themselves already voluntarily disclosed this information in their public yearbooks, its dissemination would not otherwise offend any reasonable person. *See, e.g., Stern v. Weinstein*, 2010 WL 11459791, at *6 (C.D. Cal. Jan. 6, 2010), *aff'd*, 512 F. App'x 701 (9th Cir. 2013) (case did "not present a 'sufficiently serious' invasion of privacy" where "Plaintiff voluntarily shared his posting with approximately 2,300 CAALA listserv members"; "California case law . . . dictates a higher threshold. Absent any allegation of the unauthorized accessing or disclosure of sensitive medical information or comparably sensitive or embarrassing information, this claim fails."); *Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at *10 (C.D. Cal. Oct. 13, 2011), *aff'd sub nom. Sarver v. Chartier,* 813 F.3d 891 (9th Cir. 2016) ("[T]he portrayal of Plaintiff was not highly offensive to a reasonable person. If the character of Will James was in fact modeled on Plaintiff, then Plaintiff was portrayed as a war hero, struggling with presumably the same conflicts experienced by many modern military soldiers, deployed in a foreign country."); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding the disclosure of a person's name and identity, contact list, and contents of communications to third-party developers was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding the disclosure of a person's age, gender, and geolocation information was not a breach of social norms); *Med. Lab. Mgmt. Consultants v. Am. Broad.*

1   *Companies, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002) ("The covert videotaping of a business

2   conversation among strangers in business offices does not rise to the level of an exceptional prying

3   into another's private affairs, which the Restatement's illustrations indicate is required for

4   'offensiveness.' . . . In addition, any offensiveness of the alleged intrusion is mitigated by the

5   public interest in the news gathered"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986,

6   992-93 (2011), *as modified* (June 7, 2011) (noting "California has adopted the Restatement

7   Second of Torts formulation of the intrusion-into-private-matters tort," and holding retailer's

8   conduct of obtaining customer's ZIP code under false pretenses and using it for its own marketing

9   purposes was not highly offensive); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295-301 (2009)

10   (employer's installation of surveillance camera "in an [employee's] office that was reasonably

11   secluded from public access and view" did not constitute a "highly offensive and ... egregious

12   violation of prevailing social norms"); *Felix v. State Comp. Ins. Fund*, 2007 WL 3034444, at *9

13   (C.D. Cal. Oct. 3, 2007) ("Even if Defendant . . . listened in on Plaintiff's private phone

14   conversations in the next cubicle, these intrusions were not serious or 'highly offensive to a

15   reasonable person.'").  *See also* § 12:6. Highly offensive to a reasonable person, 2 Entertainment

16   Law 3d: Legal Concepts and Business Practices § 12:6 ("Generally, accurate photographic

17   depictions of an individual are not considered highly offensive to a reasonable person.").

18   Accordingly, plaintiffs' third cause of action should be dismissed.

19   **V.**     **PLAINTIFFS' DERIVATIVE CLAIMS FOR UNJUST ENRICHMENT AND**

20              **VIOLATION OF SECTION 17200 FAIL**

21       Plaintiffs' unjust enrichment and 17200 claims are derivative of their section 3344 claim,

22   ECF No. 32 at ¶¶ 92-98, 107 (asserting Ancestry "misappropriated" plaintiffs' information), and

23   thus fail for the same reasons, *see, e.g., Vallarta*, 2020 WL 6271151 at *12 (unjust enrichment

24   claim fails when premised on same conduct as another dismissed claim); *White*, 497 F. Supp. 2d at

25   1089-90 (section 17200 claim fails as derivative claim).

26

27

28

## VI.   THE COURT SHOULD STRIKE PLAINTIFFS' PRAYER FOR STATUTORY DAMAGES BECAUSE PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED MENTAL ANGUISH

Plaintiffs seek statutory damages in connection with their section 3344 claim.  *See* ECF No. 32 at ¶ 111(g).  However, this statutory damages provision applies only where plaintiffs have suffered mental anguish as a result of the alleged violation.  *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008) ("[T]he legislative history of section 3344(a) reveals the statutory minimum damages were meant to compensate non-celebrity plaintiffs who suffer . . . mental anguish yet no discernible commercial loss. To the extent Miller suffered commercial loss . . . his recourse was to prove actual damages like any other plaintiff whose name has commercial value."); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1243 (N.D. Cal. 2014) (following *Miller* to dismiss statutory damages claim where plaintiffs had not alleged mental anguish resulted from the claimed violations).  As shown above, plaintiffs cannot plausibly claim any "mental anguish" resulted from Ancestry's inclusion of their publicly-available yearbook records in Ancestry's database.  Accordingly, the Court should strike plaintiffs' prayer for statutory damages.

## VII.   THE COURT SHOULD STRIKE PLAINTIFFS' RESTITUTION-BASED CLAIMS BECAUSE AN ADEQUATE REMEDY AT LAW EXISTS

Among other remedies, plaintiffs' complaint seeks restitution.  *See* ECF No. 32 at ¶ 111(f). To the extent plaintiffs seek restitution in connection with their claim for violation of California Business & Professions Code section 17200, this remedy is precluded by the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 971 F.3d 834 (9th Cir. 2020).  In *Sonner*, the court held a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL[.]"  *Id.* at 1081.  Here, plaintiffs' UCL claims are premised on the same conduct that underlies their claim for violation of California Civil Code section 3344, which provides a remedy at law.  *See* ECF No. 32 at ¶¶ 92-98.

Accordingly, plaintiffs' request for restitution should be stricken to the extent it is premised on their UCL claim.  *See, e.g., KEMA, Inc. v. Koperwhats*, 2010 WL 3464737, at *13

Case No. 3:20-cv-08437-LB
DEFENDANTS' MOTION TO DISMISS FAC

1 | (N.D. Cal. Sept. 1, 2010) ("[T]o the extent Koperwhats' prayer for damages and restitution is

2 | based on Koperwhats' UCL claim, the motions to strike the prayer will be granted.").

3 | ## CONCLUSION

4 | For all these reasons, Ancestry's motion to dismiss should be granted.

5 | Respectfully submitted,

6 | DATED:  April 5, 2021                    QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP

7 |

8 |                                          By /s/ Shon Morgan
                                              Shon Morgan
9 |                                           Attorneys for ANCESTRY.COM OPERATIONS
                                              INC., ANCESTRY.COM INC., and
10 |                                          ANCESTRY.COM LLC

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |