1  Michael F. Ram (SBN 104805)
   mram@forthepeople.com
2  Marie N. Appel (SBN 187483)
   mappel@forthepeople.com
3  MORGAN & MORGAN
   COMPLEX LITIGATION GROUP
4  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
5  Telephone: (415) 358-6913
   Telephone: (415) 358-6293
6
7  Benjamin R. Osborn (appearing *Pro Hac Vice*)
8  102 Bergen St.
   Brooklyn, NY 11201
9  Phone: (347) 645-0464
   Email: ben@benosbornlaw.com
10
11 *Attorneys for Plaintiffs*
   *and the Proposed Class*
12
13
14              THE UNITED STATES DISTRICT COURT
15          FOR THE NORTHERN DISTRICT OF CALIFORNIA
16                  SAN FRANCISCO DIVISION
17
18 MEREDITH CALLAHAN and LAWRENCE        Case No.: 3:20-cv-8437-LB
   GEOFFREY ABRAHAM, individually and
19 on behalf of all others similarly situated,
20         Plaintiffs,                    **OPPOSITION TO DEFENDANTS'**
                                          **MOTION TO DISMISS FIRST**
21 vs.                                    **AMENDED CLASS ACTION**
                                          **COMPLAINT AND MEMORANDUM IN**
22 ANCESTRY.COM OPERATIONS INC., a        **SUPPORT**
   Virginia Corporation; ANCESTRY.COM,
23 INC., a Delaware Corporation;
   ANCESTRY.COM LLC, a Delaware Limited
24 Liability Company; and DOES 1 through 50,
   inclusive,
25         Defendants.
26
27 OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
28 ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. LEGAL STANDARD FOR MOTION TO DISMISS ..................................................... 2

III. ARGUMENT ...................................................................................................................... 2

    A.  The FAC address the Court's concerns regarding Article III standing. ...................... 2

        1.  The FAC properly alleges the violation of a substantive right to privacy
            guaranteed by California's right to publicity statute................................................. 3

        2.  The FAC makes clear that Plaintiffs' claims arise from the use of their likenesses
            to promote Ancestry subscriptions, not from mere disclosure. ............................. 6

        3.  The FAC alleges that Plaintiffs' likenesses have provable commercial value
            evidenced by Ancestry's public statements and use in marketing emails. ............. 8

    B.  The FAC alleges additional forms of injury, all of which create standing. ................ 12

        1.  Plaintiffs have alleged mental anguish. ................................................................. 12

        2.  Plaintiffs have alleged they lost time. ................................................................... 13

        3.  Plaintiffs have alleged theft of their intellectual property. ................................... 14

    C.  The allegations in the FAC establish that Ancestry is not protected by the CDA...... 14

        1.  Ancestry has not met its burden of showing that yearbooks were "provided by"
            anyone. .................................................................................................................. 14

        2.  Ancestry has no indication that yearbook authors intended the yearbooks for
            publication on the Internet. .................................................................................... 16

        3.  Plaintiffs' claims are directed at previews, on-site messages, and marketing emails
            Ancestry created, not the underlying yearbooks.................................................... 19

    D.  Plaintiffs' claims are not preempted by copyright..................................................... 20

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

ii

1.   Ancestry does not own or license yearbook copyrights.........................20

2.   Plaintiffs' likenesses cannot be copyrighted.........................21

E.   Plaintiffs have stated a claim for intrusion upon seclusion.........................23

F.   California recognizes a claim for unjust enrichment. .........................24

G.   Plaintiffs plausibly allege mental anguish, and mental anguish is not required to support a claim for statutory damages. .........................24

H.   Plaintiff has properly plead restitution-based claims.........................24

IV. CONCLUSION.........................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adkins v. Facebook, Inc.*,
    424 F. Supp. 3d 686 (N.D. Cal. 2019) ................................................................. 15

*Anthony v. Yahoo! Inc.*,
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ........................................................... 8, 23

*Aroa Marketing, Inc. v. Hartford Insurance*,
    198 Cal. App. 4th 781 (Cal. Ct. App. 2011) ..................................................... 16

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ............................................................................ 28

*Barnes v. Yahoo!, Inc.*,
    565 F.3d 560 (9th Cir. 2009) ............................................................................ 16

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ............................................................. 19, 20, 21

*Breazeale v. Victim Servs., Inc.*,
    878 F.3d 759 (9th Cir. 2017) ............................................................................ 19

*C.M.D. v. Facebook, Inc.*,
    No. C 12-1216 RS, 2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) .................. 6, 7, 8

*Cairns v. Franklin Mint Co.*,
    107 F. Supp. 2d 1212 (C.D. Cal. 2000) ............................................................ 12

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ....................................................................... 3, 5, 6

*Cohen v. Facebook, Inc.*,
    2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) .................................................... 7

*Cohen v. Facebook, Inc.*,
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) .............................................................. 6

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (Cal. 2001) ............................................................................... 16

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

iv

*Davis v. Facebook, Inc,*
    956 F.3d 589 (9th Cir. 2020) .................................................................. 3, 5, 6, 10

*Del Amo v. Baccash,*
    2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) ...................................................... 13

*DeMando v. Morris,*
    206 F.3d 1300 (9th Cir. 2000) ...................................................................... 6

*Deteresa v. Am. Broad. Cos., Inc.,*
    121 F.3d 460 (9th Cir. 1997) ..................................................................... 26

*Diamond Ranch Acad., Inc. v. Filer,*
    No. 2:14-CV-751-TC, 2016 WL 633351 (D. Utah Feb. 17, 2016) ......................... 18

*Downing v. Abercrombie Fitch,*
    265 F.3d 994 (9th Cir. 2001) ........................................................... 8, 13, 24, 25

*Eichenberger v. ESPN,*
    876 F.3d 979 (9th Cir. 2017) ...................................................................... 4

*ESG Capital Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016) .................................................................... 27

*Fair v. Roommates,*
    521 F.3d 1157 (9th Cir. 2008) ........................................................... 18, 19, 22

*Fausto v. Credigy Services Corp.,*
    598 F. Supp. 2d 1049 (N.D. Cal. 2009) .......................................................... 26

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,*
    778 F.3d 1059 (9th Cir. 2015) .................................................................... 12

*Fleet v. CBS, Inc.,*
    50 Cal. App. 4th 1911 (1996) ................................................................. 23, 24

*Fraley v. Facebook, Inc.,*
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................... 6, 7, 8, 9, 10, 11, 13, 22

*Fus v. CafePress, Inc.,*
    2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) .................................................... 15

*Gabiola v. Sarid,*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) .............................................. 9

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................................... 11, 26, 27

*In re Google, Inc. Privacy Policy Litigation,*
No. 12-018382, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............................................. 11

*IntegrityMessageBoards.com v. Facebook, Inc.,*
No. 18-cv-05286-PJH (N.D. Cal. Nov. 6, 2020) ...................................................... 28

*Jackson v. Loews Hotels, Inc.,*
2019 WL 2619656 (C.D. Cal. Jan. 4, 2019) ........................................................ 15

*Jordan Video, Inc. v. 144942 Canada Inc.,*
617 F.3d 1146 (9th Cir. 2010) .................................................................. 24

*Kimzey* v. *Yelp! Inc.,*
836 F.3d 1263 (9th Cir. 2016) .................................................................. 18

*Klayman v. Mark Zuckerberg & Facebook, Inc.,*
753 F.3d 1354 (D.C. Cir. 2014) ................................................................. 18

*KNB Enterprises v. Matthews,*
78 Cal. App. 4th 362 (Cal. Ct. App. 2000) ..................................................... 12, 13

*Lectrodryer v. SeoulBank,*
77 Cal.App.4th 723 (2000) ..................................................................... 28

*Low v. LinkedIn Corp.,*
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................................... 15

*Lukis v. Whitepages Inc.,*
454 F. Supp. 3d 746 (N.D. Cal. 2014) ..................................................... 1, 2, 9, 12, 18

