QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

  Cristina Henriquez (Bar No. 317445)
  (cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5000

Attorneys for ANCESTRY.COM OPERATIONS
INC., ANCESTRY.COM INC., and
ANCESTRY.COM LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN and LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>                Defendants. | CASE NO. 3:20-cv-08437-LB<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12;**<br><br><br><br>Hearing Date: May 27, 2021<br>Hearing Time: 9:30 a.m.<br>Location: San Francisco Courthouse, Courtroom B |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................1

I.      PLAINTIFFS STILL CANNOT ALLEGE A COGNIZABLE INJURY .............................1

II.     PLAINTIFFS OFFER NO REASON TO REVISIT THE COURT'S DETERMINATION THAT ANCESTRY IS IMMUNE PURSUANT TO SECTION 230 OF THE CDA ............................................................................8

III.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT....................12

IV.    NO PLAUSIBLE CLAIM EXISTS FOR INTRUSION UPON SECLUSION ..................14

V.     PLAINTIFFS ARE NOT ENTITLED TO STATUTORY DAMAGES ...........................15

CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adkins v. Facebook, Inc.*,
424 F. Supp. 3d 686 (N.D. Cal. 2019) .................................................................. 7

*Anthony v. Yahoo! Inc.*,
421 F. Supp. 2d 1257 (N.D. Cal. 2006) ........................................................... 4, 12

*Aroa Mktg., Inc. v. Hartford Ins. Co. of Midwest*,
198 Cal. App. 4th 781 (2011) ............................................................................ 8

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) ............................................................. 11

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ....................................................................... 9, 10

*C.M.D. v. Facebook, Inc.*,
2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) ................................................... 3

*Calence, LLC v. Dimension Data Holdings, PLC*,
222 F. App'x 563 (9th Cir. 2007) ..................................................................... 15

*Campbell v. Facebook, Inc.*,
951 F. 3d 1106 (9th Cir. 2020) ......................................................................... 2

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ...................................................................................... 8

*Davis v. Facebook, Inc.*,
956 F. 3d 589 (9th Cir. 2020) ....................................................................... 2, 5

*Diamond Ranch Acad., Inc. v. Filer*,
2016 WL 633351 (D. Utah Feb. 17, 2016) ........................................................ 9

*Downing v. Abercrombie Fitch*,
265 F.3d 994 (9th Cir. 2001) ....................................................................... 4, 13

*Edwards v. First Am. Corp.*,
610 F.3d 514 (9th Cir. 2010) ............................................................................ 3

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ............................................................................ 2

*F.T.C. v. Accusearch, Inc.*,
2007 WL 4356786 (D. Wyo. Sept. 28, 2007), *aff'd*, 570 F.3d 1187 (10th Cir.
2009)................................................................................................................. 11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ......................................................................... 11

*Fair v. Roommates,*
    521 F.3d 1157 (9th Cir. 2008) ............................................................................................. 9

*Fairfield v. American Photocopy Equipment Co.,*
    138 Cal. App. 2d 82 (1955) ................................................................................................... 6

*Fleet v. CBS, Inc.,*
    50 Cal. App. 4th 1911 (1996) .............................................................................................. 12

*Fraley v. Facebook, Inc.,*
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .......................................................... 2, 3, 5, 6, 12, 15

*Frank v. Gaos,*
    139 S. Ct. 1041 (2019) .......................................................................................................... 3

*Gabiola v. Sarid,*
    2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) ....................................................................... 4

*Gionfriddo v. Major League Baseball,*
    94 Cal. App. 4th 400 (2001) ................................................................................................. 2

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................... 4, 14

*In re Google, Inc. Privacy Policy Litig.,*
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ....................................................................... 4

*In re Google, Inc. Privacy Policy Litig.,*
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................................. 15

*Jones v. Dirty World Entm't Recordings LLC,*
    755 F.3d 398 (6th Cir. 2014) .............................................................................................. 10

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,*
    617 F.3d 1146 (9th Cir. 2010) ...................................................................................... 12, 13

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir. 2010) .............................................................................................. 7

*Low v. Linkedin Corp.,*
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ..................................................................... 6

*Lukis v. Whitepages,*
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................................................. 4, 10

*Maloney v. T3Media, Inc.,*
    853 F.3d 1004 (9th Cir. 2017) ...................................................................................... 12, 13

*Miller v. Collectors Univ.,*
    159 Cal. App. 4th 988 (2008) ............................................................................................... 6

*Monster Energy Co. v. Integrated Supply Network, LLC,*
    82 Fed. Appx. 730 (9th Cir. July 22, 2020) ......................................................................... 8

Case No. 3:20-cv-08437-LB
REPLY ISO DEFENDANTS' MOTION TO DISMISS FAC

*Newcombe v. Adolf Coors Co.*,
  157 F.3d 686 (9th Cir. 1998) .................................................................................. 1, 2

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ............................................................. 5, 6, 15

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ...................................................................................... 4

*Slivinsky v. Watkins-Johnson Co.*,
  221 Cal. App. 3d 799 (1990) ................................................................................. 1, 2

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................ 3

*Thane Int'l, Inc. v. Hartford Fire Ins. Co.*,
  2008 WL 11335049 (C.D. Cal. Mar. 15, 2008) ........................................................ 2

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) .................................................................................... 13

