QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

  Cristina Henriquez (Bar No. 317445)
  (cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5000

Attorneys for ANCESTRY.COM OPERATIONS INC., ANCESTRY.COM INC., and ANCESTRY.COM LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN and LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 3:20-cv-08437-LB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INDICATIVE RULING**<br><br>Hearing Date: October 28, 2021<br>Hearing Time: 9:30 a.m.<br>Location: San Francisco Courthouse, Courtroom B |

**PRELIMINARY STATEMENT**

Although this case has reached final judgment and is before the Ninth Circuit, plaintiffs seek the extraordinary relief of an "indicative ruling" under Federal Rules of Civil Procedure 60 and 62. Plaintiffs' motion turns on two unsupportable premises: (a) the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) supposedly effected an "intervening change in controlling law" in holding that a concrete injury may exist where "the injury to the plaintiff has a close relationship to a harm traditionally recognized as a basis for a lawsuit in American courts," and (b) consideration of this ruling would prompt the Court to vacate its order dismissing plaintiffs' case. Mot. at 1.

Both contentions are easily dispatched. First, the cited proposition in *TransUnion* marked no change in law—it merely reiterated the Supreme Court's holding in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), *as revised* (May 24, 2016) (instructing courts to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."). In fact, plaintiffs raised this *exact* argument in opposing Ancestry's motion to dismiss, relying on Ninth Circuit decisions that followed *Spokeo*. Second, this Court *accepted* this proposition of law in assessing Ancestry's motion to dismiss but correctly reasoned that the rule did not apply to the statute at issue. ECF No. 30 at 8; ECF No. 46 at 6.

Plaintiffs' motion thus does *not* ask that the Court apply a new proposition of law but rather that it change its conclusion about the applying *the very same proposition of law* to this case. That issue is before the Ninth Circuit and warrants no further consideration by this Court.[1]

---

[1] The absence of any true "change in law" argument reveals that plaintiffs had a different motive in filing this motion. They wanted to make this Court aware that a Nevada district court departed in some respects from this Court's analysis in a parallel case. *Sessa v. Ancestry.com Operations, Inc.* (ECF No. 57-1). Any conflict between this Court's reasoning and the order in *Sessa* will be resolved by the Ninth Circuit, not through an improper motion for reconsideration. And although it does not bear on the motion before the Court, *Sessa* incorrectly concluded a violation of Nevada's right of publicity statute, standing alone, constitutes a "concrete injury." The *Sessa* court ignored that Nevada's statute, like California's, imposes a specific injury requirement for such claims. Nev. Rev. Stat. § 597.810 (permitting action at law "for any injuries sustained by
(footnote continued)

# ARGUMENT

Although plaintiffs' motion is brought pursuant to Federal Rule 62.1, their entitlement to the relief sought is dependent on Federal Rule 60, which governs relief from a final order or judgment.[2]  Here, plaintiffs seek relief pursuant to Federal Rule 60(b)(6). Mot. at 2.

"This prong is used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where ***extraordinary circumstances*** prevented a party from taking timely action to prevent or correct an erroneous judgment." *Lipson v. On Marine Servs. Co. LLC*, 2014 WL 2048195, at *4 (W.D. Wash. May 19, 2014) (quotations, citations omitted) (emphasis added).  *See also Johnson v. Caliber Home Loans, Inc.*, 744 F. App'x 477, 478 (9th Cir. 2018) ("Rule 60(b)(6) is used sparingly as an equitable remedy to prevent manifest injustice") (quotations, citations omitted).  "Judgments are rarely set aside under Rule 60(b)(6)." *Lipson*, 2014 WL 2048195 at *4.

Even when a change in law has occurred, it generally "does not constitute an extraordinary circumstance justifying Rule 60(b)(6) relief," *Saavedra v. Eli Lilly & Co.*, 2018 WL 5905801, at *6 (C.D. Cal. July 19, 2018), *aff'd sub nom. Strafford v. Eli Lilly & Co.*, 801 F. App'x 467 (9th Cir. 2020)—but here plaintiffs cannot surmount the threshold hurdle of identifying a change at all.[3]

---

reason of the unauthorized use"). As discussed further below, this Court correctly recognized that the right of publicity statute's injury requirement differentiates it from other statutes for which a violation, in and of itself, suffices to demonstrate Article III standing. *See* ECF No. 46 at 6.

