# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MEREDITH CALLAHAN, et al.,

Plaintiffs,

v.

PEOPLECONNECT, INC.,

Defendant.

Case No. 20-cv-09203-EMC

**ORDER DENYING DEFENDANT'S MOTION TO STAY PENDING APPEAL; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE; AND DENYING DEFENDANT'S MOTION TO STAY DISCOVERY**

Docket Nos. 26, 28, 49

Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham have filed a class action against Defendant PeopleConnect, Inc.[1]  According to Plaintiffs, PeopleConnect misappropriated Plaintiffs' names, photographs, and likenesses and used the same in advertising its products and services, "including reprinted yearbooks and subscription memberships to the website Classmates.com."  Compl. ¶ 2.  Currently pending before the Court are three motions filed by PeopleConnect: (1) a motion to stay pending appeal; (2) a motion to dismiss and strike[2]; and (3) a motion to stay discovery.  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to stay pending appeal; **GRANTS** in part and **DENIES** in part the motion to dismiss and strike; and **DENIES** the motion to stay discovery.

---

[1] Plaintiffs initially sued three affiliated entities but subsequently they voluntarily dismissed two of the companies, thus leaving PeopleConnect as the sole defendant.

[2] The Court grants the parties' motions for leave to file additional briefs related to the motion to dismiss and strike.  *See* Docket Nos. 60, 64, 71 (motions).

1

## I.      FACTUAL & PROCEDURAL BACKGROUND

2        In their complaint, Plaintiffs allege as follows.

3        PeopleConnect is a company that collects yearbooks, scans the yearbooks, and extracts

4 information from the yearbooks (such as names, photographs, schools attended, and so forth) to be

5 put into a database. *See* Compl. ¶ 53. It "aggregates the extracted information into digital records

6 associated with specific individuals," and then the digital records are exploited commercially – to

7 promote and sell PeopleConnect's products – but without the individuals' consent. Compl. ¶ 53.

8 PeopleConnect sells products through its website (Classmates.com). The products sold on the

9 website are (1) reprinted yearbooks and (2) a subscription membership.

10        Plaintiffs give examples of how PeopleConnect has allegedly exploited their names,

11 likenesses, and so forth for commercial purposes. For example, Plaintiffs allege as follows

12 regarding Geoffrey Abraham. PeopleConnect has digital records related to Mr. Abraham that

13 come from yearbooks. *See* Compl. ¶ 22. Users of Classmates.com can type Mr. Abraham's name

14 into a search bar. *See* Compl. ¶ 23. The search results provide a list of sixteen records associated

15 with Mr. Abraham. *See* Compl. ¶ 24. "When users click to view any of the records corresponding

16 to Mr. Abraham, . . . Classmates displays a page showing the photograph of Mr. Abraham and his

17 name, accompanied by a link marked 'Own this yearbook today,' which leads to a page soliciting

18 the purchase of the yearbook for $99.95." Compl. ¶ 25.

19        As another example, when the search results provide the records associated with Mr.

20 Abraham, "adjacent to the list of records containing [his] name, photograph, and likeness" is an

21 advertisement promoting the subscription membership. Compl. ¶ 27.

22        According to Plaintiffs, "[b]y misappropriating and misusing millions of Californian's

23 names, photographs, and likenesses without consent, [PeopleConnect] has harmed Plaintiffs and

24 the class by denying them the economic value of their likenesses, violating their legally protected

25 rights to exclusive use of their likenesses, and violating their right to seclusion. [PeopleConnect]

26 has also earned ill-gotten profits and been unjustly enriched." Compl. ¶ 10.

27        Plaintiffs have asserted the following claim for relief:

28            (1) Violation of California Civil Code § 3344 (*i.e.*, the right of publicity). *See* Cal.

United States District Court
Northern District of California

Civ. Code § 3344(a) (providing that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof").

(2) Violation of California Business & Professions Code § 17200 (both the unlawful and unfair prongs).

(3) Intrusion upon seclusion.

(4) Unjust enrichment.

## II.     MOTION TO STAY PENDING APPEAL

Previously, PeopleConnect moved to compel the instant case to arbitration, but the Court denied the motion. *See* Docket No. 40 (order, filed on May 18, 2021). PeopleConnect has since appealed that decision. *See* Docket No. 47 (notice of appeal). Now, PeopleConnect moves to stay proceedings pending the Ninth Circuit's disposition of that appeal.

A.     Legal Standard

> [A] district court faced with a motion to stay a case pending an appeal of a denial to compel arbitration has discretion to grant or deny the stay "depend[ing] on the case's particular facts [and] circumstances."  "In making this decision, many lower courts have applied the traditional test that is used to determine whether there should be a stay pending an appeal."  This test involves four factors:
>
> > (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[3]
>
> The first two factors are the most critical.
>
> In weighing these factors, the Ninth Circuit has applied a "sliding scale" approach whereby the factors are balanced "so that a stronger showing of one . . . may offset a weaker showing of another."

---

[3] *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

United States District Court
Northern District of California

1

2

> Under this sliding scale approach, a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where he shows that his appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success."  However, a party satisfying this lower threshold . . . "must then demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor."

3

4

*Jimenez v. Menzies Aviation Inc.*, No. 15-cv-02392-WHO, 2015 U.S. Dist. LEXIS 127875, at *3-5

(N.D. Cal. Sep. 23, 2015); *see also Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir.

1990) (stating that the "Federal Arbitration Act allows the district court to evaluate the merits of

the movant's claim, and if, for instance, the court finds that the motion presents a *substantial*

*question*, to stay the proceedings pending an appeal from its refusal to compel arbitration")

(emphasis added).

The Court concludes that, in the instant case, PeopleConnect has failed to show a

likelihood of success on the merits.  Although PeopleConnect has cited two federal district court

cases in support of its position, neither addressed *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396

(1985).

Furthermore, even if the two cases were enough to raise serious questions on the merits,

PeopleConnect would still have to show that the balance of hardships tips sharply in its favor in

order for a stay to be justified.  PeopleConnect has failed to make that showing.  For example,

PeopleConnect asserts that, if the Court were to deny a stay and proceed to rule on its motion to

dismiss and strike, that would be an adjudication on the merits; then, if the Ninth Circuit were to

reverse on the arbitration decision, this Court's order on the motion to dismiss and strike "would

either become a non-binding advisory opinion or prejudice PeopleConnect's position in

arbitration."  Reply at 1.  Although PeopleConnect's argument is not without any merit, it is not

persuasive.  Even assuming that the Court were to deny the motion to dismiss and strike in its

entirety, that would not *deprive* PeopleConnect of the arbitral forum.  The denial of the motion to

dismiss would not resolve the case or obviate an arbitration should it be so ordered.

PeopleConnect therefore would not suffer irreparable harm warranting a stay.

Accordingly, PeopleConnect's motion to stay pending appeal is denied.

United States District Court
Northern District of California

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.    MOTION TO DISMISS AND STRIKE

Because the Court denies the motion to stay pending appeal, it addresses PeopleConnect's motion to dismiss and strike on the merits. In the motion to dismiss, PeopleConnect argues that: (1) Plaintiffs' claims are barred by federal law (specifically, the Communications Decency Act and the Copyright Act); (2) Plaintiffs have failed to state a claim for relief for all four causes of action; and (3) PeopleConnect's conduct is protected by the First Amendment. In the motion to strike, PeopleConnect argues that the California anti-SLAPP statute bars Plaintiffs' complaint. The Court addresses PeopleConnect's arguments below.

A.    Immunity Under the Communications Decency Act

As noted above, Plaintiffs have asserted four causes of action: (1) violation of § 3344 (the right of publicity); (2) violation of § 17200 (unlawful and unfair prongs); (3) intrusion on seclusion; and (4) unjust enrichment. According to PeopleConnect, all claims are barred by the Communications Decency Act ("CDA").

The CDA provides in relevant part as follows: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Ninth Circuit has explained that the statute "'immunizes providers of interactive computer services against liability arising from content created by third parties.'" *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016). That is, the statute "'protects from liability (1) a provider or user of an interactive computer service[4] (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id.* at 1268. "Information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

1.    Collateral Estoppel

In the instant case, PeopleConnect relies heavily on decisions issued by Judge Beeler in

---

[4] "'[T]he most common interactive computer services are websites.'" *Kimzey*, 836 F.3d at 1268.