*Maloney v. T3Media, Inc.,*
853 F.3d 1004 (9th Cir. 2017) ............................................................ 23, 24, 25

*Manzarek v. Marine,*
519 F.3d 1025 (9th Cir. 2008) ................................................................... 2

*Michaels v. Internet Entertainment Group,*
5 F. Supp.2d 823 (C.D. Cal. 1998) .............................................................. 12

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

*Miller v. Collectors Univ.*,
    159 Cal. App. 4th 988 (Cal. Ct. App. 2008) ........................................................................ 14

*Monster Energy Co. v. Integrated Supply Network, LLC*,
    No. 19-55760, 821 Fed. Appx. 730 (9th Cir. July 22, 2020)................................................ 16

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
    498 F.2d 821 (9th Cir. 1974) ............................................................................................... 13

*Nayab v. Capital One* Bank,
    942 F.3d 480 (9th Cir. 2019) ................................................................................................. 2

*Newcombe v. Adolf Coors Company*,
    157 F.3d 686 (9th Cir. 1998) ................................................................................................. 4

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ............................................................................................... 4

*Perfect 10 Inc. v. Talisman Communications, Inc.*,
    2000 WL 364813 (C.D. Cal. March 27, 2000) .................................................................... 12

*Perfect 10, Inc. v. CCBill, LLC*,
    340 F. Supp. 2d 1077 (C.D. Cal. 2004) .............................................................................. 21

*Perfect 10, Inc., v. Cybernet Ventures, Inc.*,
    213 F. Supp.2d 1146 (C.D. Cal. 2002) ............................................................................... 12

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................................... 7, 11, 13

*Sanders v. Am. Broad. Co., Inc.*,
    20 Cal. 4th 907 (Cal. 1999) ................................................................................................ 27

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (2002) ........................................................................................................... 13

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................................... 29

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)........................................................................................................... 3

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ............................................................................... 24, 25

*Trade Commission v. Accusearch, Inc.*,
  No. 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sep. 28, 2007), *aff'd*, 570 F.3d 1187 (10th
  Cir. 2009) .............................................................................................................. 20

*Uzuegbunam v. Preczewski*,
  No. 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021) ................................................... 7

*Van Patten v. Vertical Fitness Group, LLC*,
  847 F.3d 1037 (9th Cir. 2017) ................................................................................ 4

**Statutes**

17 U.S.C. § 102 ............................................................................................................ 21

17 U.S.C. § 103 ............................................................................................................ 21

18 U.S.C. § 2510 *et seq.* ........................................................................................... 3, 4

18 U.S.C. § 2701 ...................................................................................................... 3, 4, 5

Cal. Bus. & Prof. Code § 17200 ("UCL") ..................................................................... 24

Cal. Civ. Code § 3344 ............................................................. 3, 4, 7, 9, 10, 11, 22, 24, 25

Cal. Pen. Code §§ 630 *et seq.* .................................................................................. 3, 4

Fed R. Civ. P. 12 ........................................................................................................ 2

**Other Authorities**

1 Nimmer on Copyright § 1.01[B][1][c] (1999) ............................................................. 24

Restatement (Second) of Torts § 652A(2) (1977) ....................................................... 4

Stephen M. Lobbin, *"The Right(s) of Publicity in California: Is Three Really Greater Than
  One?"*, 2 UCLA Ent. L. Rev. 157 (1994) ................................................................. 5

# I. PRELIMINARY STATEMENT

Ancestry.com ("Ancestry") is in the business of selling other people's personal information for profit. Without permission from copyright holders, yearbook authors, or the subjects who appear in their pages, Ancestry obtained copies of hundreds of thousands of school yearbooks. ECF 32 at ¶¶ 3-4, 61-67. Ancestry digitally scanned and extracted the names, photographs, and locations of tens of millions of students, most of whom were minors at the time of their photographs. *Id.* at ¶¶ 3, 36, 56, 64. It then designed and created online records associated with individual students. *Id.* at ¶¶ 30, 34, 50, 54. Ancestry uses student names and photographs to advertise and promote website subscriptions costing between $24.99 to $99.99 per month. *Id.* at ¶¶ 6, 12, 26, 35, 46, 55, 69, 74. Ancestry advertises by: (1) providing free limited access to records including low-resolution student photographs – users who click to view full records are shown a pop-up message with the student's image and text prompting the user to "Sign Up Now" for a paid subscription; (2) providing free unlimited access to student records as part of a two-week free trial offered to potential subscribers; and (3) sending marketing emails containing student names, which when clicked deliver the user to a screen soliciting a subscription. *Id.* at ¶¶ 10, 29-36, 47-56.

In *Lukis v. Whitepages Inc.*, a court in Illinois denied a motion to dismiss statutory right to publicity claims against two websites with business practices very similar to Ancestry's. 454 F. Supp. 3d 746 (N.D. Ill. 2020). Like Ancestry, InstantCheckmate.com and Whitepages.com profit by selling access to personal information they gathered from public sources without permission. *Id.* at 759. Both advertise their subscription products by offering free limited access to some personal information, accompanied by on-site messages urging the purchase of a subscription to see more. *Id.* The court found the plaintiffs had suffered injury giving rise to a right to publicity claim because "[the website's] sole purpose in offering free previews . . . is to advertise products available on its website . . . includ[ing] a monthly subscription." *Id.* at 755.

Plaintiffs' right to publicity claims against Ancestry are stronger than those in *Lukis*. Unlike InstantCheckmate and Whitepages, the personal information Ancestry uses to advertise its monthly subscriptions includes photographs of the Plaintiffs as children. ECF No. 32 at ¶¶

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

30, 50. And Ancestry's marketing efforts go far beyond offering free previews. Ancestry actively sends marketing emails called "hints" directly to potential subscribers. Clicking on the Plaintiffs' name in a "hint" email brings the recipient directly to a page soliciting payment. *Id.* at ¶¶ 35-36, 55-56.

On March 1, this Court entered an Order granting Ancestry's motion to dismiss the Plaintiffs' initial Complaint, finding that the allegations in that Complaint were insufficient to establish that Plaintiffs had Article III standing, and that Ancestry was entitled to immunity under § 230 of the Communications Decency Act ("CDA"). ECF No. 30 at 6-11. The Court also denied Ancestry's motion to strike pursuant to California's anti-SLAPP statute. *Id.* at 11-12. On March 22, Plaintiffs filed a First Amended Complaint ("FAC"). ECF No. 32.

The FAC addresses the concerns the Court raised in its March 1 Order. Under controlling Ninth Circuit authority, Plaintiffs have properly alleged standing. Ancestry has not met its affirmative burden of proving entitlement to CDA immunity. And none of Ancestry's additional arguments for dismissal is successful. For these reasons and as explained in detail below, Ancestry's motion to dismiss the FAC should be denied.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

On a 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F. 3d 1025, 1031 (9th Cir. 2008). A claim survives if it is "plausible on its face." *Nayab v. Capital One* Bank, 942 F.3d 480, 487 (9th Cir. 2019).

## III. ARGUMENT

**A.  The FAC address the Court's concerns regarding Article III standing.**

Plaintiffs' initial Complaint articulated three forms of injury giving rise to standing: (1) denial of substantive privacy rights protected by statute; (2) economic injury in the form of Ancestry's unjust profits; and (3) lost potential earnings from the commercial use of Plaintiffs' likenesses. ECF No. 1 at ¶¶ 13, 90; ECF No. 19 at 3-4. The FAC addresses all of the concerns the Court expressed in its March 1 Order regarding these three forms of injury.