*Uzuegbunam v. Preczewski*,
  2021 WL 850106 (U.S. Mar. 8, 2021) ................................................................... 3, 4

## **Statutory Authorities**

47 U.S.C. § 230 ............................................................................................... 1, 8, 9, 10

47 U.S.C. § 230(a)(1) ......................................................................................................... 10

47 U.S.C. § 230(c)(1) ........................................................................................................... 8

Business Code § 17200 ....................................................................................................... 13

Cal. Civ. Code § 3344 ................................................................................. 4, 5, 6, 13, 14, 15

Cal. Civ. Code § 3344(a) ...................................................................................................... 1

## **Other Authorities**

McCarthy, The Rights of Publicity and Privacy 2d § 5.67 ...................................................... 8

## PRELIMINARY STATEMENT

Plaintiffs' Opposition largely rehashes arguments this Court has already considered and rejected.  The few "new" arguments plaintiffs raise do not alter this Court's determinations that plaintiffs have not alleged an "injury in fact" for purposes of Article III standing, nor that their claims are barred by section 230 of the Communications Decency Act.

Although the Court need not go further, the Opposition also provides no reasoned basis that any alleged use of the yearbook images is not preempted by the Copyright Act.  And plaintiffs cannot show that, by providing another means to access already-public yearbook photos, Ancestry breached a privacy interest in "highly offensive" information.

The amended complaint contains no material new facts, but rather plaintiffs seek to avoid dismissal through inconsequential variants on their legal arguments.  Thus, the Complaint should now be dismissed with prejudice.

## ARGUMENT

## I.    PLAINTIFFS STILL CANNOT ALLEGE A COGNIZABLE INJURY

Plaintiffs devote the majority of their Article III arguments toward purported injuries that were addressed and rejected in this Court's order granting Ancestry's first motion to dismiss.  *See* Opp. at 2-12.  Plaintiffs offer no reason to reconsider the Court's earlier determinations.

***First,*** plaintiffs contend they have addressed the "concerns" in the Court's order by alleging a violation of California's right of publicity statute "is itself injury," and thus their "rights to privacy" were violated.  *Id.* at 2-3.  But the deficiency the Court identified was not the absence of rote legal assertions in plaintiffs' complaint—rather, the Court correctly recognized a plaintiff must articulate a concrete injury *beyond* mere violation of the statute.   ECF No. 30 at 8 ("the statute imposes liability only where 'persons [are] injured as a result'" quoting Cal. Civ. Code § 3344(a)).  *See also Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (plaintiff's own case recognizes a misappropriation "plaintiff must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise;

(3) lack of consent; and (4) **resulting injury**.") (quotation, citation omitted) (emphasis added). Plaintiffs have not (and cannot) identify any cases that purported to eliminate this requirement from the statute or abrogate California courts' holdings that recognize this explicit injury requirement. *See generally* Opp. at 3-6. Instead, plaintiffs rely on courts' determinations that violations of *other* statutes can give rise to Article III injury. *Id.* at 3-6 (citing cases involving CIPA, SCA, VPPA and TCPA violations). But, again, this Court already addressed and rejected these same arguments. ECF No. 30 at 8-9.[1]

In support of this rehashed contention, plaintiffs once again misread *Fraley* to contend the court found a violation of section 3344 constitutes an injury "independent of whether the plaintiff alleges additional harms." Opp. at 5 (citing *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 797

---

[1]   Ancestry's position is consistent with *Davis v. Facebook, Inc.*, 956 F. 3d 589, 598 (9th Cir. 2020) and *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-19 (9th Cir. 2020), which recognized the Wiretap Act, Stored Communications Act, California Invasion of Privacy Act and Electronic Communications Privacy Act protected "substantive" rights that can give rise to an Article III injury without further harm. *Davis*, 951 F.3d at 598 ("the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act, SCA, and CIPA."); *Campbell*, 951 F.3d at 1117-18 ("historical practice provides support not only for the conclusion that wiretapping is actionable, but also for the conclusion that a wiretapping plaintiff need not allege any further harm to have standing.") (quotation, citation omitted). These cases show merely that "privacy torts do not **always** require additional consequences to be actionable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (emphasis added). Other cases, however, make equally clear that the "right of publicity" is not among those for which a violation alone suffices to demonstrate a concrete injury. *See, e.g., Slivinsky*, 221 Cal. App. 3d at 807 ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name"); *Newcombe*, 157 F.3d at 692 (recognizing "resulting injury" as element of claim). It is easy to demonstrate why such distinctions make sense. A wiretapping claim, for example, involves intrusion upon affairs that are private, whereas the information at issue here is not private and the claim instead depends on how the information was used and the resulting consequences. *Cf.* ECF No. 30 at 7 & n. 12 ("the information in the Yearbook database is not private," and recognizing "disclosure of public information alone is not a harm"). *See also Thane Int'l, Inc. v. Hartford Fire Ins. Co.*, 2008 WL 11335049, at *6 (C.D. Cal. Mar. 15, 2008) (recognizing "the awkwardness of the 'privacy' label" because, for example, celebrities' fame would be "inconsistent" with a claimed right to privacy, and noting it is "the nature of a plaintiff's injury" that distinguishes between the two types of misappropriation claims, both of which require injury, but of different types). Thus, although the common law "right of publicity" may have "derive[d] from the fourth category of invasion of privacy," *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001), both the statutory language and its common law background show it requires an actual injury—a violation alone is not enough.