[2]  Plaintiffs' motion is also procedurally improper. "[T]here is no basis for an independent, free-standing Rule 62.1 motion, asking the district court, in the abstract as it were, to advise the court of appeals what it would do if the court of appeals were to remand the case." *Lawson v. Grubhub, Inc.*, 2018 WL 6190316, at *2 (N.D. Cal. Nov. 28, 2018) (quotation, citation omitted). Rather, the procedural mechanism set forth in Rule 62.1 applies when a separate, timely motion has been made. *Id.* Plaintiffs have not made a formal Rule 60(b)(6) motion. The Court could deny plaintiffs' motion based on this procedural defect. To the extent the Court entertains the motion, it should be construed as a request under Rule 60(b)(6). *See id.*

[3]  Plaintiffs rely on the six-factor test in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). Mot. at 2. However, this Court need not consider each factor. *Phelps* "was not meant to impose a rigid or exhaustive checklist for evaluating Rule 60(b) claims based on a change in law." *Strafford v. Eli Lilly & Co.*, 801 F. App'x 467, 469 (9th Cir. 2020) (quoting *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 445 (9th Cir. 2019)) (internal quotations omitted). Rather, where, as here, "[i]t is not at all clear . . . whether [the new] holding actually undermines the district court's conclusion . . . that doubt about whether a change in law would impact the original opinion weighs

(footnote continued)

Plaintiffs rely on *TransUnion*, 141 S. Ct. 2190, which reiterated that a concrete injury may exist where "the injury to the plaintiff has a close relationship to a harm traditionally recognized as a basis for a lawsuit in American courts." Mot. at 1. Although plaintiffs' entire motion is premised on this having been an "intervening change in controlling law," it was no change at all. Rather, *TransUnion* simply restated the Supreme Court's earlier holding in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), *as revised* (May 24, 2016). *Id.* (instructing courts to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."). Indeed, *TransUnion* **quoted** *Spokeo* for this proposition. *TransUnion*, 141 S. Ct. at 2200 ("Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts") (quoting *Spokeo*, 578 U.S. at 340-41).

That the holding is not "new law" is further demonstrated by plaintiffs' reliance on this *exact argument* in opposing Ancestry's motion to dismiss. *See* ECF No. 38 at 3 (contending "a statute 'codifies a substantive right' when the 'harms protected . . . bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit,'" quoting *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020), which, in turn, quoted *Spokeo*).

And contrary to plaintiffs' contention that this Court failed to consider this proposition in its dismissal order (Mot. at 1), this Court did apply precisely this rule. ECF No. 46 at 6. Consistent with *Spokeo* and the later decision in *TransUnion,* this Court correctly observed that, although "[v]iolations of some statutes can establish standing . . . § 3344(a) imposes liability only where 'persons [are] injured as a result' and thus requires injury." *Id.* (quoting ECF No. 30 at 8). The cases on which plaintiffs relied—and continue to rely—show merely that "privacy torts do not **always** require additional consequences to be actionable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (emphasis added). Again consistent with this Court's order, other cases make equally clear that the "right of publicity" is not among those for which a violation

---

'heavily' against Rule 60(b) relief" and is sufficient to deny the motion. *Strafford*, 801 F. App'x at 469–70.

alone suffices to demonstrate a concrete injury. *See, e.g., Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (recognizing "resulting injury" as element of claim).

It is easy to demonstrate why such distinctions make sense. A wiretapping claim, for example, involves intrusion upon affairs that are private, whereas the information at issue here is not private and the claim instead depends on how the information was used and the resulting consequences. *Cf.* ECF No. 30 at 7 & n. 12 ("the information in the Yearbook database is not private," and recognizing "disclosure of public information alone is not a harm"). *See also Thane Int'l, Inc. v. Hartford Fire Ins. Co.*, 2008 WL 11335049, at *6 (C.D. Cal. Mar. 15, 2008) (recognizing "the awkwardness of the 'privacy' label" because, for example, celebrities' fame would be "inconsistent" with a claimed right to privacy, and noting it is "the nature of a plaintiff's injury" that distinguishes between two types of misappropriation claims—"appropriation," in which the right of privacy is invaded, and "publicity" in which the commercial value of one's likeness is diminished—both of which require injury, but of different types). Thus, although the common law "right of publicity" may have "derive[d] from the fourth category of invasion of privacy," *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001), both the statutory language and its common law background show it requires an actual injury—a violation alone is not enough.

Because plaintiffs cannot identify any "intervening change in controlling law" that undermines this Court's order—let alone the "extraordinary circumstances" required to grant a motion under Rule 60(b)(6)—their motion should be denied. *See, e.g., Strafford*, 801 F. App'x at 469–70.

1  DATED: October 7, 2021            QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
2

3
                                      By */s/ Shon Morgan*
4                                         Shon Morgan
                                          Attorneys for ANCESTRY.COM OPERATIONS
5                                         INC., ANCESTRY.COM INC., and
                                          ANCESTRY.COM LLC