United States District Court
Northern District of California

1   *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, to support its claim of CDA immunity.  *See*

2   *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, 2021 U.S. Dist. LEXIS 37811 (N.D. Cal.

3   Mar. 1, 2021) (hereinafter "*Ancestry I*"); *Callahan v. Ancestry*, No. 20-cv-08437-LB, 2021 U.S.

4   Dist. LEXIS 112036 (N.D. Cal. June 15, 2021) (hereinafter "*Ancestry II*").  In fact, PeopleConnect

5   contends that the Court must give Judge Beeler's decisions collateral estoppel effect because the

6   plaintiffs in the *Ancestry* case are the same as Plaintiffs herein.  *See generally Collins v. D.R.*

7   *Horton, Inc.*, 505 F.3d 874, 884 (9th Cir. 2007) (stating that defensive collateral estoppel "'occurs

8   when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously

9   litigated and lost against another defendant'").

10          The Court rejects the collateral estoppel argument.  Judge Beeler's *Ancestry* case was a

11   federal court case, but predicated on diversity jurisdiction.  "'[F]ederal common law governs the

12   claim-preclusive effect of' a judgment rendered 'by a federal court sitting in diversity.'"  *NTCH-*

13   *WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) (quoting *Semtek Int'l Inc. v. Lockheed*

14   *Martin Corp.*, 531 U.S. 497, 508 (2001)).  However, under the federal common law, where the

15   prior judgment was predicated on diversity jurisdiction, state law on preclusion applies rather than

16   federal law because "there is no need for a uniform federal rule."  *Semtek*, 531 U.S. at 508 (stating

17   that, "indeed, nationwide uniformity in the substance of the matter is better served by having the

18   same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state

19   or a federal court"); *see also Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th

20   Cir. 2009) (stating that "[f]ederal common law requires application of 'the law that would be

21   applied by state courts in the State in which the federal diversity court sits'").  Under California

22   law, "a judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by

23   appeal."  *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 787 (1994).  In the instant

24   case, there is no dispute that the *Ancestry* plaintiffs have appealed Judge Beeler's decisions to the

25   Ninth Circuit; therefore, collateral estoppel cannot apply under California law because there is no

26   final judgment.

27          In its papers, PeopleConnect protests the application of California law on collateral

28   estoppel.  It notes that, in *Semtek*, the Supreme Court explicitly stated that the "federal reference to

6

state law will not obtain . . . in situations in which the state law is incompatible with federal interests." *Semtek*, 531 U.S. at 508. The Supreme Court provided an example: "If . . . state law did not accord claim-preclusive effect to dismissals for willful violation of discovery orders, federal courts' interest in the integrity of their own processes might justify a contrary federal rule." *Id.* PeopleConnect contends that "this is a case where federal interests compel the application of federal preclusion principles," apparently because a federal issue – CDA immunity – is at stake. Docket No. 60-2 (Def.'s Supp. Br. at 5). The Court is not persuaded. State collateral estoppel law cannot be said to be incompatible with federal interests here, particularly as CDA immunity is not an issue on which only federal courts can opine. *See, e.g.*, *Prager Univ. v. Google Llc*, 2019 Cal. Super. LEXIS 2034, at *19 (Cal. Sup. Ct. Nov. 19, 2019) (addressing CDA immunity). The Court acknowledges the authority cited by PeopleConnect, *see, e.g.*, *Dow Agrosciences, LLC v. Bates*, No. 5:01-CV-331-C, 2003 U.S. Dist. LEXIS 20389, at *57-58 (N.D. Tex. Oct. 14, 2003) (applying federal preclusion law in determining whether a federal court judgment based on diversity jurisdiction should be given preclusive effect; indicating that there are federal interests in applying federal preclusion law because the federal court judgment was based on federal preemption of state law claims – *i.e.*, there is an interest in "a nationally uniform policy enforcing a federal preemptive regime"), but it is not binding authority and the Court does not find it persuasive. Application of state law on collateral estoppel (in particular to the finality requirement) will not impair in any systemic way the application of CDA immunity.

As to the merits, Plaintiffs argues persuasively that *Ancestry* should not be given preclusive effect given that other district courts have reached differing conclusions on CDA immunity in similar cases. *See, e.g.*, *Knapke v. Peopleconnect Inc.*, No. C21-262 MJP, 2021 U.S. Dist. LEXIS 150249, at *10-11 (W.D. Wash Aug. 10, 2021) (concluding that PeopleConnect's "customized advertisement" involving the use of a yearbook photograph was not protected by the CDA; PeopleConnect was not just the publisher of content provided by someone else but rather was "the publisher of its own content, which is unprotected by the CDA")[5]; *Sessa v. Ancestry.com*

---

[5] Initially, Plaintiffs argued that the Court should give collateral estoppel effect to *Knapke* on the CDA immunity issue, *see generally* Docket No. 68 (opposition), but, subsequently, they modified

Case 3:20-cv-09203-EMC Document 676 Filed 11/01/21 Page 8 of 35

United States District Court
Northern District of California

*Ops. Inc.*, No. 2:20-cv-02292-GMN-BNW, 2021 U.S. Dist. LEXIS 177337, at *29-32 (D. Nev. Sept. 16, 2021) (concluding that defendant acted as information content provider and adding that, even if it were not, "the Court cannot grant dismissal based on the facts alleged in the Complaint because it is unclear whether the yearbook providers [*i.e.*, publishers] – the 'information content providers' who are 'responsible . . . for the creation or development' of the yearbooks – consented to the information's publication on the internet").

In other words, "'[e]ven where the technical requirements are all met, the doctrine is to be applied "only where such application comports with fairness and sound public policy."'" *Direct Shopping Network, LLC v. James*, 206 Cal. App. 4th 1551, 1562 (2012). In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), the Supreme Court stated, in addressing offensive collateral estoppel, that a trial court has discretion to determine when the doctrine should be applied and that a trial court should not allow the use of offensive collateral estoppel where application would be unfair to the defendant – *e.g.*, "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.* at 330. A California state court has noted that, even though Parklane involved a federal court trial, "we believe the principles articulated therein concerning the effect of inconsistent verdicts on the application of collateral estoppel are equally pertinent to state court actions." *Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 944 (1983) (addressing offensive collateral estoppel). Similar concerns should inform defensive collateral estoppel as well. *See, e.g.*, *Missud v. City & Cty. of S.F.*, No. 15-cv-05596-JCS, 2017 U.S. Dist. LEXIS 40799, at *56 (N.D. Cal. Mar. 21, 2017) (stating that a factor that "may be considered to determine whether the assertion of defensive collateral estoppel is equitable [is] the potential for inconsistent outcomes"); Restat. 2d of Judgments, § 29(4) (providing that "[a] party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless . . . circumstances justify affording him an opportunity to relitigate the issue" – *e.g.*, "[t]he determination relied on as

---

their position. *See* Docket No. 71-1 (Reply at 3) (stating that, "because *Ancestry II* and *Knapke* conflict, it would be inequitable to apply either offensive or defensive collateral estoppel with respect to the CDA").

United States District Court
Northern District of California

preclusive was itself inconsistent with another determination of the same issue"); id., comment (f) (stating that "[g]iving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct," but, "[w]here a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted"; "[t]hat such a doubtful determination has been given effect in the action in which it was reached does not require that it be given effect against the party in litigation against another adversary").

      2.    *Batzel*

Turning to the merits of PeopleConnect's CDA argument, the Court finds that it is not persuasive. As noted above, the CDA "'protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id.* at 1268. The third element has two subcomponents: (a) the information at issue must come from an "information content provider" and (b) the information must be "provided by" the information contention provider.

Regarding the first subcomponent, the CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, the information at issue consists of the yearbooks. And the only third parties who are plausibly creators or developers of the yearbooks are the yearbook authors/publishers. *See Sessa*, 2021 U.S. Dist. LEXIS 177337, at *31 (holding that "the yearbook publishers, not those who sent Ancestry yearbooks, are the relevant information content providers"). Yearbooks users/purchasers clearly do not create the yearbooks. Nor can they be said to be developers of the yearbooks given the plain meaning of the term "develop" as well as the construction that the Ninth Circuit has endorsed in addressing whether a service provider is also an information content provider. *Cf., e.g.*, *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (indicating that a person or entity does not "develop" content simply by "augmenting the

United States District Court
Northern District of California

content generally"; rather, the person or entity must "materially contribut[e]" to the content).