1     **1.  The FAC properly alleges the violation of a substantive right to privacy guaranteed by California's right to publicity statute.**

Unlike the initial Complaint, the FAC alleges that Ancestry's commercial use of Plaintiffs' likenesses in free-trial records, limited previews, on-site messages, and marketing emails "violat[ed Plaintiffs'] rights to privacy protected by statute." ECF No. 32 at ¶¶ 38, 58, 76. The FAC further alleges that this violation "is itself injury," and that as a result Plaintiffs are entitled to "nominal damages" and "injunctive relief," in addition to the remedies specifically listed in Cal. Civ. Code § 3344. *Id.*

Under controlling Ninth Circuit authority, the violation of a statute that "codif[ies] a substantive right of privacy . . . gives rise to a concrete injury" supporting standing. *Davis v. Facebook, Inc*, 956 F. 3d 589, 598 (9th Cir. 2020) (citing *Campbell v. Facebook, Inc*., 951 F. 3d 1106, 1117-19 (9th Cir. 2020)). Under the approach laid out in *Campbell* and *Davis*, a statute "codifies a substantive right" when the "harms protected . . . bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit." *Campbell*, 951 F.3d at 1117 (*quoting Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). In *Campbell* the Ninth Circuit reasoned this was true for the California Invasion of Privacy Act ("CIPA") and the federal Wiretap Act because both laws are "statutory modernizations of the privacy protections available at common law." *Id.* (citing Cal. Pen. Code §§ 630 *et seq.*; 18 U.S.C. § 2510 *et seq.*). *Davis* extended this reasoning to the Stored Communications Act ("SCA"). 956 F.3d at 598 (citing 18 U.S.C. § 2701). Following similar reasoning, the Ninth Circuit has found Article III standing based solely on a violation of statutory privacy rights in cases brought under the Video Privacy Protection Act and the Telephone Consumer Protection Act. *Eichenberger v. ESPN*, 876 F. 3d 979 (9th Cir. 2017) ("The VPPA identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information") (emphasis in original); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("The TCPA establishes the substantive right to be free from certain types of phone calls").

The Ninth Circuit rule from *Campbell* and *Davis* compels the conclusion that Cal. Civ. Code § 3344 codifies a "substantive right to privacy," and thus a violation of the statute is a

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

3

"concrete injury" supporting standing. Like the CIPA, the SCA, and the Wiretap Act, Section 3344 is a "statutory modernization" of a "privacy protection" that has "traditionally been regarded as providing a basis for a lawsuit." *See Campbell*, at 1117. As the Ninth Circuit explained in *Newcombe v. Adolf Coors Company*, "California has long recognized a common law right of privacy for the protection of a person's name and likeness against appropriation . . .  This California common law cause of action has been complemented by the enactment of Cal. Civ. Code § 3344." 157 F. 3d 686, 691-92 (9th Cir. 1998). The right to publicity is one of four privacy torts traditionally recognized at common law. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) ("appropriation of the other's name or likeness" is one of "four privacy torts recognized at common law") (quoting Restatement (Second) of Torts § 652A(2) (1977)). And like the CIPA, the SCA, and the Wiretap Act, the legislative history demonstrates "the California legislature intended to protect . . . historical privacy rights" when it passed Section 3344. *See* Stephen M. Lobbin, *"The Right(s) of Publicity in California: Is Three Really Greater Than One?"*, 2 UCLA Ent. L. Rev. 157, 162 (1994) (analyzing the legislative history and concluding that "[t]he intent of the California legislature . . .  was primarily to expand the scope of privacy rights to include a remedy for commercial appropriation, Prosser's fourth 'tort of privacy'"); *cf. Davis*, 956 F.3d at 58-99.

In an argument raised for the first time in a reply brief, Ancestry asserted that Cal. Civ. Code § 3344 is different from the statutes the Ninth Circuit evaluated in *Davis* and *Campbell* because § 3344 imposes liability only where "persons [are] injured as a result." ECF No. 20 at 2. This is factually incorrect. The language of California's CIPA is <u>identical</u> to that of Cal. Civ. Code § 3344. Both create a cause of action for "person[s]. . . injured" by a statutory violation. *Compare* Cal. Pen. Code § 637.2 (CIPA claim may be brought by "[<u>a]ny person who has been injured</u> by a violation") *with* Cal. Civ. Code § 3344 (the "person who violated the section shall be liable to <u>the injured party</u>" for statutory damages, profits earned, and "for any damages sustained by the <u>person or persons injured</u> as a result") (emphasis added). Similarly, the SCA creates a cause of action for "<u>person[s] aggrieved</u> by any violation." 18 U.S.C. § 2707 (emphasis added). If it were true that a reference to "person[s] . . . injured" created "a specific

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

4

injury requirement" over and above the general requirements for Article III standing, *see* ECF No. 20 at 2, this "requirement" would apply equally to claims brought under CIPA and the SCA.

The more natural reading – and the only reading consistent with the Ninth Circuit's rulings in *Davis* and *Campbell* – is that the reference to "person[s] . . . injured" has no bearing on what counts as injury under the statute. It simply refers to the person injured by the defendant's violation, whatever form that injury may take – including injury caused by the violation of a substantive right to privacy protected by the statute. Because the FAC alleges Plaintiffs suffered injury to a substantive right of privacy, they have alleged concrete injury and have standing to pursue their claims in Federal court. *See* ECF No. 32 at ¶¶ 38, 58, 76.

At least two judges in this District have found that a commercial use of a likeness in violation of Section 3344 is injury to a substantive privacy right giving to Article III standing, independent of whether the plaintiff alleges additional harms. *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, 797 (N.D. Cal. 2011) ("[the plaintiffs] have alleged a violation of their individual statutory rights under California Civil Code § 3344, and therefore, an invasion of a legally protected interest for Article III purposes"); *C.M.D. v. Facebook, Inc*., No. C 12-1216 RS, 2014 WL 1266291 at *2 (N.D. Cal. Mar. 26, 2014) (standing existed for § 3344 claims because "a plaintiff may be able to establish constitutional injury in fact by pleading violation of a right conferred by statute") (quoting *Fraley*, at 799). Contrary to Ancestry's assertion in its Reply, there is nothing "out of context" about the holding in *Fraley*. *Cf.* ECF No. 2-3. In support of its unambiguous holding, *Fraley* cites numerous cases finding standing based solely on the violation of a statutory right. 830 F. Supp. 2d at 797 (citing, e.g. *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (standing based on violation of Truth in Lending Act)).

In its Reply, Ancestry argued that *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) ("*Cohen I*") supports dismissal. ECF No. 20 at 1-2. *Cohen* was decided nearly a decade before *Davis* and *Campbell*. But even if *Cohen* had not been superseded by controlling Ninth Circuit authority, in a subsequent opinion Judge Koh found that the reasoning in *Cohen I* and *Cohen v. Facebook, Inc.*, 2011 WL 5117164 (N.D. Cal. Oct. 27,

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

5

2011) ("*Cohen II*") is limited to cases where the plaintiffs have already willingly shared their names and likenesses with a particular audience. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1209-10 (N.D. Cal. 2014). In *Cohen*, Facebook users willingly shared their likenesses with Facebook when they created Facebook profiles. *Id.* But as Judge Koh explained, the holding of *Cohen* does not apply when a website uses plaintiffs' names and likenesses "in a context where they did not already appear." *Id.*, at 1209 (quoting *Cohen II*, 2011 WL 5117164, at *3). In *C.M.D. v. Facebook, Inc*, Judge Seeborg, who authored *Cohen*, distinguished *Cohen* on grounds that the plaintiffs' likenesses were used to promote "third-party products, companies, and brands" with whom they had not shared their likenesses. 2014 WL 1266291 at *2 (quoting *Fraley*, 830 F. Supp. 2d at 799). Because Plaintiffs did not willingly share their likenesses with Ancestry, Plaintiffs' claims are like those in *Fraley*, *Perkins*, and *C.M.D.*, and unlike those in *Cohen*.

The FAC alleges that Plaintiffs are entitled to nominal damages and injunctive relief arising from the violation of their substantive privacy rights. ECF No. 32 at ¶¶ 38, 58, 76, 111. The Supreme Court recently found standing based on a purely legal injury, even though redressability rested solely on a claim to nominal damages. The Court reasoned: "A contrary rule would have meant . . . that there was no remedy at all for these rights . . . not readily reducible to monetary valuation." *Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106, at *5 (U.S. Mar. 8, 2021).