1  (N.D. Cal. 2011)).  However, the *Fraley* court did not end its inquiry with its determination

2  plaintiffs had alleged a statutory violation—to do so would violate the Supreme Court's dictate

3  that "Article III standing requires a concrete injury even in the context of a statutory violation."

4  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).  Rather, as this

5  Court already reasoned, *Fraley* correctly went on to determine plaintiffs had alleged a "concrete

6  injury" (not just a statutory violation) because they had a "property interest" in their endorsement

7  of a product, which Facebook then appropriated for its own benefit.  ECF No. 30 at 7-8

8  (discussing *Fraley*).  Plaintiffs here cannot rely on this theory of injury because, unlike in *Fraley*,

9  "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products

10  or an equivalent interest."  *Id.* at 8.

11         Plaintiffs also cite *C.M.D. v. Facebook, Inc.*, 2014 WL 1266291 at *2 (N.D. Cal. Mar. 26,

12  2014) for this same proposition.  Opp. at 5.  However, in *C.M.D.*, the court determined "this action

13  has more in common with *Fraley* than it does with *Cohen*.  Both here and in *Fraley*, but not in

14  *Cohen*, plaintiffs have alleged that their names and likeness are used to endorse third-party

15  products[.]"  *Id.*  Thus, *C.M.D.* aligns precisely with the Court's previous analysis.  Further, the

16  out-of-context snippet in *C.M.D.* from which plaintiffs quote ("a plaintiff may be able to establish

17  constitutional injury in fact by pleading violation of a right conferred by statute") was based on the

18  Ninth Circuit's decision in *Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010), which was

19  subsequently abrogated by the Supreme Court for this *exact* reason.  *Frank v. Gaos*, 139 S. Ct.

20  1041, 1046 (2019) ("Our decision in *Spokeo* abrogated the ruling in *Edwards* that the violation of

21  a statutory right automatically satisfies the injury-in-fact requirement whenever a statute

22  authorizes a person to sue to vindicate that right.")  *See also C.M.D.*, 2014 WL 1266291 at *3

23  ("Facebook asserts *Edwards* was simply 'wrongly decided' insofar as it endorses standing absent

24  some actual injury beyond the mere fact of a statutory violation. Any argument that *Edwards*

25  should be revisited must be presented to the Circuit court, not here.").

26         Finally, plaintiffs cite the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*,

27  2021 WL 850106, at *2 (U.S. Mar. 8, 2021) for the proposition the Court "found standing based

28  on a purely legal injury," but that mischaracterizes the case.  Opp. at 6.  Whether the plaintiff

1    suffered a "concrete injury" was not at issue—instead, the Court held the case was not mooted

2    where the plaintiff maintained a claim for nominal damages to redress a past injury.  *Uzuegbunam*,

3    2021 WL 850106, at *3 ("There is no dispute that Uzuegbunam has established the first two

4    elements" of standing).[2]

5        **Second,** plaintiffs reprise an argument that their names had "provable commercial value"

6    because Ancestry was (purportedly) able to profit from their use.  Opp. at 8-12.  *Compare* ECF

7    No. 19 at 3-4 (plaintiff's original opposition advanced these same arguments).  This Court already

8    correctly determined that the crux of the Article III inquiry is whether the plaintiff was harmed,

9    not whether a defendant profited.  ECF No. 30 at 7 ("Ancestry's using the public profiles to solicit

10   paying subscribers — standing alone — does not establish injury."); *In re Google, Inc. Privacy*

11   *Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than

12   point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost

13   dollars of his own.");[3] *Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) (a "claim of injury

14   _____

15       [2]   Plaintiffs' "second" argument that their claims arise from the "use" of their names, not just
     the disclosure, is essentially a reboot of their argument a statutory violation, in and of itself, can
16   give rise to Article III injury—they point to no purported injury resulting from such "use" beyond
     a claim the statute gave them the "right" to control such "use."  Opp. at 6-8.  And once again, the
17   additional cases they cite are not on point.  *Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257, 1263
     (N.D. Cal. 2006) did not involve a claim for violation of section 3344, nor did it even address the
18   issue of Article III standing.  Likewise, *Downing v. Abercrombie Fitch*, 265 F.3d 994 (9th Cir.
     2001) was a "case involving a celebrity endorsement claim," and (again) did not address the issue
19   of Article III standing.  *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 750 (N.D. Ill. 2020) also
     did not involve a claim for violation of section 3344, nor did it address the issue of Article III
20   standing.  And the same is true of *Gabiola v. Sarid*, 2017 WL 4264000, at *2 (N.D. Ill. Sep. 26,
     2017).  This Court already determined there was no "use" of plaintiffs' names here that could
21   plausibly have caused a "concrete injury."  ECF No. 30 at 8 ("Ancestry's use of the plaintiffs'
     profiles does not imply an endorsement of Ancestry's products or an equivalent interest," and
22   "plaintiffs do not have a commercial interest in their public profiles that precludes Ancestry's use
     of the profiles for commercial gain.").
23
         [3]   Plaintiff relies on the distinction of this case raised by the court in *In re Facebook, Inc.,*
24   *Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019).  Opp. at 10.
     But that distinction does not touch on the proposition that "actual injury" under Article III requires
25   plaintiff to be actually injured (not just that defendant profited).  *See In re Facebook, Inc.*, 402 F.
     Supp. 3d at 785-86.  Rather, the court disagreed with the proposition that a plaintiff asserting a
26   "privacy invasion" from the disclosure of private, personal information must demonstrate
     "*economic* harm."  *Id.* (emphasis added).  The court did not purport to hold plaintiffs need not
27        (footnote continued)

28

1   in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss").  Thus,

2   plaintiffs' assertions concerning the value of the information **to Ancestry** are irrelevant unless

3   plaintiffs can allege some harm to themselves.  They cannot.  *See* ECF No. 30 at 7-9.