As for the term "provided by," the Ninth Circuit gave important guidance for the term in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). The Ninth Circuit stated that the term

> suggests, at least, some *active* role by the "provider" in supplying the material . . . . One would not say, for example, that the author of a magazine article "provided" it to an interactive computer service provider or user by allowing the article to be published in hard copy off-line. Although such an article is available to anyone with access to a library or a newsstand, it is not "provided" for use on the Internet.

*Id.* at 1032-33 (emphasis added). The Ninth Circuit recognized, however, that a website operator could be chilled from posting information if it "could not tell whether posting was contemplated" by the provider. *Id.* To address this concern, the court held that

> the focus should be not on the information provider's intentions or knowledge when transmitting content but, instead, on the service provider's or user's reasonable perception of those intentions or knowledge. We therefore hold that a service provider or user is immune from liability under § 230(c)(1) *when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet or other "interactive computer service."*

*Id.*; *see also Roommates.com, LLC*, 521 F.3d at 1171 (stating that, under *Batzel*, "if the editor publishes material that he does not believe was tendered to him for posting online, then he is the one making the affirmative decision to publish, and so he contributes materially to its allegedly unlawful dissemination[;] [he] is thus properly deemed a developer and not entitled to CDA immunity"). In *Batzel* itself, the court noted that further development of the record might be needed "to determine whether, under all the circumstances, a reasonable person in [the defendant's] position would conclude that the information was sent for internet publication, or whether at least a triable issue of fact is presented on that issue." *Batzel*, 333 F.3d at 1035.

In the instant case, the Court concludes that, at the very least, there is a question of fact as to whether a reasonable person in the position of PeopleConnect (the service provider) would conclude that the yearbook authors/publishers (the information content providers) intended the yearbooks to be published on the internet. As Plaintiffs point out, the yearbooks at issue were

published in the 1990s and early 2000s when "[t]he Internet was in its infancy and social media did not exist." Opp'n at 5. Moreover, there is a difference between publishing a yearbook for a school or local community and publishing a yearbook on the internet where the audience is far broader. Thus, it would be hard to conclude that, as a matter of law, PeopleConnect is a publisher of information provided by another information content provider and is thus entitled to immunity under the CDA.

PeopleConnect's reliance on Judge Beeler's *Ancestry* decisions is unavailing. In *Ancestry II*, Judge Beeler indicated that, under *Batzel*, it was reasonable for Ancestry to believe that the yearbooks at issue were being provided to it for publication on the Internet, but Judge Beeler's ruling appears to turn on her view that an information content provider could be people or entities *other* than the yearbook author/publisher. *See Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at *17-18 (stating that, "whether the yearbooks were donated by other former students or obtained from other sources, Ancestry is demonstrably not the content creator and instead is publishing third-party content provided to it for publication"; "[n]othing in *Batzel* requires the original creator's permission for publication"). But that view is not consistent with the express definition of "information content provider" under the CDA; an information content provider is one who created or developed the information at issue. In the instant case, the yearbook authors/publishers are the only ones who meet that criteria.

At the hearing, PeopleConnect suggested that a service provider should be allowed to assume that the person or entity who provided the information to the service provider was the creator or developer of the information.[6] Such an approach, however, would be contrary to *Batzel* which focuses on the reasonable perception of the service provider. PeopleConnect fails to

_____

[6] At the hearing, PeopleConnect cited *Caraccioli v. Facebook*, 700 F. App'x 588 (9th Cir. 2017), in support of its position. But *Caraccioli* is not on point. In *Caraccioli*, the plaintiff brought suit against the defendant for its refusal to remove private images and videos of the plaintiff posted on its website by a third party. *See id.* at 589 (noting that claims brought by the plaintiff included defamation, public disclosure of private facts, and intentional and negligent infliction of emotional distress). The Ninth Circuit held that the defendant had CDA immunity because it was a republisher of material posted by the third party; the defendant did not become an information content provider simply by reviewing the content of the third party's account and deciding not to remove the content. The court did not address the issue of whether the third party was properly deemed the creator or developer of the images and videos in the first instance.

United States District Court
Northern District of California

1    explain why a service provider should not be held accountable if, *e.g.*, it is *obvious* that the person

2    or entity providing information to the service provider is not the creator or developer of the

3    information.  In such a situation, if it is obvious that the person or entity providing the information

4    is not the creator or developer of the information, then the service provider "is the one making the

5    affirmative decision to publish, and so . . . contributes materially to [the] allegedly unlawful

6    dissemination" of the information[;] [it] is thus properly deemed a developer and not entitled to

7    CDA immunity." *Roommates.com*, 521 F.3d at 1171.

8         In the instant case, it is obvious that the yearbook users/purchasers were not the creators or

9    developers of the yearbooks.  Instead, the yearbook authors/publishers were the content providers.

10    PeopleConnect cannot claim the benefit of CDA immunity, absent a reasonable basis to believe

11    that the yearbook authors/publishers intended for there to be publication on the Internet.  This

12    presents a question of fact that cannot be resolved at the 12(b)(6) phase of proceedings.[7]

13    B.    <u>Copyright Preemption</u>

14         According to PeopleConnect, even if there is a question of fact on CDA immunity, the

15    Copyright Act bars most of Plaintiffs' claims – in particular, their § 3344, § 17200, and unjust

16    enrichment claims (but not their intrusion-on-seclusion claim).

17        1.    <u>Collateral Estoppel</u>

18         Plaintiffs argue first that PeopleConnect is precluded from raising the copyright

19    preemption defense based on a decision from a Washington district court in *Knapke*.  In *Knapke* –

20    where PeopleConnect was sued for the same basic conduct as that at issue in the case at bar – the

21    court rejected the copyright preemption defense because "'a publicity-right claim is not preempted

22    when it targets nonconsensual use of one's name or likeness *on merchandise or in advertising*.'"

23

24    [7] There would also appear to be a question of fact as to whether PeopleConnect should be deemed

25    a developer of information itself – *i.e.*, not just a mere service provider – to the extent it was not
simply republishing yearbook photographs and/or information.  *See Knapke*, 2021 U.S. Dist.

26    LEXIS 150249, at *10-11 (holding that PeopleConnect was not protected by CDA immunity
because it was the publisher of its own content in creating an advertisement); *Cf. Lukis v.*

27    *Whitepages, Inc.*, 454 F. Supp. 746, 763 (N.D. Ill. 2020) (stating that, "[i[n the present record,
Whitepages did not act as a mere passive transmitter or publisher of information that was

28    'provided by another information content provider'[;] [r]ather, it is alleged to have actively
compiled and collated, from several sources, information regarding Lukis [and therefore] [t]he
CDA . . . does not shield Whitepages from liability").

United States District Court
Northern District of California

*Id.* at *12 (emphasis added).

In its papers, PeopleConnect contends first that *Knapke* should not be given collateral estoppel effect because federal law on collateral estoppel should apply. That argument, like the one above, is not persuasive. State courts often opine on copyright preemption even though it is a federal defense, and the application of state law on collateral estoppel is not incompatible with federal interests.

PeopleConnect asserts that *Knapke* cannot be given collateral estoppel effect because no final judgment has been reached in that case. In response, Plaintiffs contend that a final judgment need not be a formal final judgment closing the case in its entirety; rather, the question is whether the *Knapke* court essentially reached a final decision in rejecting copyright preemption. Plaintiffs are correct that a formal final judgment or decision is not necessary. *See, e.g.*, *Ensley v. Pitcher*, 152 Wash. App. 891, 901 (2009) ("While the record does not include an entry of final judgment under CR 54(b) as to the summary judgment dismissing Red Onion, there are no other indicia in the record that the summary judgment decision was not final as a practical matter."); *Lee v. Ferryman*, 88 Wash. App. 613, 622 (1997) ("The second requirement is also satisfied because a grant of summary judgment in favor of Ferryman in the Oregon action constitutes a final judgment on the merits and has the same preclusive effect as a full trial of the issue. As one court noted, '[i]t would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero.'"). However, Plaintiffs have not pointed to any Washington state court authority holding that a decision made at the pleadings stage is sufficiently final to give rise to a preclusive effect. (Plaintiffs primarily relied on a Seventh Circuit case, *Gilldorn Savings Ass'n v. Commerce Savings Ass'n*, 804 F.2d 390, 393 (7th Cir. 1986) (applying federal law on collateral estoppel).) More important, even though it is clear that the *Knapke* court rejected the copyright preemption defense in its decision, it is not clear that the court was thereby foreclosing PeopleConnect from raising the defense again (*i.e.*, after discovery has been taken and a factual record has been developed). The Court, therefore, declines to apply collateral estoppel and considers the merits of PeopleConnect's copyright preemption argument.