### 2. The FAC makes clear that Plaintiffs' claims arise from the use of their likenesses to promote Ancestry subscriptions, not from mere disclosure.

In its March 1 Order, this Court found the initial Complaint did not establish injury in part because "the information in the Yearbook database is not private." ECF No. 30 at 7. The FAC makes clear that the harms Plaintiffs suffered arose from Ancestry's use of Plaintiffs' likenesses to promote website subscriptions. *See, e.g.* ECF No. 32 at ¶ 37 ("Mr. Abraham . . . has the right to exclude anyone from making commercial use of his likeness . . . Ancestry causes Mr. Abraham continuing injury every day it denies him the profits it has unjustly earned from his likeness"); ¶ 39 ("Ancestry has also caused Mr. Abraham mental anguish through the

knowledge his likeness is being exploited for profit"). That Ancestry may have obtained Plaintiffs' likenesses from public or semi-public sources (Ancestry still has not disclosed how it collected Plaintiffs' yearbooks) is irrelevant. Plaintiffs' claims stem from commercial <u>use</u>, not disclosure.

Plaintiffs have the right to choose which commercial uses of their likeness they consent to, and which they do not. Cal. Civ. Code § 3344. Plaintiffs have no objection to the appearance of their names and photographs in school yearbooks, a use to which they arguably consented as minors. But Ancestry's use of names and photographs without consent to promote its own products – products of which Plaintiff and the class had no knowledge – is illegal under California law.

Ancestry's mistaken reading of Section 3344 – under which the source information must be private prior to the defendant's misappropriation – would turn the statute on its head. The right to publicity is intended to give Californians comfort they may safely place their likeness in the public eye, without fear someone will capture their likeness and exploit it for commercial gain. Accordingly, most right to publicity cases involve photographs or other material the plaintiff intentionally published or otherwise distributed, which the defendant then copied from a public or semi-public source. *See, e.g. Fraley*, 830 F. Supp. 785 at 799 (Facebook misappropriated names and photographs that users had intentionally uploaded on the site); *C.M.D. v. Facebook, Inc.,* No. C 12-1216 RS, 2014 WL 1266291 at *2 (N.D. Cal. Mar. 26, 2014) (same); *Anthony v. Yahoo! Inc*., 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) (Yahoo! misappropriated profiles users had intentionally uploaded to a dating service); *Downing v. Abercrombie Fitch*, 265 F.3d 994 (9th Cir. 2001) (defendant copied plaintiffs' photograph from a published book).

In *Lukis*, the court rejected the argument Ancestry makes here. 454 F. Supp. 3d 746 at 761. Whitepages.com argued there was no liability for its use of previews to attract subscriptions because "its free previews merely amalgamated otherwise public information." *Id*. The court explained that a right to publicity claim exists regardless of "whether the information is derived from public or private sources." *Id. See also Gabiola v. Sarid*, No. 16-

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

7

cv-02076, 2017 WL 4264000, at *2 (N.D. Ill. Sep. 26, 2017) (plaintiff properly alleged right to publicity claim where the defendant "use[d] software to copy the information publicly available on the websites [of] departments of corrections").

### 3. The FAC alleges that Plaintiffs' likenesses have provable commercial value evidenced by Ancestry's public statements and use in marketing emails.

In its March 1 Order, this Court distinguished *Fraley* from the case at hand because in *Fraley* the plaintiffs' likenesses had "provable value" evidenced by Facebook's public statements about the important role user likenesses played in advertisements. ECF No 30 at 7-8. The FAC demonstrates that Plaintiffs' likenesses have provable commercial value to Ancestry.

<u>First</u>, the FAC describes in detail the marketing emails called "hints" that Ancestry sends to potential subscribers, including screenshots of emails Ancestry generated using the names and likenesses of the named Plaintiffs in this case. ECF No. 32 at ¶¶ 36, 56. The emails do not depend on a user visiting Ancestry.com and performing a search for a name or location. Ancestry affirmatively sends "hint" emails to the email accounts of potential subscribers in the hopes the recipient will click the hyperlinked name and purchase a subscription to Ancestry.com. *Id.* (clicking hyperlinked names leads to a webpage soliciting payment). The design of the "hint" emails proves that Ancestry sees commercial value in Plaintiffs' likenesses, else it would not have made Plaintiffs' likenesses so central to their email marketing.

<u>Second</u>, in statements to investors Ancestry has described the crucial role Plaintiffs' names and likenesses play in its advertising efforts. In particular, Ancestry underlined the value the "hint" emails bearing the Plaintiffs' likenesses play in "converting registered users," and warned investors that an inability to "acquire" and "digitize" historical content containing the Plaintiffs' likenesses "could have a material adverse impact" on subscriber counts:

> Our <u>conversion marketing efforts</u> are focused on <u>converting registered users to paying subscribers</u> through <u>on-site messaging</u>, <u>email</u>, <u>targeted offers</u> and compelling product features like <u>record hinting</u>. ECF No. 32 at ¶ 75 (emphasis added).

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

8

> In order to retain and expand our subscriber base. . . we must continue to expend significant resources to acquire significant amounts of additional historical content, digitize it and make it available to our subscribers online. . . <u>Our inability to offer certain vital records or other valuable content as part of our family history research databases. . . could have a material adverse impact on our number of subscribers.</u>

*Id.* at ¶ 73 (emphasis added).

*Fraley* found that Sheryl Sandberg's reference to personalized endorsement as the "Holy Grail of advertising" established the commercial value of user's likenesses to Facebook. 830 F.Supp. 2d at 792. So too here. Ancestry's public statements to investors demonstrate a "direct, linear relationship" between the use of Plaintiffs' likenesses in "on-site messaging, email, targeted offers and . . . record hinting" and the profits Ancestry enjoys from "converting registered users to paying subscribers." *See id.* Because Plaintiffs have alleged a direct link between Ancestry's use of Plaintiffs' likenesses and the revenue it earns by converting users to paying subscribers, Plaintiffs have alleged an interest in Ancestry's unjustly earned profit that supports Article III standing. *See* Cal. Civ. Code § 3344 (plaintiffs may recover "any profits from the unauthorized use").

Under controlling Ninth Circuit authority, because "California law requires disgorgement of unjustly earned profits," when a defendant is unjustly enriched through its violation of a California statute, the plaintiff whose statutory rights were violated has standing to sue in Federal court. *Davis*, 956 F.3d 589, 599-601 (9th Cir. 2020). In *Davis*, the court applied this rule to a suit by Facebook users alleging unauthorized collection of their browsing histories. *Id.* at 600. Standing existed because "Facebook profited from this valuable data." *Id.* Plaintiffs "retain[ed] a stake in the profits garnered from their personal browsing histories" because it would be "unjust for [Facebook] to retain it." *Id.* This "stake in [Facebook's] unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable" by Facebook's use. *Id.* Here, as in *Davis*, Ancestry's misuse of Plaintiffs' likenesses to sell subscriptions creates a "legal interest in [its] unjustly earned profits." *Id.*

Courts evaluating Section 3344 claims have repeatedly recognized that a defendant's earning revenue from unauthorized commercial use gives rise to standing. *See Fraley v.*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

9

1   *Facebook, Inc.*, 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) (finding standing based on

2   allegations "that Facebook has been unlawfully profiting from the nonconsensual exploitation

3   of Plaintiffs' statutory right of publicity"); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1190,

4   1210 (N.D. Cal. 2014) (finding standing when the defendant was "alleged to have

5   misappropriated Plaintiffs' names to promote LinkedIn and to grow LinkedIn's membership,

6   which is indisputably economically valuable to LinkedIn").