4          Plaintiffs' inability to establish independent value in their information differentiates the

5   cases they invoke.  Plaintiffs assert this Court "distinguished *Fraley* . . . because in *Fraley* the

6   plaintiffs' likenesses had 'provable value' evidenced by Facebook's public statements about the

7   important role user likenesses played in advertisements."  Opp. at 8.  This Court rightly

8   recognized that *Fraley* did not turn solely on the value of plaintiffs' information *to Facebook*, but

9   instead on plaintiffs' own "asserted property interest in [their] endorsement"—something

10  plaintiffs have not and cannot claim here.  ECF No. 30 at 8.  Likewise, in *Davis*, 956 F.3d 589, it

11  was not the value of the information to the defendant that was determinative—rather, plaintiffs

12  were able to allege *they* had a cognizable and valuable property interest in the information from

13  which the defendant profited.  *Id.* at 600 ("Plaintiffs allege that their browsing histories carry

14  financial value. They point to the existence of a study that values users' browsing histories at $52

15  per year, as well as research panels that pay participants for access to their browsing histories.

16  Plaintiffs **also** sufficiently allege that Facebook profited from this valuable data.") (emphasis

17  added).  Here, plaintiffs have not and cannot point to any concrete value the publicly-available

18  yearbook information had *to plaintiffs*, as opposed to Ancestry.  *See also Perkins v. LinkedIn*

19  *Corp.*, 53 F. Supp. 3d 1190, 1210 (N.D. Cal. 2014) ("this case is no different than *Fraley*," and

20  likewise involved an "endorsement" theory, which the court determined "has a concrete and

21  provable value"—"LinkedIn profits from this **at the expense of its users**.") (emphasis added).

22         Plaintiffs devote their remaining discussion on this point to straw arguments.  Plaintiffs

23  note the statutory language does not require them to plead an "endorsement" theory, nor that their

24  prove *any* harm. And, of course, this case does not involve the disclosure of private information.
    ECF No. 30 at 7 & n. 12 ("the information in the Yearbook database is not private: it is public

25  yearbook information distributed to classmates (and ultimately to Ancestry). . . . disclosure of
    public information alone is not a harm").  Though plaintiffs' theory of this case vacillates

26  throughout their opposition, they appear to recognize this, contending "Ancestry's mistaken

27  reading of Section 3344 – under which the source information must be private prior to the
    defendant's misappropriation – would turn the statute on its head."  Opp. at 7.

28

names had inherent commercial value.  Opp. at 10-12.  This misses the point.  The statute *does* require actual injury (as does Article III), and these were merely examples of how other plaintiffs have done that—unlike plaintiffs here.  The "endorsement" theory in *Fraley* and *Perkins* is one way to prove an injury.  ECF No. 30 at 7 ("For example, standing can be established if the exploitation of users' profiles suggests that the users personally endorse a product or service."). Likewise, loss of commercial value in one's name (for instance, as to fashion models or celebrities, whose names have provable commercial value) is another way to demonstrate injury. *See id.* at 8.  Although those examples might not be exclusive, what a plaintiff cannot do is proceed on a theory of misappropriation that involves no injury at all, as plaintiffs attempt to do here.  *Id.* at 7 ("Section 3344 cases suggest that more is needed beyond using the profiles.").

**Third,** plaintiffs assert their new theory of "mental anguish" suffices to demonstrate an actual injury.  Opp. at 12-13.  But the one case they cite demonstrates why that theory is implausible here.  Plaintiffs quote *Miller v. Collectors Univ.*, 159 Cal. App. 4th 988, 1006 n. 12 (2008) for the proposition that "[a] plaintiff's knowledge of possible commercial loss and/or defamation may be a component of mental harm, disturbing one's peace of mind."  Opp. at 12-13. But plaintiffs here have not alleged a "commercial loss," nor have they alleged they were in any way defamed by reproduction of their already-public yearbooks.  Plaintiffs attempt to direct this inquiry at the "use" of their likenesses but cannot point to any "use" that could plausibly have caused "anguish."  *Cf. Fairfield v. American Photocopy Equipment Co.*, 138 Cal. App. 2d 82 (1955) (recognizing mental anguish might result where "[t]he advertisement necessarily carried the implication that plaintiff endorsed the machine and had permitted defendant to use his name as a lawyer in its advertisements. He had done neither," and, as a result of the advertisement, "he had received telephone calls from other lawyers and . . . he had had conversations with other lawyers pertaining to the advertisement.").  Instead, plaintiffs have simply intoned the words "mental anguish," without identifying circumstances that make that claimed injury plausible.  *See, e.g., Low v. Linkedin Corp.*, 2011 WL 5509848 at *3 (N.D. Cal. Nov. 11, 2011) (where defendant used personal information to provide the information "to third parties, including advertisers, marketing companies, data brokers, and web tracking companies," plaintiff's claim of "embarrassment and

1   humiliation" was insufficient for standing where plaintiff could not allege "what information was

2   actually disclosed to third parties . . . would lead Plaintiff to suffer emotional harm," such as

3   "embarrassing details of his personal browsing patterns . . . linked to his identity by LinkedIn[.]").