2.     "Standing" to Assert Copyright Preemption

According to Plaintiffs, putting collateral estoppel aside, PeopleConnect still cannot invoke copyright preemption because only a copyright holder or licensee has "standing" to assert copyright preemption.  *See* Opp'n at 8.  (There is no dispute that PeopleConnect does not own the copyrights to the yearbooks at issue, nor is it a licensee of the yearbooks.)  In support of this position, Plaintiffs rely on a California state case, *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000).  In *KNB*, the plaintiff owned the copyright to certain erotic photographs.  The photographs were displayed without authorization on the defendant's website.  The plaintiff did not sue for copyright infringement but rather asserted a violation of § 3344 because the models in the photographs had assigned their § 3344 rights to the plaintiff.  *See id.* at 364-65.  The issue for the court was "whether the noncelebrity models' section 3344 claims, which plaintiff asserts by right of assignment, are preempted by federal copyright law."  *Id.* at 368.  The court concluded that there was no preemption, noting, in relevant part, that "this [was] not a situation where the models are asserting a right of publicity claim against the exclusive copyright holder in an effort to halt the authorized distribution of their photographs. . . . [Rather,] plaintiff is asserting the models' statutory right of publicity claim to halt the *un*authorized display of the photographs."  *Id.* at 372-73 (emphasis in original).  "We do not believe a section 3344 claim is preempted . . . where, as here, *the defendant has no legal right to publish the copyrighted work*."  *Id.* at 374 (emphasis added).

Plaintiffs acknowledge that, in *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010), the Ninth Circuit expressed disagreement with this part of *KNB*, stating as follows:

> Whether a claim is preempted . . . does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright.  The question is whether the rights are works of authorship fixed in a tangible medium of expression and come within the subject matter of the Copyright Act.  If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired.

*Id.* at 1154-55.  Nevertheless, Plaintiffs contend that *Jordan* is distinguishable because, there, the

United States District Court
Northern District of California

United States District Court
Northern District of California

plaintiff *did* own copyrights in the copied DVDs.  In other words, under Plaintiffs' position, a defense of copyright preemption may be raised only when (1) the defendant is a copyright owner or licensee or (2) the plaintiff is.  *See* Opp'n at 8 (arguing that, "in this case, neither Plaintiffs nor [PeopleConnect] own copyright[s] in Plaintiffs' yearbooks[;] Plaintiffs do not and could not obtain redress of their injuries by asserting a copyright claim").

The problem for Plaintiffs is that the language from *Jordan* above does not focus on the *status* of the plaintiff but rather on the *rights* being asserted by the plaintiff.  Furthermore, at least one court – admittedly, a state court – has rejected a similar argument

> Plaintiff disagrees that federal copyright law preempts claims asserted by anyone other than the copyright holder.  It cites *Silvers v. Sony Pictures Entertainment, Inc.* (9th Cir. 2005) 402 F.3d 881 at page 884, which includes the following quote from a treatise on commercial litigation in federal court: "'If a claimant is not a proper owner of copyright rights, then it cannot invoke copyright protection stemming from the exclusive rights belonging to the owner, including infringement of the copyright.'" (*Accord, Smith v. Jackson* (9th Cir. 1996) 84 F.3d 1213, 1218 ["To establish a successful copyright infringement claim, a plaintiff must show that (1) she owns the copyright, and (2) defendant copied protected elements of the copyrighted work."].)
>
> The fact that one may not *successfully* sue for copyright infringement because he or she is not the copyright holder does not mean he or she is not preempted from attempting to sue on a claim that amounts to copyright infringement.  As argued by the Youssefi defendants, it is the nature of the action not the identity of the plaintiff that controls.  If one sues another for making unauthorized copies of a protected work, and the alleged basis for precluding such copying is that the work is protected by copyright, then that action is subject to copyright preemption.  The federal court has exclusive jurisdiction to decide who is entitled to enforce the copyright.

*Civic Partners Stockton, LLC v. Youssefi*, 218 Cal. App. 4th 1005, 1016-17 (2013) (emphasis in original).[8]

Finally, Plaintiffs' position – taken to the extreme – suggests that, even if it were clear that a claim would be preempted if brought by the copyright holder, that claim could still escape preemption if brought by someone else.  That result would seem to make little sense as that would be "a de facto veto over the [copyright holder's] rights under the Copyright Act."  *Maloney v.*

---

[8] The court ultimately held that the plaintiff's claim did "not fall within the exclusive ambit of federal copyright law" but for different reasons.  *Civic Partners*, 218 Cal. App. 4th at 1017.

*T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017).

        3.      Use of Name or Likeness in Advertising

      Plaintiffs contend next that, even if the Court finds in favor of PeopleConnect on the issue of "standing," they should still ultimately prevail on the issue of copyright preemption because a publicity-right claim is not subject to preemption where a "photograph [is used] as part of an advertising scheme." Opp'n at 9.

      On this argument, the critical case is *Maloney*. The plaintiffs in *Maloney* were former NCAA student athletes. The NCAA owned or controlled the copyright to certain photographs depicting the plaintiffs playing basketball. The NCAA licensed the photographs to the defendant. The defendant made the photographs available on its website where a person could "obtain for $20 to $30 a non-exclusive license permitting them to download a copy of a chosen photograph" for noncommercial use. *Id.* at 1007. The plaintiffs asserted, *inter alia*, claims for violation of the right to publicity (both statutory and common law).

      The Ninth Circuit began its preemption analysis by noting that

> "[w]e have adopted a two-part test," in accordance with [17 U.S.C.] section 301, "to determine whether a state law claim is preempted by the Act." First, we decide "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." Second, assuming it does, we determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders."

*Id.* at 1010.

      The issue in *Maloney* was whether the subject matter of the state law claims fell within the subject matter of copyright. The court held that it did.

> Here, the publicity-right claims arise from the licensing of photographs, which plaintiffs concede are expressive "pictorial" works to which "[a] photographer contributes some original elements." There is also no doubt that a photograph is "sufficiently permanent" to permit it to be perceived "for more than transitory duration." The "'subject matter' of the state law claim[s] – the photographs – therefore appears to fall within the subject matter of copyright.

*Id.* at 1011.

16

The Ninth Circuit acknowledged the plaintiffs' contention that there could not be copyright preemption because they were simply challenging the defendant's exploitation of their likeness or persona – "attributes [that] 'exist independent of any single photograph.'" *Id.* Nevertheless, the court was not persuaded. "Contrary to plaintiffs' argument, [we have not] mint[ed] a categorical rule that publicity-right claims 'relating to a likeness in a photograph' are not subject to preemption." *Id.* at 1012. Instead, the court explained, "preemption turns on *how* a copyrighted photograph is used." *Id.* at 1013 (emphasis in original).

> [A] publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness on merchandise or in advertising. But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act.

*Id.* at 1011. The court added:

> The fact that the non-exclusive licenses were sold [by the defendant] for profit and their price does not alter our analysis. . . . [The defendant's] decision to license expressive works for a fee does not change the fact that the publicity-right claims target the *display* and *distribution* of copyrighted photographs for personal use. Moreover, copyright holders are allowed to commercially exploit their copyrights by exercising their exclusive rights under the Copyright Act.

*Id.* at 1016 n.9 (emphasis in original).

Under the criteria above, the Ninth Circuit confirmed that the subject matter of the plaintiff's claims in *Maloney* fell within the subject matter of copyright.

> [The plaintiffs] Maloney and Judge do not allege that their names and likenesses were ever used in connection with the sale of any merchandise. Nor do they contend that their likenesses were ever used in any advertising. Instead, the copyrighted images *themselves* were licensed to individuals for "non-commercial art use." Moreover, the licensees of the Maloney and Judge photos did not obtain "any right or license to use the name or likeness of any individual . . . in connection with or as an express or implied endorsement of any product or service."
>
> Plaintiffs' publicity-right claims and the derivative UCL claim challenge "control of the *artistic work itself*." . . . [T]he subject matter of the state law claims therefore falls within the subject matter of copyright.