7       Relying again on district level authority predating the Ninth Circuit's ruling in *Davis,*

8   Ancestry cites *In re Google, Inc. Privacy Policy Litigation*, No. 12-018382, 2013 WL 6248499

9   (N.D. Cal. Dec. 3, 2013) for the proposition that a defendant's unjust enrichment does not

10   confer standing in the Ninth Circuit. ECF No. 20 at 3-4. But in *In re Facebook, Inc., Consumer*

11   *Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019), the Court discussed the

12   *In re Google* decision at length, finding that the judge in that case "seems to assume that

13   economic harm is required rather than examining whether it's required," and concluding that

14   "[w]hether or not [the judge] was right about precedent at the time," more recent case law

15   "provide[s] ample support for the conclusion that this type of privacy invasion alone creates

16   standing." *Id.* at 786.

17       Section 3344 does not require that Plaintiffs' name or likeness be used to create the

18   illusion that Plaintiffs endorse or sponsor Ancestry's products. The statute prohibits "knowing

19   use of another's name…or likeness, in any manner, on or in products…or for purposes of

20   advertising or selling, or soliciting purchases of, products, merchandise, goods or services."

21   Cal. Civ. Code § 3344 (emphasis added). The right of publicity "is infringed by the

22   unpermitted use of a person's identify containing no inference that plaintiff endorses or

23   approves the product." *Cairns v. Franklin Mint Co*., 107 F. Supp. 2d 1212, 1214 (C.D. Cal.

24   2000). This is precisely what distinguishes the right of publicity from a claim for false

25   endorsement. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir.

26   2015) ("we have previously distinguished between publicity right claims and § 1125(a) claims

27   on the basis of this additional element") (citing additional Ninth Circuit authority).

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

Courts have frequently upheld right to publicity claims against websites that use the promise of access to the plaintiffs' likenesses to solicit website subscriptions. *See, e.g. KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 365-66 (2000); *Perfect 10 Inc. v. Talisman Communications, Inc.*, 2000 WL 364813, at *2 (C.D. Cal. March 27, 2000); *Perfect 10, Inc., v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146 (C.D. Cal. 2002); *Michaels v. Internet Entertainment Group*, 5 F. Supp.2d 823 (C.D. Cal. 1998). In *Lukis v. Whitepages*, the court denied a motion to dismiss in a right to publicity case based on precisely the type of advertising scheme alleged here. The website presented "free previews" of reports containing plaintiffs' likenesses, accompanied by messages advertising "a monthly subscription service giving the purchaser access to background reports on anybody in [the defendant's] database." 454 F. Supp. 3d. at 760-61.

Nor does Section 3444 require that plaintiffs plead they had a commercial interest in their own likenesses prior to bringing suit. Courts have long recognized that plaintiffs may bring § 3344 claims without demonstrating their likenesses had commercial value prior to the defendant's exploitation. *Fraley* is directly on point:

> The Court finds nothing in the text of the statute or in case law that supports Defendant's interpretation of § 3344 as requiring a plaintiff pleading economic injury to provide proof of *preexisting* commercial value and efforts to capitalize on such value in order to survive a motion to dismiss. . . The statutory text makes no mention of preexisting value . . . Nor does the Court find any reason to impose a higher pleading standard on non-celebrities than on celebrities.

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806-07 (N.D. Cal. 2011) (emphasis in original) (surveying supporting caselaw including *Del Amo v. Baccash*, 2008 WL 4414514 (C.D. Cal. Sept. 16, 2008); *Solano v. Playgirl, Inc.*, 292 F.3d 1078 (2002); *KNB Enterprises*; and *Downing*)). The Ninth Circuit has recognized that "the appropriation of the identity of a relatively unknown person . . . may itself create economic value in what was previously valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co*., 498 F.2d 821 (9th Cir. 1974); *see also Perkins v. Linkedin Corp*., 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ("LinkedIn is alleged to have misappropriated Plaintiffs' names to promote LinkedIn . . . which is indisputably

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

11

economically valuable to LinkedIn"). If Plaintiffs' likenesses did not have economic value, Ancestry would not have bothered to steal them.

**B.  The FAC alleges additional forms of injury, all of which create standing.**

In addition to the three forms of injury present in the initial Complaint (discussed in Part III(A) above), the FAC alleges three forms of injury for the first time: (1) mental anguish; (2) lost time; and (3) injury to the intellectual property right in their likenesses.

**1.  Plaintiffs have alleged mental anguish.**

Plaintiffs have suffered emotional harm in the form of anger, embarrassment, and discomfort caused by the knowledge that Ancestry exploits their names and faces for profit. ECF No. 32 at ¶¶ 24, 39, 45, 59. As alleged in the FAC:

> Upon learning that his name, photograph and likeness were being used by Ancestry without his consent, Mr. Abraham experienced feelings of anger, embarrassment and discomfort.  He was and remains unsettled and disturbed by the knowledge that a corporation is profiting from his name, photograph and likeness without his consent.  He is also disturbed by the possibility that Ancestry's use of his name, photograph, and likeness may harm or dilute his personal and professional reputation.  ECF No. 32 at ¶ 24.

> Upon hearing that Ancestry was profiting off her likeness and image Ms. Callahan felt initially confused and then angered.  Ms. Callahan felt small in the face of the strength and anonymity of a large corporation – and powerless to exercise control over aspects of her identity in that context.  ECF No. 32 at ¶¶ 44-45.

Ancestry dismisses Plaintiffs' claims of emotional distress as "not plausible" because the yearbooks Ancestry stole were "publicly available through other sources."  ECF 33 at 11. Again, Ancestry misses the point of Plaintiffs' claims. It is Ancestry's <u>use of their likenesses to promote a product they knew nothing about</u> that caused Plaintiffs' mental anguish. As made plain in the allegations in the FAC, Plaintiffs' mental anguish has nothing to do with the disclosure of information, and everything to do with the <u>use</u> of that information to sell website subscriptions.

*Miller v. Collectors Univ.* recognized that knowledge of commercial loss caused by a defendant's misappropriation of a likeness may be a source of mental anguish giving rise to statutory damages. 159 Cal. App. 4th 988, 1006 n. 12 (Cal. Ct. App. 2008) ("A plaintiff's

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

12

knowledge of possible commercial loss and/or defamation may be a component of mental harm, disturbing one's peace of mind").

Without exception, Ancestry's cited authority concerns cases where the plaintiffs asserted embarrassment or humiliation arising from the disclosure of personal information. *See Jackson v. Loews Hotels, Inc.*, 2019 WL 2619656, at *3-4 (C.D. Cal. Jan. 4, 2019) (data breach at hotel chain exposed guests' personal information); *Low v. LinkedIn Corp.*, 2011 WL 5509848 at *3 (N.D. Cal. Nov. 11, 2011) (plaintiff's personal LinkedIn user identification number transmitted to third parties); *Fus v. CafePress, Inc.*, 2020 WL 7027653, at *3 (N.D. Ill. Nov. 30, 2020) (data breach at online gift shop exposed customers' personal information). These cases have no relevance, because Plaintiffs are not alleging they were disturbed, upset, or humiliated by the disclosure of their information. They are disturbed by the <u>use</u> of their likenesses <u>to promote a product.</u>

### 2.  Plaintiffs have alleged they lost time.

Upon discovering Ancestry was using his name and likeness without his consent, Plaintiff Abraham "spent about five hours searching the free version of Ancestry.com to confirm his records were being used, performing web searches to ascertain how easily the Ancestry records could be found using a web browser, and communicating with his social connections to warn them their own records may also have been misappropriated." ECF No. 7 at ¶ 25. Time lost responding to the invasion of a protected privacy right is a cognizable injury. In *Adkins v. Facebook, Inc.*, plaintiffs had standing based on time they spent responding to a data breach, even though the plaintiffs did not allege any "concrete examples of identity theft" or "specific instances of hacked accounts." 424 F. Supp. 3d 686, 691 (N.D. Cal. 2019) The court found that "[t]he information taken" in the data breach "assures that plaintiff has . . . a stake" in the outcome of the controversy. *Id.* at 692. So too here. The time Mr. Abraham spent responding to Ancestry's theft, and the information Ancestry continues to exploit without his consent, create a stake in the outcome for Mr. Abraham.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

### 3.  Plaintiffs have alleged theft of their intellectual property.

The FAC alleges that Plaintiffs have "a property interest in [their] likeness[es]," which Ancestry violated and infringed by "making commercial use of [their] likeness[es]" without permission. ECF No. 32 at ¶¶ 37, 57, 76. "The right of publicity is an intellectual property right." *Aroa Marketing, Inc. v. Hartford Insurance*, 198 Cal. App. 4th 781, 788 (Cal. Ct. App. 2011). *See also Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (Cal. 2001) ("The right of publicity, like copyright, protects a form of intellectual property that society deems to have some social utility").