4   **Fourth,** plaintiff Abraham claims the time he spent perusing Ancestry's website in pursuit

5   of these claims constitutes an "injury." Opp. at 13. Notably, plaintiff Callahan does not allege the

6   same, which highlights that it was entirely unnecessary for Abraham to do so and thus insufficient

7   to fabricate an Article III injury. As shown in Ancestry's motion (ECF No. 33 at 5-6), a plaintiff

8   "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money

9   fixing a problem that otherwise would not affect the [plaintiff] at all." *La Asociacion de*

10  *Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Here,

11  plaintiff Abraham would have to identify both a "problem" and some independent "injury" that

12  would have resulted had he not chosen to spend five hours browsing the internet. *See id.* But he

13  has not done so. Thus, his reliance on *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 691 (N.D.

14  Cal. 2019) is misplaced—there, the plaintiff's information was revealed in a data breach, resulting

15  in "substantial risk of identity theft," and he spent time responding to the breach as a result of that

16  risk. *Id.* Here, plaintiff Abraham can identify no such risk he was attempting to mitigate. Were

17  plaintiff Abraham's investigation time sufficient to establish standing, *every* plaintiff could

18  manufacture standing by citing time investigating and filing a lawsuit.

19  **Finally,** plaintiffs claim they have "alleged theft of their intellectual property," (Opp. at

20  14), but no such allegation appears anywhere in their complaint. Setting aside that allegations

21  outside the pleadings cannot be considered, this argument fails on the merits. As a preliminary

22  matter, plaintiffs cite no authority for the proposition that "infringement" on the right to publicity

23  automatically gives rise to an injury—were that the case, it would undermine the entire line of

24  authority on which both parties (and this Court) have relied, none of which ended the "actual

25  injury" inquiry in a "right of publicity" case based on the *ipse dixit* plaintiff now advances.

26  Plaintiff's argument rests on two unrelated propositions: (1) that some courts have considered the

27

28

"right of publicity" a form of intellectual property claim;[4] and (2) that other courts have determined claims for trademark and trade dress infringement (which also happen to be intellectual property claims) can give rise to an actual injury. Opp. at 14 (citing *Monster Energy Co. v. Integrated Supply Network, LLC*, 82 Fed. Appx. 730, 733 (9th Cir. July 22, 2020), which did not involve a "right of publicity" claim). But unlike a trademark, which has commercial value to the owner (that can be diminished by another's use), plaintiffs "do not have a commercial interest" in the public yearbook excerpts at issue here, and they can claim no loss in value arising from Ancestry's use. ECF No. 30 at 8. At bottom, this argument is just another spin on plaintiffs' rejected contention that a violation of the statute itself constitutes an injury. ECF No. 30 at 8-9.

## II. PLAINTIFFS OFFER NO REASON TO REVISIT THE COURT'S DETERMINATION THAT ANCESTRY IS IMMUNE PURSUANT TO SECTION 230 OF THE CDA

*First,* plaintiffs contend that—because they have removed from the complaint their prior assertion all the yearbooks were donated, and now only allege "some" of them were donated (ECF No. 32 at ¶ 64)—Ancestry is not entitled to immunity under section 230 because the yearbooks were not "provided by another information content provider." 47 U.S.C. § 230(c)(1); Opp. at 14-16. The Court has already rejected this argument. ECF No. 30 at 9-10 (rejecting plaintiffs'

---

[4]   Although it is unnecessary to resolve whether plaintiffs' claims implicate "intellectual property," it is clear they do not. The cases on which plaintiffs rely involved models and celebrities whose names had discernable commercial value. *Aroa Mktg., Inc. v. Hartford Ins. Co. of Midwest*, 198 Cal. App. 4th 781, 785 (2011), *as modified* (Aug. 25, 2011) (model's image used to sell unrelated products); *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 393 (2001) (misappropriation of "The Three Stooges"). But "publicity" claims come in two forms. *See* McCarthy, The Rights of Publicity and Privacy 2d § 5.67. The first is based on the loss of the "commercial value" in one's name (*e.g.*, a celebrity). *Id.* The second is based on an "appropriation theory," where the plaintiff claims "bruised feelings" based on how plaintiff's name was used. *Id.* Only the first is properly considered an intellectual property claim, not the latter. *Id.* ("[I]f the appropriation type of privacy revolves about the star of human dignity with resulting psychic and mental injury, then viewing it as a right 'personal' to each human being seems logical and appropriate. Similarly, if the right of publicity revolves about the star of loss of commercial and business values, viewing it as a 'property' right akin to other intellectual property rights such as trademarks and copyrights similarly makes sense."). Here, plaintiffs disclaim the need to prove their names have any "commercial value," demonstrating this case is not of the ilk that could even be considered an "intellectual property" dispute. *See* Opp. at 11.