> We believe that our holding strikes the right balance by permitting athletes to control the use of their names or likenesses on merchandise or in advertising, while permitting photographers, the visual content licensing industry, art print services, the media, and the public, to use these culturally important images for expressive purposes. Plaintiffs' position, by contrast, would give the subject of every photograph a de facto veto over the artist's rights under the Copyright Act, and destroy the exclusivity of rights that Congress sought to protect by enacting the Copyright Act.

*Id.* at 1018-19 (emphasis added).

The question is how *Maloney* should be applied in the instant case. In their opposition, Plaintiffs argue that there is no preemption because PeopleConnect is using their names and likenesses for advertising purposes – *i.e.*, to advertise reprinted yearbooks and the subscription membership. Part of Plaintiffs' argument has merit. Specifically, Plaintiffs' argument has merit to the extent they have alleged that PeopleConnect is using their names and likenesses to advertise the subscription membership. Indeed, PeopleConnect does not appear to have addressed this part of Plaintiffs' argument, either in its opening brief or in its reply. *Cf. Sessa*, 2021 U.S. Dist. LEXIS 177337, at *44-45 (declining to find copyright preemption because defendant did not simply "display[] or publish[] photographs depicting Plaintiffs"; "[w]here, as here, the platform containing a plaintiff's photograph sells information about the plaintiff and not limited rights to his image alone, the Copyright Act will not preempt a claim concerning the use of the image").

However, Plaintiffs' argument is problematic to the extent they contend no preemption where PeopleConnect was using their names and likenesses from the reprinted yearbooks to advertise those yearbooks. Plaintiffs seem to be of the view that, once *any* advertising is implicated – even advertising of the copyrighted work or a portion thereof – there can be no preemption. Although a close call, the Court concludes that case law weighs against Plaintiffs' position that a defendant's *advertising of the copyrighted work itself* would take the plaintiff's § 3344 claim outside of copyright preemption. At bottom, a portion of the copyright work itself is being displayed, a fundamental attribute of a copyright.

This point is illustrated in *Jordan*, where the plaintiffs were an adult movie company and the owner of that company (as well as an actor in the company's movies). The plaintiffs sued the defendants for copying and selling counterfeits of the plaintiffs' copyrighted adult DVDs. In the

attempt to avoid copyright preemption, the plaintiff argued "for the first time" that his right to publicity was violated because his name and likeness were used on the *covers* of the counterfeit DVDs. *Jordan*, 617 F.3d at 1154. But the Ninth Circuit found the argument "misguided" because "the pictures on the covers of the DVDs are 'still shots' of the copyrighted video performance." *Id.* In so holding, the Ninth Circuit implicitly held that using a portion of the copyrighted work to promote the copyrighted work does not take a publicity-right claim outside of copyright preemption. *Cf.* 17 U.S.C. § 106 (providing that a copyright owner has the exclusive right to display the copyrighted work publicly "in the case of literary, musical, dramatic, and choreographic works . . . , including the individual images of a motion picture or other audiovisual work").[9]

The Ninth Circuit indicated as much in *Maloney*, describing *Jordan* as follows: "the actor was objecting to the unauthorized distribution and republication of a copyrighted work, not the exploitation of his likeness *on an unrelated product* [*i.e.*, a product different from the copyrighted work] or in advertising." *Maloney*, 853 F.3d at 1016 (emphasis added); *see also In re Jackson*, 972 F.3d 25, 48-49 (2d Cir. 2020) (asking whether "the defendant's use of a work involving the plaintiff's likeness seeks advantage for the defendant on the basis of the plaintiff's identity . . . which argues against preemption – or whether . . . the advantage sought by the defendant flows from the reproduction or dissemination of the work itself (as opposed to the persona of the plaintiff), which argues in favor of preemption"); *Dent v. Renaissance Mktg. Corp.*, No. 14 C 02999, 2015 U.S. Dist. LEXIS 70248, at *12 (N.D. Ill. June 1, 2015) (noting that "[c]ourts have held that right-of-publicity claims are not preempted by the Copyright Act when the alleged unauthorized use of the plaintiff's identity extends *beyond* the copyrighted work[;] [i]n some of these cases, the copyrighted work is used to advertise *another* product or service") (emphasis

---

[9] *See also Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1914-15, 1920 n.6 (1996) (where CBS released a film on videotape in which plaintiffs were actors, stating that "[i]t is unclear" whether plaintiffs were claiming "CBS wrongly used stills from the motion picture for advertising or promotional purposes"; "[i]f so, we note that section 106 specifically gives to the holder of the copyright the right to display publicly 'individual images of a motion picture'"). Neither the *Knapke* court nor the *Sessa* court addressed this aspect of *Jordan* in their copyright preemption analysis.

19

1   added); *cf. Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (stating that, if a

2   publication is protected by the First Amendment, "[c]onstitutional protection extends to the

3   truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the

4   protected publication and promotes only the protected publication").

5          As indicated above, there is a two-part test to determine whether a state law claim is

6   preempted by the Copyright Act: (1) does the subject matter of the state law claim fall within the

7   subject matter of copyright as described in 17 U.S.C. §§ 102 and 103, and (2) if so, are the rights

8   asserted under state law equivalent to the rights contained in § 106, which articulates the exclusive

9   rights of copyright holders?  *See Laws v. Sony Music*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).

10   The parties have focused on the first part of the test only.  Plaintiffs have not challenged the

11   second part of the test.  Even if they had, their position would lack merit based on *Laws*.  *See* at

12   1143-44 (in discussing the second part of the test, stating that the "mere presence of an additional

13   element ('commercial use') in section 3344 is not enough to qualitatively distinguish [plaintiff's]

14   right of publicity claim from a claim in copyright" because "[t]he extra element must transform

15   the nature of the action" and, "[a]lthough the elements of [the] state law claims may not be

16   identical to the elements in a copyright action, the underlying nature of [the] state law claims is

17   part and parcel of a copyright claim"); *accord Jackson*, 972 F.3d at 52-53 (noting that

18   "commercial interests have always played an enormous role in copyright law" and therefore,

19   "[e]ven if a commercial purpose is a necessary element of a Connecticut right of publicity claim,

20   this does not necessarily take the right of publicity outside of equivalency with the 'rights within

21   the general scope of copyright'").  Here, the display of the photos from the yearbook – the

22   copyrighted work – requires no new transformative element to satisfy Plaintiffs' § 3344, § 17200,

23   and unjust enrichment claims.

24          Accordingly, the Court concludes that Plaintiffs' § 3344, § 17200, and unjust enrichment

25   claims are preempted by the Copyright Act, but only in part.  The § 3344, § 17200, and unjust

26   enrichment claims are preempted to the extent they are based on the use of Plaintiffs' names and

27   likenesses taken from the yearbooks themselves to advertise those reprinted yearbooks.  To the

28   extent those claims are based on the use of Plaintiffs' names and likenesses to advertise the

1    subscription membership, there is no preemption.

2    C.    Failure to State a Claim for Relief

3            PeopleConnect argues that, for the remaining claims, dismissal is warranted for failure to

4    state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil

5    Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim

6    showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to

7    meet this standard may be dismissed pursuant to Rule 12(b)(6).  To overcome a Rule 12(b)(6)

8    motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

9    and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the

10   complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v.*

11   *Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the

12   complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

13   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But

14   "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must

15   contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

16   party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).

17   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

18   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

19   U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for

20   more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks

21   omitted).

22           1.    Violation of § 3344

23           Section 3344 is a statutory publicity-right claim.  It provides in relevant part as follows:

24                   Any person who knowingly uses another's name, voice, signature,
                     photograph, or likeness, in any manner, on or in products,
25                   merchandise, or goods, or for purposes of advertising or selling, or
                     soliciting purchases of, products, merchandise, goods or services,
26                   without such person's prior consent, . . . shall be liable for any
                     damages sustained by the person or persons injured as a result
27                   thereof.  In addition, in any action brought under this section, the
                     person who violated the section shall be liable to the injured party or
28                   parties in an amount equal to the greater of seven hundred fifty

United States District Court
Northern District of California

dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

Cal. Civ. Code § 3344(a).

PeopleConnect challenges the § 3344 claim on various grounds: (1) that Plaintiffs have failed to plead an injury; (2) that Plaintiffs have failed to plead unlawful advertising; and (3) that the "public affairs" exception applies.

> a. <u>Injury</u>

Injury is clearly an element of a § 3344 claim. The statute itself refers to liability to "person or persons injured" or to "injured party or parties." Case law also recognizes injury as an element. *See Maloney*, 853 F.3d at 1008 n.2 (noting that a § 3344 claim includes as an element "resulting injury").