The infringement of an intellectual property right is itself injury-in-fact, independent of whether the plaintiff suffered direct financial harm, because such infringement "depriv[es the owner] of the exclusive use of property to which [it] . . . has a cognizable claim." *Monster Energy Co. v. Integrated Supply Network, LLC*, No. 19-55760, 82 Fed. Appx. 730, 733 (9th Cir. July 22, 2020) (quotation omitted).

### C.  The allegations in the FAC establish that Ancestry is not protected by the CDA.

### 1.  Ancestry has not met its burden of showing that yearbooks were "provided by" anyone.

Immunity under the Communications Decency Act is an affirmative defense. *Barnes v. Yahoo!, Inc.*, 565 F.3d 560, 563 (9th Cir. 2009). Accordingly, it is Ancestry's burden to prove the elements of 47 U.S.C. § 230. Ancestry has not met its burden, because it has not identified any "information content provider" who "provided" yearbooks to Ancestry for publication on the Internet. *See* 47 U.S.C. § 230(c)(1).

Ancestry has repeatedly declined to describe how it acquired the yearbooks from which it extracted the Plaintiffs' names and likenesses. *See* ECF No. 20 at 3-4 (referring to Plaintiffs' allegations but declining to explain how Ancestry collected Plaintiffs' yearbooks); No. 30 at 9-10 (same); No. 13 at 14 (same). Because Ancestry has not provided this Court with facts sufficient to conclude the yearbooks were "provided by" someone other than Ancestry –

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

14

indeed, Ancestry has provided no facts at all – Ancestry's claim to CDA immunity must be denied.

Ancestry makes repeated reference to the idea that Ancestry built its yearbook database through donations from yearbook owners. But Plaintiffs removed these allegations in the FAC after learning more about how Ancestry runs its business. *See* ECF No. 32-1 (blackline vs. initial Complaint) at ¶¶ 64, 67 (removing allegations that "possibly all, of the Yearbook Database was built via. . . donations"). As stated in the FAC, Plaintiffs "are ignorant of the methods by which Ancestry acquires yearbooks and digitally extracts their contents." ECF No. 32 at ¶ 64. And nowhere does Ancestry claim that in did in fact acquire Plaintiffs' yearbooks, or the yearbooks of absent class members, through donations.

Ancestry may have acquired Plaintiffs' yearbooks by digitally "scraping" the yearbooks from online sources, such as public library websites. Or it may have acquired yearbooks by sending staff or representatives to libraries and historical societies to copy physical yearbooks on location. (At least one online article describes Ancestry building its databases through such methods.)[1] We simply do not know. And fatally for its claim to CDA immunity, Ancestry is not telling.

The facts we do know illustrate that Ancestry is anything but a "passive host of a forum" for user-provided content. *Cf. Kimzey* v. *Yelp! Inc*., 836 F.3d 1263, 1265 (9th Cir. 2016). Ancestry actively selected which yearbooks to copy, digitally copied those yearbooks from (unknown) sources without permission from anyone, extracted names and photographs, used those names and photographs to generate searchable records, and used those records to promote sales of website subscriptions and yearbook reprints. Ancestry did all this without a single ounce of input from yearbook authors, the photographic subjects, or anyone else. Because Ancestry made every decision leading to the illegal commercial use of Plaintiffs'

---

[1] See https://www.buzzfeednews.com/article/katienotopoulos/ancestry-com-reclaim-the-records-new-york-lawsuit (explaining that "a representative from Ancestry will reach out to a local government archive or historical society and offer to take on the costs, labor and machinery needed to scan and digitized their records" in exchange for "the [exclusive] right to put the images on their website").

likenesses, it is Ancestry alone that bears responsibility. *See, e.g. Fair v. Roommates*, 521 F.3d 1157, 1169 (9th Cir. 2008) ("a website operator who . . . contributes to the alleged illegality. . . is directly involved in the alleged illegality and thus not immune"); *Diamond Ranch Acad., Inc. v. Filer*, No. 2:14-CV-751-TC, 2016 WL 633351, at *21 (D. Utah Feb. 17, 2016) (no CDA immunity where defendant "did more than simply post . . . information the third parties provided"); *cf. Klayman v. Mark Zuckerberg & Facebook, Inc*., 753 F.3d 1354, 1358 (D.C. Cir. 2014) (immunity exists for websites that provide a "means by which third parties can post <u>information of their own independent choosing</u>") (emphasis added).

The court in *Lukis v. Whitepages* denied CDA immunity in a statutory right to publicity case against the websites InstantCheckmate.com and Whitepages.com. 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020). Like Ancestry, both Whitepages and InstantCheckmate profit by selling access to personal information they gathered without permission from authors or anyone else. *Id*. at 752-56. The Court reasoned that, because the websites had "actively compiled and collated . . . information regarding [the plaintiff]", they could not claim to be publishing information "provided by another information content provider." *Id*. at 763.

### 2. Ancestry has no indication that yearbook authors intended the yearbooks for publication on the Internet.

The FAC alleges that Ancestry receives no indication from yearbook authors that they intended their content to be published online. ECF No. 32 at ¶ 65. Under controlling Ninth Circuit authority, a website enjoys immunity only for content the creator intended to be published on the Internet. *Batzel v. Smith*, 333 F.3d 1018, 1034 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc*., 878 F.3d 759, 766–67 (9th Cir. 2017) (CDA immunity exists only "when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person . . . would conclude that the information <u>was provided for publication on the Internet</u>") (emphasis added); *Fair v. Roommates*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) ("[I]f the editor publishes material that he does not believe was

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

16

tendered to him for posting online, then he is the one making the affirmative decision to publish, and so he . . . [is] not entitled to CDA immunity.") (emphasis added).

In *Batzel*, the plaintiff sent an email to the defendant, which the defendant then published on its website without permission. Applying the plain language of the CDA, which applies only to information "provided by another information content provider," the *Batzel* court concluded the defendant website could not claim CDA immunity:

> '[P]rovided' suggests, at least, some active role by the 'provider' in supplying the material to a 'provider or user of an interactive computer service.' One would not say, for example, that the author of a magazine article 'provided' it to an interactive computer service provider or user by allowing the article to be published in hard copy off-line. Although such an article is available to anyone with access to a library or a newsstand, it is not 'provided' for use on the Internet.

*Batzel*, 333 F.3d at 1032-33. The application of this rule to the present case could hardly be clearer. The authors who created and edited the yearbooks did so in the nineties and early 2000s. ECF No. 32 at ¶¶ 30, 50. The Internet was in its infancy and social media did not exist. Not only did the authors not "provide" their "content" to Ancestry, they gave no indication they intended it to be published on the Internet by anyone. Under *Batzel*, allowing a yearbook "to be published in hard copy off-line" cannot and does not constitute "providing" the yearbook to a website for online distribution.

Similarly, in Federal *Trade Commission v. Accusearch, Inc*., No. 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sep. 28, 2007), *aff'd*, 570 F.3d 1187 (10th Cir. 2009), CDA immunity did not apply to a website selling phone records online. Although the phone records "were created (at least originally) by various telephone companies for lawful purposes," because the companies had not willingly provided the phone records for publication online, the phone records were not "provided by another information content provider." *Id*. at *6.