argument that "Ancestry did not obtain the yearbooks from another information-content provider," on the basis that "Ancestry obtained the yearbook content from someone else"). Of course, Ancestry did not create these yearbooks, and plaintiffs do not contend otherwise. *See* ECF No. 32 at ¶¶ 26-27, 46-47 (alleging the yearbooks are from plaintiffs' respective high schools and authored by someone who is not Ancestry). Whether the yearbooks were donated to Ancestry by other students at plaintiffs' schools or given to Ancestry to "scan and digitize" by "a local government archive or historical society . . . to put the images on [Ancestry's] website," (Opp. at 15 n. 1), the yearbooks were "provided by" someone else for use on the internet.[5]

None of the cases on which plaintiffs rely supports their position the information was not "provided by" another information content provider, and instead these cases only recognize that a party who *creates content* cannot avail itself of section 230 immunity. *Fair v. Roommates*, 521 F.3d 1157, 1169 (9th Cir. 2008) ("a website operator who edits in a manner that contributes to the alleged illegality—such as by removing the word 'not' from a user's message reading '[Name] did not steal the artwork' in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune"); *Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351, at *21 (D. Utah Feb. 17, 2016) ("many of the third-party statements she uses do not retain their original form. She did more than simply post whatever information the third parties

---

[5]  Plaintiffs also suggest the possibility Ancestry may have digitally "scraped" the yearbooks "from online sources, such as public library websites." Opp. at 15. Setting aside that this is incorrect (and finds no basis in the complaint, which alleges only donations as the source of the records), this content would nonetheless have been "provided by" whoever hosted it on the internet in the first instance (and not created by Ancestry). Plaintiffs rely on dicta from *Batzel v. Smith*, 333 F.3d 1018, 1032-33 (9th Cir. 2003) which hypothesized "that the author of a magazine article" would not be said to have "'provided' it to an interactive computer service provider or user by allowing the article to be published ***in hard copy off-line***. Although such an article is available to anyone with access to a library or newsstand, it is not 'provided' ***for use on the Internet.***" Opp. at 17 (quoting *Batzel*) (emphases added). The question in *Batzel* was whether information that was never intended to be posted online can qualify for immunity pursuant to section 230, not *who* must provide the information. *Batzel*, 333 F.3d at 1034 (holding the relevant inquiry is whether "a reasonable person in the position of the service provider or user would conclude that the information was provided ***for publication on the Internet***") (emphasis added). All the scenarios contemplated by plaintiff—donations to Ancestry; agreements with libraries and local governments; or obtaining the information from other public, online resources—leave no doubt the information was intended to be posted online (in the last example, it already was).

provided"); *Lukis v. Whitepages*, 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020) (defendant created its own background reports by compiling information from different sources).  But this court has already concluded "Ancestry — by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230."  ECF No. 30 at 11 (quotation, citation, alteration omitted).[6]

    **Second,** plaintiffs again argue section 230 immunity turns on whether the yearbook authors "intended the yearbooks for publication on the Internet," Opp. at 16-19, which is a proposition the Court already rejected.  *See* ECF No. 30 at 10 ("no case supports the conclusion that § 230(a)(1) immunity applies only if the website operator obtained the third-party content from the original author. To the contrary, the Act immunizes an interactive computer service provider that passively displays content that is created entirely by third parties.") (quotation, citation omitted).

    As the court in *Batzel* held, "the focus should be not on the information provider's intentions or knowledge when transmitting content but, instead, on the service provider's or user's reasonable perception," otherwise, "posting of information on the Internet and other interactive computer services would be chilled, as the service provider or user could not tell whether posting was contemplated." 333 F.3d at 1034.  A contrary result would allow Forbes (for example) to be held liable for defamation if a user submits an article for publication that turns out to have been written by someone else, but Forbes would not be liable if the user had written the article herself. *Cf.* Opp. at 17-18.  Requiring such an inquiry into the "intent" of the original author would be precisely the chill on free speech the court in *Batzel* sought to avoid.

    Like *Batzel*—which involved a private email that plaintiff never intended to be published online—the remaining cases plaintiffs cite do not support the notion that a publisher must attempt

---

    [6]  To the extent plaintiffs suggest Ancestry's selection of the content to publish renders it an "information content provider" (Opp. at 15-16), this has been rejected by this Court (ECF No. 30 at 11) consistent with established law.  *See, e.g., Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 416 (6th Cir. 2014) ("The CDA expressly bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—***such as deciding whether to publish, withdraw, postpone or alter content***.'") (citation omitted) (emphasis added).

1   to discern the "intent" of the "original" author.  Instead, each involved *private* information the

2   defendant would reasonably have known was not intended to be posted online.  *F.T.C. v.*

3   *Accusearch, Inc.*, 2007 WL 4356786, at *1 (D. Wyo. Sept. 28, 2007), *aff'd*, 570 F.3d 1187 (10th

4   Cir. 2009) (defendant harvested and posted online "telephone call details," "GPS traces (which

5   disclose the exact location of a cell phone at any given time)," "utility records," and "DMV

6   records").  Here, whether the yearbooks were donated by another student from plaintiffs' high

7   schools or given to Ancestry to "scan and digitize" by "a local government archive or historical

8   society . . . to put the images on [Ancestry's] website," (Opp. at 15 n. 1), the information was

9   undoubtedly provided by someone else for the purpose of publication on the internet.