PeopleConnect argues that, although Plaintiffs have asserted an economic injury, *see, e.g.*, Compl. ¶ 10 (alleging that PeopleConnect has denied Plaintiffs "the economic value of their likenesses"), there are no facts alleged to support the claim that their names and likenesses have economic value. PeopleConnect acknowledges that statutory damages are a remedy specified in § 3344 but maintains that statutory damages are *not* awarded in the situation where the plaintiff is not able to prove economic value; rather, according to PeopleConnect, statutory damages are awarded only when a plaintiff asserts, instead of an economic injury, an emotional injury.

> i. <u>Economic Injury</u>

PeopleConnect's first argument is, in essence, that Plaintiffs have pled economic injury in conclusory terms only. The argument is without merit. If a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small. And PeopleConnect does not dispute that a § 3344 claim can be brought even by noncelebrities. *See KNB*, 78 Cal. App. 4th at 367 (noting that the appropriation of an "obscure plaintiff's" name or likeness "would not inflict as great an economic

22

United States District Court
Northern District of California

injury as would be suffered by a celebrity plaintiff" but § 3344 "is not limited to celebrity

plaintiffs"); *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 808 (N.D. Cal. 2011) (Koh, J.)

(recognizing that "previous non-celebrity plaintiffs have typically been models, entertainers, or

other professionals who have cultivated some commercially exploitable value through their own

endeavors," but "find[ing] nothing requiring that a plaintiff's commercially exploitable value be a

result of his own talents or efforts in order to state a claim for damages under § 3344").

Judge Koh's *Fraley* decision also supports Plaintiffs. There, the plaintiffs claimed

"economic injury because they were not compensated for Facebook's commercial use of their

names and likenesses in targeted advertisements to their Facebook friends." *Id.* at 806. The

defendant argued that, because the plaintiffs were not celebrities, they had to "demonstrate some

preexisting commercial value to their names and likenesses, such as allegations that they

'previously received remuneration for the use of their name or likeness, or that they have ever

sought obtain such remuneration.'" *Id.* Judge Koh rejected the defendant's position:

> [N]othing in the text of the statute or in case law . . . supports
> Defendant's interpretation of § 3344 as requiring a plaintiff pleading
> economic injury to provide proof of preexisting commercial value
> and efforts to capitalize on such value in order to survive a motion to
> dismiss. The plain text of § 3344 provides simply that "[a]ny person
> who knowingly uses another's name, voice, signature, photograph,
> or likeness, in any manner ... for purposes of advertising or selling . .
> . without such person's consent . . . shall be liable for any damages
> sustained by the person or persons injured as a result thereof." Cal.
> Civ. Code § 3344. The statutory text makes no mention of
> preexisting value, and in fact can be read to presume that a person
> whose name, photograph, or likeness is used by another for
> commercial purposes without their consent is "injured as a result
> thereof." . . .
>
> Nor does the Court find any reason to impose a higher pleading
> standard on non-celebrities than on celebrities. California courts
> have clearly held that "the statutory right of publicity exists for
> celebrity and non-celebrity plaintiffs alike." *KNB Enterprises*, 78
> Cal. App. 4th at 373 n. 12. As the Ninth Circuit recognized long
> ago, although "[g]enerally, the greater the fame or notoriety of the
> identity appropriated, the greater will be the extent of the economic
> injury suffered . . . the appropriation of the identity of a relatively
> unknown person may result in economic injury *or may itself create
> economic value in what was previously valueless*."
> *Motschenbacher*, 498 F.2d at 825 n. 11 (emphasis added). Thus,
> courts have long recognized that a person's "name, likeness, or other
> attribute of identity can have commercial value," even if the
> individual is relatively obscure. *Id.* at 825 n. 10.

23

*Id.* at 806-07 (emphasis added).

The Court acknowledges that there are some authorities to support PeopleConnect's position. *See, e.g.*, *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (Seeborg, J.) (stating that "'[r]esulting injury is the sine qua non of a cause of action for misappropriation of name'" and, "[h]ere, plaintiffs' sole allegation relating to injury is the conclusory assertion, repeated at least twice in the complaint, that they 'have suffered injury-in-fact by having the name[s] and likeness[es] misappropriated without their knowledge or consent'"); *Ancestry I*, 2021 U.S. Dist. LEXIS 37811, at *13 (Beeler, J.) (in discussing standing, holding that plaintiffs did not adequately plead an injury in fact – *e.g.*, plaintiffs "did not show that they had a commercial interest in their images that precluded [the defendant's] use of them"). Nevertheless, it finds the authorities cited above more persuasive. Economic value may reasonably be inferred from PeopleConnect's use of the images to advertise, and this is sufficient to defeat a motion under Rule 12(b)(6).

### ii. Statutory Damages

Because Plaintiffs have adequately alleged an economic injury, the Court need not address PeopleConnect's second argument, which concerns statutory damages. However, because the issue is likely to arise again in the future, the Court addresses it now. PeopleConnect argues statutory damages are available only where a plaintiff claims mental anguish, as opposed to economic injury.

Although the argument seems strained on its face, there is authority to support it, including decisions from Judge Seeborg and Judge Koh. *See Cohen*, 798 F. Supp. 2d at 1097 (Seeborg, J.) (indicating that, to get statutory damages, a plaintiff must show some harm; "'statutory minimum damages were meant to compensate non-celebrity plaintiffs who suffer . . . mental anguish yet no discernible commercial loss'") (emphasis omitted); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1242 (N.D. Cal. 2014) (Koh, J.) (recognizing that "[t]he text of section 3344 . . . contains no express requirement that a plaintiff plead mental harm in order to claim the minimum statutory damages figure" but a state appellate court "has inferred such a requirement from section 3344's legislative history"; adding that "[t]his Court should follow *Miller*'s interpretation of a California

United States District Court
Northern District of California

1   statute absent convincing evidence 'that the California Supreme Court would reject it'").  Judge

2   Seeborg and Judge Koh's decisions relied primarily on *Miller v. Collectors Universe, Inc.*, 159

3   Cal. App. 4th 988 (2008).

4          In *Miller*, the state appellate court noted as follows:

> The statute's legislative history reveals section 3344(a) was intended
> to fill "a gap which exist[ed] in the common law tort of invasion of
> privacy" as applied to noncelebrity plaintiffs whose names lacked
> "commercial value on the open market." (Assemblymember
> Vasconcellos, letter to Governor Reagan, re Assem. Bill No. 826
> (1971 Reg. Sess.) Nov. 10, 1971, p. 1.)  Unlike an entertainment or
> sports star, noncelebrity plaintiffs often could not prove damages
> under the common law; therefore, section 3344(a) as originally
> enacted in 1971 "established a concrete remedy for the little man
> with a minimum of $ 300 payment," "a simple, civil remedy for the
> injured individual." (Letter to Gov. Reagan, supra, at pp. 1-2.)  A
> legislative analysis of the bill quotes the following passage from
> *Fairfield, supra*, 138 Cal. App. 2d at pages 86-87: "Unlike [an]
> action for defamation, 'The gist of the cause of action in a privacy
> case is not injury to the character or reputation, but a direct wrong of
> a personal character resulting in injury to the feelings without regard
> to any effect which the publication may have on the  property,
> business, pecuniary interest, or the standing of the individual in the
> community. . . . The right of privacy concerns one's own peace of
> mind, while the right of freedom from defamation concerns
> primarily one's reputation. . . . The injury is mental and subjective.
> It impairs the mental peace and comfort of the person and may cause
> suffering much more acute than that caused by a bodily injury . . .
> .'" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 826
> (1971 Reg. Sess.) June 14, 1971, p. 1.)  Thus, by enacting section
> 3344(a), the Legislature provided a practical remedy for a
> noncelebrity plaintiff whose damages are difficult to prove and who
> suffers primarily mental harm from the commercial
> misappropriation of his or her name.

20  *Id.* at 1002.