Ancestry makes several failing attempts to extricate itself from the clear Ninth Circuit rule. First, Ancestry contends that *Batzel* cannot be good law, because if it were, "Twitter (for example) could be held liable for defamation if a user copies and pastes a defamatory comment from a third party." ECF No. 33 at 9. This misreads the law. Under *Batzel*, a website is obligated to make sure "a reasonable person . . . would conclude that the information was sent

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

17

for internet publication" only when <u>it is the website itself that is making the choice to publish</u>. 333 F.3d 1018 at 1035. In Ancestry's "Twitter" hypothetical, Twitter is publishing content the author clearly intended to be posted on Twitter. Here, Ancestry stole the contents of books created decades ago by minors, then used those contents to sell subscriptions to its website, without permission from authors or anyone else. The choice to "publish" online was Ancestry's and Ancestry's alone.

<u>Second</u>, Ancestry claims that a Central District case re-interpreting *Batzel* places Ancestry's actions back within the scope of the CDA. *Perfect 10 v. CCBill, LLC* is not controlling authority, and Ancestry's reading of *Perfect 10 v. CCBill, LLC* is plainly contradicted by the Ninth Circuit's opinion in *Batzel*. *See* 340 F. Supp. 2d 1077, 1110-11 (C.D. Cal. 2004). Ancestry contends that *Batzel* applies only to "private communications" that were never intended to be published in any forum. ECF No. 33 at 10. But the Ninth Circuit in *Batzel* clearly intended its rule to apply to content that was not "private" and that had been published in print form. Indeed, the primary example the *Batzel* court used to illustrate its rule was a "magazine article . . . available to anyone with access to a library or a newsstand." 333 F.3d at 1032-33. The court reasoned that a website that copied information from a printed magazine for distribution online would not qualify for protection under the CDA. *Id.* at 1033.

But even if *Perfect 10 v. CCBill, LLC* were controlling authority – which it is not – Ancestry misreads the case. The holding in *Perfect 10 v. CCBill, LLC* did not depend on whether the photographs at issue were "private." The holding was based on the court's finding, following the clear rule in *Batzel*, that the plaintiff website had clearly "provided [the photographs] for publication on the Internet" because it had "published [them] on [its] own website." 340 F. Supp. 2d at 1110-11.

<u>Third</u>, Ancestry claims Plaintiffs' allegations regarding "yearbook . . . donations" mean CDA immunity applies, because the donors would intend that the yearbook be published online. ECF No. 33, at 10. Notably, Ancestry does <u>not</u> claim that Plaintiffs' yearbooks, or the yearbooks of anyone else in the class, were in fact donated to Ancestry. Instead, Ancestry relies solely on a single line from the FAC suggesting it is "possible some of the Yearbook

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

18

Database was built via . . . donations." *Id.* But as explained in Part III(C)(i) above, Plaintiffs clearly allege they do not know how Ancestry built its database. Ancestry is the party asserting the affirmative defense of CDA immunity. Thus, it is Ancestry's burden to demonstrate the yearbooks were "provided by" an "information content provider" under circumstances where Ancestry could reasonably conclude the author intended publication online. Ancestry has not met this burden.

### 3. Plaintiffs' claims are directed at previews, on-site messages, and marketing emails Ancestry created, not the underlying yearbooks.

Even if yearbooks had been "provided" to Ancestry – which Ancestry has failed to demonstrate – CDA immunity still would not apply, because Plaintiff's claims are not directed at yearbooks. The FAC makes clear that Plaintiffs' claims are directed at the previews, on-site messages, and marketing emails Ancestry created to promote website subscriptions, not the underlying yearbooks. ECF No. 32 at ¶¶ 29-36, 49-56. These are entirely of Ancestry's design and creation. For example, Ancestry designed a pop-up message saying, "There's more to see" and displaying a "Sign Up Now" button directly beneath the Plaintiffs' photograph. *Id.* at ¶ 42. And as the FAC alleges for the first time, Ancestry designed marketing emails called "hints" that display the Plaintiffs' names and birth years. *Id.* at ¶¶ 35-36, 55-56. Ancestry sends "hints" to potential subscribers. *Id.* Clicking on the Plaintiffs' names, or on the button marked "See your hint," delivers the user to a page soliciting a six-month subscription for $99.00. *Id.* Ancestry cannot reasonably claim to be merely exercising "a publisher's traditional editorial functions" with respect to these marketing emails, every word of which Ancestry wrote (except for the Plaintiffs' names), and the sole purpose of which is to entice the user to click the hyperlinked name and buy a subscription. *Cf. Fraley*, 830 F. Supp. 2d at 802.

Where, as here, liability stems from content the website itself created or contributed to, the CDA does not apply. *Fair v. Roommat*es, 521 F.3d 1157, 1162-63 (9th Cir. 2008) ("[A]s to content that [a website] creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider" and there is no CDA protection) (quoting 47 U.S.C. § 230(f)(3)). It does not matter that Ancestry incorporates photographs created by

others in its advertising. A website need not be solely responsible for the content to be a "content provider." It suffices that Ancestry is "responsible . . . in part." *Id.*

In *Anthony v. Yahoo! Inc*., the defendant promoted its dating website by sending "profiles of actual, legitimate former subscribers whose subscriptions had expired . . . to current members of the service." 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006). Although "third parties created these profiles," the CDA did not immunize the website's use of the profiles in fraudulent promotions. "Because [the plaintiff] posits that Yahoo!'s manner of presenting profiles – not the underlying profiles themselves – constitute fraud, the CDA does not apply." *Id*. So too here. That Ancestry did not create the underlying yearbooks does not immunize its choice to incorporate content from yearbooks in illegal advertisements. As in *Anthony*, it is the manner of Ancestry's use, not the underlying yearbooks themselves, that gives rise to Plaintiffs' claims.

**D. Plaintiffs' claims are not preempted by copyright.**

**1. Ancestry does not own or license yearbook copyrights.**

When a defendant does not hold exclusive copyright in a work, there is no preemption. *See KNB Enterprises v. Matthews*, 78 Cal.App.4th 362 (Cal. Ct. App. 2000). In *KNB Enterprises*, the defendant copied photographs from a published website without permission from the copyright holders. In rejecting defendant's copyright preemption argument, the court reasoned "[w]e do not believe a section 3344 claim is preempted under *Fleet* where, as here, the defendant has no legal right to publish the copyrighted work." *Id*. at 374 (*citing Fleet v. CBS, Inc*., 50 Cal. App. 4th 1911 (1996)). Like the defendant website in *KNB Enterprises*, Ancestry did not obtain permission from the copyright holders before it extracted names, photographs, and likenesses from yearbooks. ECF No. 32 at ¶¶ 28, 48, 66. Having played fast and loose with copyright law, it cannot now claim its disregard for copyright insulates it from liability under the right to publicity.

Ancestry leans heavily on *Maloney v. T3Media, Inc*., 853 F.3d 1004, 1011 (9th Cir. 2017), but in *Maloney* it was the entity who created the photographs in question, and thus held exclusive copyright, that chose to distribute the photographs on a website. The plaintiffs'

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

20

misappropriation claims were preempted because they were challenging a "copyright holder's decision to distribute the copyright images themselves." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017). *See also Fleet v. CBS, Inc.*, at 1914 (CBS had "exclusive rights to distribute the motion picture" that was the source of the plaintiff's claims). In *Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010), preemption applied when the Plaintiff owned the copyright and asserted both copyright and right to publicity claims arising from the unauthorized distribution of a video. Unlike *Jordan Video*, in this case neither Plaintiffs nor Ancestry own exclusive copyright in Plaintiffs' yearbooks. Plaintiffs could not obtain redress by asserting a copyright claim.

### 2. Plaintiffs' likenesses cannot be copyrighted.

Copyright preemption requires two conditions. "First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act." *Downing v. Abercrombie Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) (internal citation omitted). Neither condition is met where, as here, the subject matter of Plaintiffs' claims is the likenesses and names pictured in their yearbooks, not the yearbooks themselves. *See id.* at 1003-1004 ("the 'work' that is the subject matter of the right of publicity is the persona. . . Such name or likeness does not become a work of authorship because it is embodied in a copyrightable work such as a photograph.") (*quoting* 1 Nimmer on Copyright § 1.01[B][1][c] at 1-23 (1999)).