10          **Third,** in an about-face from the core allegations underlying their complaint, plaintiffs

11   contend their claims "are not directed at yearbooks" and are instead aimed at a "pop-up message

12   saying 'There's more to see,'" and "a 'Sign Up Now' button."  Opp. at 19-20.  But plaintiffs'

13   claims *are* premised on the alleged misappropriation of their likenesses through the reposting of

14   their yearbook information, not content-neutral information that also happens to appear on the

15   same webpage.  In other words, were those links to exist without any yearbook information,

16   plaintiffs could not reasonably contend they would still have a claim.

17          This Court already rejected plaintiffs' argument, reasoning that: "Adding an interactive

18   button and providing access on a different platform do not create content.  They just add

19   functionality."  ECF No. 30 at 10.[7]  Were it the case that a website's interactive buttons could

20   render them responsible for third-party content, the CDA would be gutted.  *Cf. Fair Hous. Council*

21   *of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) ("[T]he

22   broadest sense of the term 'develop' could include the functions of an ordinary search engine—

23   indeed, just about any function performed by a website.").  *See also Atl. Recording Corp. v.*

24   *Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009) (defendant not an "information

25   content provider" where it provided "links for users to download that third-party content").

26          ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27          [7]   The same is true of the allegations concerning the "hint" emails which, contrary to
     plaintiffs' assertion (Opp. at 19), are not new to the amended complaint and were also previously
28   addressed by this Court.  ECF No. 30 at 10.  *See also* Mot. at 10 n. 3.

For this reason, *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) (Opp. at 20) is inapposite.  There, the plaintiff's claim was premised on Yahoo's own *misrepresentation* concerning third-party content, not mere use of that content.  *Id.*  Because Yahoo was responsible for the *misrepresentation*, the plaintiff was not seeking to hold Yahoo liable as the "publisher or speaker" of the third-party profile.  *Id.*  Here, plaintiffs' claims are premised on mere reposting of yearbook information, not some separate representation about that content.  *Cf.* ECF No. 30 at 10 (distinguishing *Fraley*, which "involved the transformation of the Facebook user's content (liking a product) into an advertisement that—without the user's consent—suggested the user's endorsement of the product . . . Ancestry did not transform data and instead offered data in a form—a platform with different functionalities — that did not alter the content.").

**III.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT**

Plaintiffs first contend that only the copyright holder can claim preemption under the Copyright Act, Opp. at 20-21, a position the Ninth Circuit has explicitly rejected.  *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010) ("We do not read *Fleet* or the Copyright Act so narrowly. Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright.") (discussing *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996), on which plaintiffs rely here).

Plaintiffs next argue their claims stem from their "likenesses," which are not copyrightable. Opp. at 21-23.  Although plaintiffs' likenesses do appear in the underlying yearbook records, this is true of every photograph in which a person appears.  *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (preemption where "likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use").  The relevant inquiry instead depends on the *use* of the likeness: "The basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question."  *Id.*

1  (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005)).[8]

2  Plaintiffs argue their likenesses were used to promote Ancestry's products, but plaintiffs'

3  allegations demonstrate these "advertisements" were no more than previews of the underlying

4  records to inform users of their availability.  *See* ECF No. 32 at ¶¶ 30, 50; *Jules Jordan*, 617 F.3d

5  at 1154 ("The pictures on the covers of the DVDs are 'still shots' of the copyrighted video

6  performance. Thus, Gasper's argument that his right of publicity was violated by defendants'

7  reproduction of the covers is misguided.").  The facts in *Maloney* are analogous—there, as here,

8  "[c]onsumers could view digital thumbnails of the images" available for sale and were given the

9  option to purchase the full versions of the photographs.  *Maloney*, 853 F.3d at 1007.  Plaintiffs'

10  claims were preempted.  By comparison, in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th

11  Cir. 2001), on which plaintiffs rely, "Abercrombie went well beyond the mere republication of the

12  photograph. . . . ***Importantly, we said that Abercrombie had suggested that the surfers had***

13  ***endorsed Abercrombie's t-shirts***."  *Maloney*, 853 F.3d at 1013-14 (discussing *Downing*, 265 F.3d

14  994) (internal quotations, citations, alterations omitted) (emphasis added).[9]

15  Here, plaintiffs cannot plausibly contend their names or images were used to make it

16  appear they endorsed Ancestry.  ECF No. 30 at 8 ("Ancestry's use of the plaintiffs' profiles does

17  not imply an endorsement of Ancestry's products").  Rather, plaintiffs' allegations arise solely

18  from reproduction of pages from their yearbooks, and are thus preempted by the Copyright Act.[10]

19

20      [8]   Contrary to plaintiffs' assertion, *Toney* did not purport to hold "right of publicity" claims

21  can *never* be preempted (indeed, they can *see Maloney*, 853 F.3d at 1011), but instead held they
were not preempted under the facts presented in that case (use of a model's likeness to promote a

22  hair-care product, not simply the reproduction of a picture).  *Toney*, 406 F.3d at 907 (plaintiff
alleged defendants "used her likeness in connection with the packaging and promotion of the Ultra

23  Sheen Supreme relaxer product beyond the authorized time period.").

24      [9]   Plaintiffs' assertion that there is no "endorsement" requirement under section 3344 (Opp. at
22) proves the point—as asserted (i.e., without some endorsement theory or other use) there is no

25  difference between these claims and those that are covered by the Copyright Act.  *See Toney*, 406
F.3d at 907 (no preemption because the "endorsement" element differentiated the claims).