21         Plaintiffs' response to *Miller* is that, although the case "recognizes statutory damages in §

22  3344 were meant to compensate plaintiffs who suffer mental anguish, nothing in *Miller* or § 3344

23  suggests statutory damages are available *exclusively* for that purpose."  Opp'n at 12 (emphasis

24  added).  The Court agrees with Plaintiffs.  Section 3344 on its face does not require that a plaintiff

25  have suffered mental anguish in order to be awarded statutory damages.  Nevertheless, § 3344

26  does require that a plaintiff have suffered injury in order to be awarded damages, including

27  statutory.  Thus, as a practical matter, it is not difficult to imagine that a plaintiff seeking statutory

28  damages will often have to rely on mental anguish as the hook for statutory damages, assuming

1   that she cannot prove actual damages or at least actual damages in excess of $750.  *Cf. Perkins*, 53

2   F. Supp. 3d at 1246 (stating that "the real injury compensated in *Miller* was not the reputational

3   harm itself; it was the effect of that reputational harm on Miller's feelings and mental well-

4   being").

5               b.    <u>Advertising</u>

6       PeopleConnect argues that another deficiency with the § 3344 claim is Plaintiffs' failure to

7   adequately allege unlawful advertising.  According to PeopleConnect, there is unlawful

8   advertising only where (1) the advertisement implies that the plaintiff *endorses* the product

9   advertised and (2) the name and likeness of the plaintiff is actually *part* of the advertisement, and

10  not just next to a separate advertisement (which would not imply an endorsement or use to

11  enhance the advertisement).

12      The first argument lacks merit.  Nothing in the text of the statute suggests that endorsement

13  is required – only that the name or likeness be used.  Case law also weighs against

14  PeopleConnect's position.  *See, e.g.*, *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 418-19

15  (1983) (stating that "California law has not imposed any requirement that the unauthorized use or

16  publication of a person's name or picture be suggestive of an indorsement or association with the

17  injured person"; adding that "the appearance of an 'indorsement' is not the *sine qua non* of a claim

18  for commercial appropriation"); *see also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778

19  F.3d 1059, 1072 (9th Cir. 2015) (noting that "[s]tate publicity right claims protect a plaintiff when

20  the defendant uses the plaintiff's identity for commercial advantage, without permission").

21      In its reply, PeopleConnect seems to backtrack somewhat.  According to PeopleConnect, it

22  is *not* arguing that "endorsement is required for each type of § 3344 claim"; instead, it is simply

23  contending that endorsement is necessary "where a § 3344 claim contests use of a likeness in

24  advertising or solicitation."  Reply at 9.  But all § 3344 claims seem to involve an advertising

25  element (*i.e.*, promotional aspect).  *See* Cal. Civ. Code § 3344 (referring to a "person who

26  knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in

27  products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases

28  of, products, merchandise, goods or services, without such person's prior consent").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Furthermore, the cases that PeopleConnect has cited in support – *i.e.*, *Local TV, LLC v.*

2    *Superior Court*, 3 Cal. App. 5th 1 (2016), and cases cited therein – are distinguishable.  These

3    cases involve a different factual scenario: where a *news organization* is advertising to promote

4    itself.  *See, e.g.*, *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (stating that

5    "[a]dvertising to promote a news medium . . . is not actionable under an appropriation or publicity

6    theory so long as the advertising does not falsely claim that the public figure endorses that news

7    medium"); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 797 (1995) (noting

8    that newspaper sold posters to advertise its quality and content, that the posters contained exact

9    reproductions of pages from the newspaper, that the posters did not contain any other information

10   not included on the newspaper pages themselves, and that the posters did not "state or imply that

11   [football player] Montana endorsed the newspaper").  This line of authority is more relevant to a

12   different argument made by PeopleConnect – *i.e.*, regarding the public affairs exception.  *See*

13   *infra*.

14          As for PeopleConnect's second argument, it raises at most a factual dispute – *i.e.*, were

15   Plaintiffs' names and likenesses sufficiently a part of the advertisements for PeopleConnect's

16   products, or were they separate from and simply "next to" these advertisements (and thus implied

17   no endorsement or connection thereto).  *See generally Cross v. Facebook, Inc.*, 14 Cal. App. 5th

18   190, 211 (2017) (where Facebook page was created by persons critical of plaintiff and used

19   plaintiff's name and likeness on the page, and where Facebook displayed ads on the page, court

20   rejected plaintiff's publicity-right claim; "the evidence [plaintiff] submitted . . . demonstrated

21   either that no advertisements appeared alongside the pages at issue, or that the advertisements that

22   did appear adjacent to the content posted by third parties made no use of his name or likeness").

23          c.    <u>Public Affairs Exception</u>

24          Finally, PeopleConnect argues that Plaintiffs do not have a viable § 3344 claim because the

25   statute contains an exception for public affairs.  Section 3344(d) provides as follows: "For

26   purposes of this section, a use of a name, voice, signature, photograph or likeness in connection

27   with any news, public affairs, or sports broadcast or account, or any political campaign, shall not

28   constitute a use for which consent is required under subdivision (a)."  Cal. Civ. Code § 3344(d).

The Ninth Circuit has noted that the exception is "based on First Amendment concerns" but is "not coextensive with [the First Amendment]." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1282 (9th Cir. 2013). The exception "is designed to avoid First Amendment questions . . . by providing extra breathing space for the use of a person's name in connection with matters of public interest." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992). There is a distinction between "news" and "public affairs" for purposes of the statute.

> Civil Code Section 3344, subdivision (d) distinguishes between news and public affairs. We presume that the Legislature intended that the category of public affairs would include things that would not necessarily be considered news. Otherwise, the appearance of one of those terms in the subsection would be superfluous, a reading we are not entitled to give to the statute. We also presume that the term "public affairs" was intended to mean something less important than news. Public affairs must be related to real-life occurrences. As has been established in the cases involving common law privacy and appropriation, the public is interested in and constitutionally entitled to know about things, people, and events that affect it. For that reason, we cannot limit the term "public affairs" to topics that might be covered on public television or public radio. To do so would be to jeopardize society's right to know, because publishers and broadcasters could be sued for use of name and likeness in documentaries on subjects that do not relate to politics or public policy, and may not even be important, but are of interest.

*Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545-46 (1993).

As an initial matter, the Court takes note this argument is applicable only to the extent PeopleConnect has used Plaintiffs' names and likenesses to promote reprinted yearbooks – and *not* the subscription membership. In other words, only reprinted yearbooks potentially have a public affairs connection; the subscription membership clearly does not. *Cf. Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760-61 (N.D. Ill. 2020) (in addressing a claim brought against Whitepages pursuant to the Illinois Right of Publicity Act, noting that "Whitepages used Lukis's identity to advertise not a background report regarding Lukis, but a monthly subscription service giving the purchaser access to background reports on anybody in Whitepages's database"). And in fact, PeopleConnect does not seem to address the subscription membership in its papers. Because the Court has held that there is copyright preemption for the § 3344 claim based on reprinted yearbooks, it is not necessary for the Court to address the public affairs argument.

28

d.    Summary

Plaintiffs have adequately stated a § 3344 claim based on PeopleConnect's use of their names and likenesses to (allegedly) promote its subscription membership: (1) Plaintiffs have sufficiently alleged an economic injury; (2) they need not allege that the advertising suggested they endorsed the product; (3) it is a question of fact as to whether their names and likenesses were used to advertise the subscription membership; and (4) the public affairs exception has no application to the subscription membership.

2.    Violation of § 17200

In their complaint, Plaintiffs asserted a violation of § 17200 based on unlawful conduct and on unfair conduct. PeopleConnect argues in its motion to dismiss that both theories are not viable. In their opposition, Plaintiffs do not make any argument in response to PeopleConnect's contention that there is no unfair conduct. *See* Opp'n at 17. Accordingly, the Court finds the § 17200 claim based on unfairness waived and focuses only on the unlawfulness claim.

The unlawfulness claim is derivative of the § 3344 claim. However, the unlawfulness claim is not exactly the same as the § 3344 claim because the statutory scheme related to § 17200 requires that a plaintiff who brings such a claim must have "suffered an injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. &. Prof. Code § 17204. Section 17204 is, in essence, a statutory standing requirement. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 313, 320-21 (2011). To satisfy the standing requirement, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 322 (emphasis omitted). On the first element, the California Supreme Court has noted that

> [t]here are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of

29

> "lost money or property," nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm. It suffices to say that, in sharp contrast to the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered such harm.

*Id.* at 323.