Ancestry again relies on *Maloney*. But as Ancestry points out, the Ninth Circuit in *Maloney* adopts the reasoning from the Seventh Circuit's earlier decision in *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005). *See* ECF No. 33 at 11. And *Toney* is unequivocal in holding that copyright preemption does not apply to right of publicity claims. Applying the two-prong test for copyright preemption from *Downing*, the Seventh Circuit in *Toney* concluded that neither prong is met for right to publicity claims, because the right to publicity protects a person's uncopyrightable "identity" or "persona":

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

21

> The subject matter of such a claim is not a particular picture or photograph of plaintiff. Rather, what is protected by the right of publicity is the very identity or persona of the plaintiff as a human being . . . A photograph is merely one copyrightable expression of the underlying work, which is the plaintiff as a human being . . . A persona, defined in this way, can hardly be said to constitute a writing of an author within the meaning of the copyright clause of the Constitution.

*Id*. at 908-09 (internal quotations omitted). From this the *Toney* Court concluded that (1) an "identity is not fixed in a tangible medium of expression" and (2) "the rights protected by the [right to publicity] are not equivalent to any of the exclusive rights within the general scope of copyright." *Id*. at 910.

Nor does *Maloney* support Ancestry's argument. Seeking to reconcile several prior cases including *Downing*, the *Maloney* court reasoned that "preemption turns on how a copyrighted work is used." *Maloney*, at 1013. If the Defendant simply publishes an artistic work in which it holds copyright, preemption applies. But if the Defendant goes "beyond the mere republication of the photograph" by using the photograph as part of an advertising scheme, then the Defendant does injury to the uncopyrightable likeness, and there is no preemption. *Id., quoting Downing*, 265 F. 3d 994, 1003 (9th Cir. 2001). Here, Ancestry has gone far beyond "mere republication" of Plaintiffs' yearbook photographs and information. The FAC details how Ancestry designed and created on-site messages and marketing emails that used Plaintiffs' names and likenesses to advertise subscriptions to Ancestry.com. ECF No. 32 at ¶¶ 29-36, 49-56.

Ancestry again attempts to insert a non-existing pleading requirement into Section 3344 by arguing that copyright law preempts a plaintiff's claims unless the defendant's commercial use implies endorsement. ECF No. 33 at 12. Again, there is no requirement that an advertisement contain an explicit endorsement to support a § 3344 claim. *See* Part III(A)(3) above. Regardless, Plaintiffs have plead facts showing Ancestry's advertising techniques could create confusion as to whether Plaintiffs endorse Ancestry. ECF No. 32 at ¶¶ 29-36, 49-56. An Ancestry user who receives "Sign Up Now" or "Hint" emails bearing Plaintiffs' names or likenesses could reasonably conclude that Plaintiffs endorse Ancestry.com. At the very least,

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

22

they could reasonably (yet incorrectly) conclude that Plaintiffs are Ancestry users who willingly shared their information and photographs.

**E.  Plaintiffs have stated a claim for intrusion upon seclusion.**

A claim for intrusion upon seclusion exists against "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Fausto v. Credigy Services Corp*., 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (*quoting Deteresa v. Am. Broad. Cos., Inc*., 121 F.3d 460, 465 (9th Cir. 1997)). Whether specific conduct is offensive is typically left to a jury. *See In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").

Here, Plaintiffs have alleged a reasonable expectation of privacy in the photographs and biographical information Ancestry is distributing for profit. ECF No 32, at ¶ 100. Decades ago, when they were aged twelve and sixteen, Plaintiffs consented have their photographs and names printed in yearbooks intended for use by their family and classmates. Plaintiffs did not reasonably expect to see their photographs and information distributed to a worldwide audience decades later for a profit-making purpose. California law recognizes that people who willingly share personal information among a limited group of social connections do not lose their ability to assert privacy claims when a company shares that information much more broadly for profit. In *In re Facebook*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), Facebook users retained a reasonable expectation of privacy even after they willingly shared personal information with their social connections on Facebook. The court rejected Facebook's position as misguided because "it treats privacy as an all-or-nothing proposition . . . the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law.'" *Id.* at 782 (*quoting Sanders v. Am. Broad. Co., Inc.*, 20 Cal. 4th 907, 916 (Cal. 1999)).

Plaintiffs have alleged facts sufficient for a reasonable jury to conclude that Ancestry's conduct is highly offensive. Ancestry disclosed Plaintiffs' private information to a worldwide

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB

23

audience comprising millions of subscribers and potential subscribers. The information is highly sensitive, including photographs of Plaintiffs as minors, birth years, estimated ages, and geographical location. Also, Ancestry's use is for a commercial purpose to which Plaintiffs did not consent. *See In re Facebook, Inc.*, at 797 (plaintiffs adequately alleged offensive conduct when Facebook "disclosed to tens of thousands of app developers and business partners sensitive information about them without their consent, including their photos").

**F.  California recognizes a claim for unjust enrichment.**

Although Defendants assert that Plaintiffs' unjust enrichment and 17200 claims are derivative of their section 3344 claim, this is not the case. California law recognizes plaintiffs may assert a claim for unjust enrichment as a separate cause of action. *See, e.g. ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense.") (*citing Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000)); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Plaintiffs have alleged these elements. ECF 32 at ¶¶ 106-110.

To the extent that Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200 is derivative of Plaintiffs' claim under § 3344, the claim must survive for the reasons discussed at length above.

**G.  Plaintiffs plausibly allege mental anguish, and mental anguish is not required to support a claim for statutory damages.**

As is discussed at length in Part III(B)(i), Plaintiffs have plead mental anguish. Furthermore, as argued at length in Plaintiffs' Opposition filed on January 19, alleging mental anguish is not required to state a claim for statutory damages under Section 3344. ECF No. 19 at 16-19.

**H.  Plaintiff has properly plead restitution-based claims.**

A Plaintiff may simultaneously pursue a claim for restitution under Cal. Bus. & Prof. Code § 17200 ("UCL"), and a claim for damages based on a remedy at law, if the amounts sought under each theory are not co-extensive. *See, e.g., IntegrityMessageBoards.com v.*

*Facebook, Inc.*, No. 18-cv-05286-PJH (N.D. Cal. Nov. 6, 2020) (denying motion to dismiss UCL restitution claims when recovery for future harm was available in restitution but not at law). We cannot yet know whether Plaintiffs have an adequate remedy at law. For example, if this court were to find that Plaintiffs' damages under § 3344 were limited to the fair market value of Plaintiffs' likenesses, the UCL restitution claim would be Plaintiffs' only recourse for pursuing Ancestry's unjust profits. For this reason, dismissal is premature. *Cf. Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal because the plaintiff "seeks the *same sum* in equitable restitution . . . she requested in damages.") (emphasis added).

## IV. CONCLUSION

For the above-stated reasons, Ancestry's Motion to Dismiss Amended Class Action Complaint should be denied. In the alternative, Plaintiffs should be granted leave to amend.


Dated: May 3. 2021                     By: /s/ Michael F. Ram
                                            Michael F. Ram

                                       Michael F. Ram (SBN 104805)
                                       mram@forthepeople.com
                                       Marie N. Appel (SBN 187483)
                                       mappel@forthepeople.com
                                       MORGAN & MORGAN
                                       COMPLEX LITIGATION GROUP
                                       711 Van Ness Avenue, Suite 500
                                       San Francisco, CA 94102
                                       Telephone: (415) 358-6913
                                       Telephone: (415) 358-6293

                                       Benjamin R. Osborn (appearing *Pro Hac Vice*)
                                       102 Bergen St.
                                       Brooklyn, NY 11201
                                       Phone: (347) 645-0464
                                       Email: ben@benosbornlaw.com


                                       *Attorney for Plaintiffs*
                                       *and the Proposed Class*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT AND MEMORANDUM IN SUPPORT - 3:20-CV-8437-LB