26      [10]   Plaintiffs concede their 17200 claims are derivative (and thus rise and fall with the others),
but contend their unjust enrichment claim is "a separate cause of action."  Opp. at 24.  But whether

27  it constitutes a "separate cause of action" says nothing of whether it is preempted by the Copyright
Act.  For the reasons set forth above, it is—plaintiffs' "unjust enrichment" claim is premised on

28     (footnote continued)

## IV.   NO PLAUSIBLE CLAIM EXISTS FOR INTRUSION UPON SECLUSION

Plaintiffs rely exclusively on *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) to support their intrusion-upon-seclusion claim, but the facts here differ materially.  Opp. at 23-24.  The first prong of this claim requires plaintiffs to prove they had a reasonable expectation of privacy in the information.  This Court has already determined they did not.  ECF No. 30 at 7 ("the information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry).").  For this reason, *Facebook* is distinguishable—there, the information was shared only with a select group of Facebook "friends."  402 F. Supp. 3d at 782-83.  The court explicitly distinguished this limited sharing of information from "a user whose settings allow information to be shared not only with friends, but friends of friends," who likely "loses any expectation of privacy."  *Id.* at 783 n. 3. Yearbooks are not akin to private messages or other information on Facebook to which the user can limit access—rather, like the Facebook users who allow information to be seen not only by "friends, but friends of friends," plaintiffs could not restrict distribution of their yearbooks once they were published; their classmates were free to share them with whoever they wished.  Further, unlike the "sensitive personal information" at issue in *Facebook*, here the yearbook information is otherwise public even apart from its inclusion in the yearbook—names, depictions of plaintiffs' faces, and their school activities are not private matters.  *See* ECF No. 33 at 14-15.

For these same reasons, *Facebook* is distinguishable as to the second prong—whether the disclosure would be "highly offensive to a reasonable person."  Unlike the "religious preferences," private photographs, or "one-on-one messages" at issue in *Facebook* (402 F. Supp. 3d at 780), the information at issue here is benign, public information that plaintiffs themselves chose to share in the first instance.  Contrary to plaintiffs' suggestion that *Facebook* turned solely on the widespread dissemination of the information, it is instead the nature of the information disseminated that is determinative.  *Compare Facebook*, 402 F. Supp. 3d at 797 ("[P]laintiffs have adequately alleged

---

the same conduct underlying their section 3344 claim (purported "misappropriation" of plaintiffs' information) and thus asserts rights exclusive to the Copyright Act.  ECF No. 32 at ¶ 107.

1  that they suffered an egregious invasion of their privacy when Facebook gave app developers and

2  business partners their **sensitive information** on a widespread basis.") (emphasis added), *with In re*

3  *Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding

4  disclosure of a person's name and identity, contact list, and contents of communications to third-

5  party developers was not highly offensive).

6  **V.    PLAINTIFFS ARE NOT ENTITLED TO STATUTORY DAMAGES**

7          As set forth above, plaintiffs cannot plausibly claim to have suffered "mental anguish" as a

8  result of the alleged violations, but this is required to invoke the statutory damages provision in

9  section 3344.   Plaintiffs create a false conflict between *Fraley*, 830 F. Supp. 2d 785 and *Perkins v.*

10  *Linkedin Corp.*, 53 F. Supp. 3d 1222 (N.D. Cal. 2014) to argue a claim for economic damages

11  suffices to invoke section 3344's statutory damages provision.  ECF No. 19 at 17-18 (in an effort

12  to avoid this Court's page restrictions, plaintiffs improperly incorporate by reference the

13  arguments raised in their original motion to dismiss).[11]  No conflicts exist.  As observed in

14  *Perkins*, the proper reading of *Fraley* is that the section 3344 claim was not dismissed in its

15  entirety because plaintiffs had *also* claimed actual damages; and the *Fraley* court expressly held

16  plaintiffs would need to "prove actual damages like any other plaintiff whose name has

17  commercial value[.]"  *Perkins*, 53 F. Supp. 3d at 1244-45 (quoting *Fraley*, 830 F. Supp. 2d at

18  809).  In other words, both *Fraley* and *Perkins* correctly followed California law and found a

19  claim for economic damages insufficient to support a claim for statutory damages.  The cases do

20  not conflict, and the Court should strike plaintiffs' statutory damages claim.

21                                    **CONCLUSION**

22          For all these reasons, Ancestry's motion to dismiss should be granted and plaintiffs' claims

23  should be dismissed with prejudice.

24          Respectfully submitted,

25

26  _____

27  [11]   *See, e.g., Calence, LLC v. Dimension Data Holdings, PLC,* 222 F. App'x 563, 566 (9th Cir.
    2007) (no abuse of discretion in refusing to consider arguments from prior briefing "that Calence
28  attempted to incorporate by reference . . . in violation of local page limits.").

1  DATED:  May 10, 2021                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
2

3
                                           By /s/ Shon Morgan
4                                             Shon Morgan
                                              Attorneys for ANCESTRY.COM OPERATIONS
5                                             INC., ANCESTRY.COM INC., and
                                              ANCESTRY.COM LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28