In the instant case, PeopleConnect argues that Plaintiffs have failed to allege a loss of money or property because personal information does not qualify as "property." *See, e.g.*, *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 n.10 (N.D. Cal. 2011) (Ware, J.) (noting that plaintiffs did not offer authority to support the argument that personal information "is a form of property" or that "'unauthorized release of personal information constitutes a loss of property'"). But as Plaintiffs point out, their names and likenesses are intellectual property, and the underlying point of § 17204 is to make sure that a plaintiff has suffered an economic injury for purposes of standing. Here, Plaintiffs have alleged an economic injury; they were not paid – implicitly, by PeopleConnect – for the use of their names and likenesses. *Cf.* Opp'n at 17 (asserting that "[t]he theft of intellectual property leading to a loss of potential income is a loss of 'money or property'"). In reply, PeopleConnect argues that Plaintiffs "offer only speculative and conclusory allegations that the use of the yearbook excerpts caused them to lose 'potential' income." Reply at 11. But PeopleConnect does not explain how there is speculation if Plaintiffs are simply asserting that PeopleConnect should have paid them for use of their names and likenesses.[10] As noted above, a reasonable inference may be made that Plaintiffs' names and likeness had value in advertising the subscription services.

### 3. Intrusion Upon Seclusion

PeopleConnect challenges the claim for intrusion upon seclusion. "[T]he action for intrusion [on seclusion] has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). On the first element, "the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to

---

[10] PeopleConnect has argued only that Plaintiffs lack standing for their § 17200 claim. They have not made any argument as to what relief Plaintiffs might be able to obtain for a § 17200 violation.

data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* at 232. On the second element, "all the circumstances of an intrusion, including the motives or justification of the intruder, are pertinent to the offensiveness element. Motivation or justification becomes particularly important when the intrusion is by a member of the print or broadcast press in the pursuit of news material." *Id.* at 236. In the instant case, PeopleConnect argues that Plaintiffs cannot plausibly plead either element.

Whether Plaintiffs have sufficiently pled the first element presents a close call. PeopleConnect understandably argues that Plaintiffs could not have a reasonable expectation of privacy because their names and likenesses were used in yearbooks which (1) were clearly intended for public distribution and (2) ultimately had no restrictions on their dissemination. But, as Plaintiffs point out, the California Supreme Court has never "stated that an expectation of privacy, in order to be reasonable for purposes of the intrusion tort, must be of *absolute* or *complete* privacy." *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 915 (1999) (emphasis in original). "[P]rivacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic. [Rather,] [t]here are degrees and nuances to societal recognition of our expectations of privacy," and "the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Id.* at 916. Thus, *e.g.*, in *In re Facebook, Inc.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), Judge Chhabria rejected Facebook's argument that, "once you make information available to your friends on social media, you completely relinquish any privacy interest in that information." *Id.* at 782. In the instant case, publication of an image in a hardbound yearbook with limited distribution is one thing, but publication on the Internet for the world to see may be something else. Thus, this element would appear to raise a question of fact.

The Court need not resolve the issue, however, because, on the second element, Plaintiffs have failed to plead sufficient allegations. According to Plaintiffs, there is a question of fact as to whether the intrusion took place in a manner highly offensive to a reasonable person. Plaintiffs assert that a reasonable jury could find PeopleConnect's conduct highly offensive because their

United States District Court
Northern District of California

1  information was disclosed "to a worldwide audience comprising millions of users" and at least

2  some of the information was "highly sensitive, including photographs of Plaintiffs as minors and

3  information about where they grew up and attended school." Opp'n at 18.  But Plaintiffs'

4  arguments are not compelling.  First, it is entirely speculative that Plaintiffs' information was

5  actually disclosed to millions.  Plaintiffs' complaint indicates that Plaintiffs' information would

6  typically be located only when specific searches would be made for them.  Second, Plaintiffs'

7  claim that "highly sensitive" information was disclosed is hyperbolic.  Plaintiffs suggest that their

8  case is analogous to *Facebook* but the facts underlying that case are far different.  There, the

9  plaintiffs alleged that Facebook "disclosed to tens of thousands of app developers and business

10  partners sensitive information . . . , including their photos, religious preferences, video-watching

11  habits, relationships, and information that could reveal location.  It even allegedly disclosed the

12  contents of communications between two people on Facebook's ostensibly private messenger

13  system." *Facebook*, 402 F. Supp. 3d at 797.  The images and personal information here appear far

14  more limited.

15     Accordingly, the Court dismisses the intrusion-on-seclusion claim.  The dismissal is

16  without prejudice but, at this juncture, without leave to amend.  If Plaintiffs, through discovery,

17  find additional facts suggesting a good faith basis to support the intrusion-upon-seclusion claim,

18  then they may file a motion for leave to amend.

19      4. Unjust Enrichment

20     Finally, PeopleConnect argues that, under the Ninth Circuit's decision in *Astiana v. Hain*

21  *Celestial Group*, 783 F.3d 753 (9th Cir. 2015), the unjust enrichment claim should be dismissed.

22  In *Astiana*, the Ninth Circuit stated as follows:

23      [I]n California, there is not a standalone cause of action for "unjust
    enrichment," which is synonymous with "restitution."  *Durell v.*

24      *Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010); *Jogani v.*
    *Superior Court*, 165 Cal. App. 4th 901 (2008).  However, unjust

25      enrichment and restitution are not irrelevant in California law.
    Rather, they describe the theory underlying a claim that a defendant

26      has been unjustly conferred a benefit "through mistake, fraud,
    coercion, or request."  55 Cal. Jur. 3d Restitution § 2.  The return of

27      that benefit is the remedy "typically sought in a quasi-contract cause
    of action."  *Id.*; *see Munoz v. MacMillan*, 195 Cal. App. 4th 648

28      (2011) ("Common law principles of restitution require a party to

> return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'"). When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014).

*Id.* at 762. Based on *Astiana*, PeopleConnect contends that (1) Plaintiffs' claim for unjust enrichment claim may be considered a quasi-contract claim seeking restitution, but (2) Plaintiffs must then allege that PeopleConnect was unjustly conferred a benefit through mistake, fraud, coercion, or request – which Plaintiffs have not done.

PeopleConnect's interpretation of *Astiana*, however, may be too rigid. In a post-*Astiana* case, the Ninth Circuit noted as follows:

> Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action. *Compare Prakashpalan*, 223 Cal. App. 4th at 1132 (allowing plaintiffs to state a cause of action for unjust enrichment) *with Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("There is no cause of action in California for unjust enrichment.") (internal quotation marks and citation omitted). While California case law appears unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action *or* as a quasi-contract claim for restitution.

*ESG Capital Partners, Ltd. Partnership v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016), (emphasis added).

The Court shall allow Plaintiffs to proceed with the theory of unjust conferral of a benefit through, in effect, misappropriation. *Cf. Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009) (stating that "[t]he doctrine [of unjust enrichment] applies where the plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on the defendant which the defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value").

D.    <u>First Amendment and California's Anti-SLAPP Statute</u>

Finally, PeopleConnect argues that Plaintiffs' claims are barred by the First Amendment

and should be stricken under California's anti-SLAPP statute – essentially making an argument similar to the public affairs argument discussed above (in conjunction with the § 3344 claim). As discussed above, it is unnecessary for the Court to address these issues because the § 3344, § 17200, and unjust enrichment claims are preempted to the extent the claims are based on PeopleConnect's reprinting of yearbooks and advertising of the yearbooks. PeopleConnect has failed to make a First Amendment and anti-SLAPP argument with respect to any claims based on the use of the images and likenesses in advertising its subscription membership.[11]

## IV.   **MOTION TO STAY DISCOVERY**

In its motion to stay discovery, PeopleConnect asks the Court to stay discovery pending resolution of its motion to dismiss and strike. This stay motion is moot as (1) this order has now issued and (2) a significant part of Plaintiffs' case has survived the motion to dismiss and strike.

## V.   **CONCLUSION**

For the foregoing reasons, the Court denies the motion to stay pending appeal, grants in part and denies in part the motion to dismiss and strike, and denies the motion to stay discovery. The § 3344, § 17200, and unjust enrichment claims are preempted in part by the Copyright Act. The intrusion-upon-seclusion claim is dismissed without prejudice but, at this juncture, without leave to amend. Plaintiffs' case may otherwise proceed. PeopleConnect shall file a response to the complaint within thirty (30) days of the date of this order.

This order disposes of Docket Nos. 26, 28, and 49, as well as Docket Nos. 60, 64, and 71.

**IT IS SO ORDERED**.

Dated: November 1, 2021

_____
EDWARD M. CHEN
United States District Judge

---

[11] To the extent Plaintiffs argue that the Court should give collateral estoppel effect to the *Knapke* court's First Amendment analysis, the Court's discussion on issue preclusion as to copyright preemption is applicable here as well.